UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Duhn Oil Tool, Inc., <br><br>   Plaintiff, <br><br> v. <br><br>Cooper Cameron Corporation, <br><br>   Defendant. | 1:05-cv-01411-OWW-GSA <br><br> ORDER GRANTING IN PART AND DEFERRING IN PART PLAINTIFF DUHN OIL, INC.'S EX PARTE APPLICATION TO STRIKE DEFENDANT COOPER CAMERON CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INFRINGEMENT REGARDING DEFENDANT'S PATENT PENDING AND NEW STYLE DESIGNS (Doc. 143) |

### I. Introduction.

This case concerns defendant Cooper Cameron Corporation's ("Cameron") alleged infringement of plaintiff Duhn Oil Tool Inc.'s ("Duhn") patented wellhead isolation tool, U.S. Patent No. 6,920,925 ("'925 Patent"). Before the Court for decision is Duhn's *ex parte* application to strike Cameron's motion for partial summary judgment of non-infringement of the '925 Patent by Cameron's Patent Pending and New Style Designs.

### II. Background.

A. Initiation of the Present Lawsuit.

Duhn filed its complaint against Cameron for infringement of the '925 Patent on November 9, 2005. Duhn's complaint alleges the United States Patent and Trademark Office ("USPTO") issued

the '925 Patent to Duhn on July 26, 2005.  The complaint further alleges Cameron "by itself, or in concert with others, has offered for sale, sold, is offering for sale/or is selling in this district and elsewhere in the United States, products which infringe the '925 Patent."  Compl. ¶ 6.  Duhn also alleged "[Duhn] is being damaged by [Cameron's] infringement of the '925 Patent and is being and will continue to be irreparably damaged unless [Cameron's] infringement is enjoined by this Court. [Duhn] does not have an adequate remedy at law."  Compl. ¶ 9.  In its prayer, Duhn requested the following releif:

    1.    A declaration:

        a.    That the Court has jurisdiction over the parties and of the subject matter of this action;

        b.    That the '925 Patent is valid and owned by Duhn; and

        c.    That Cameron committed acts of patent infringement by its offer for sale and sale of products that infringe the '925 Patent.

    2.    That Cameron, its agents, representatives, employees, assigns and suppliers, and all persons acting in concert or in privity with any of the be preliminarily and permanently enjoined from making, using, offering for sale, selling, or importing inventions of the '925 Patent;

    3.    That Cameron be required by mandatory injunction to deliver to Duhn for destruction any and all products in Cameron's possession, custody, or control embodying the patented invention as well as any promotional literature therefor;

    4.    That Duhn be awarded damages caused by Cameron's acts of patent infringement in an amount sufficient to compensate Duhn for infringement;

    5.    That Duhn be awarded prejudgment interest;

    6.    That Duhn recover its costs;

    7.    That Duhn have such other relief as the Court deems just and proper.

Cameron filed its answer on March 17, 2006, denying that it infringed the '925 Patent. Cameron's answer is accompanied by a counterclaim seeking "a declaratory judgment that its products do not infringe any valid claims of the '925 Patent." Ans. ¶ 9. Cameron also seeks to invalidate the '925 Patent on the grounds that the '925 Patent fails to meet the conditions for patentability under 35 U.S.C. §§ 102 and 103; Duhn misused the patent; and inequitable conduct during the prosecution of the application that issued as the '925 Patent. Ans. ¶¶ 10-12. Cameron's counterclaim seeks the following relief:

  a. A finding that Cameron has not infringed any valid claims of the '925 Patent;

  b. A finding of invalidity for all claims of the '925 Patent;

  c. A finding of unenforceability for the '925 Patent due to patent misuse;

  d. A finding of unenforceability for the '925 Patent due to inequitable conduct;

  e. A finding this case is exceptional requiring Duhn to pay Cameron's attorney's fees under 35 U.S.C § 285; and

  f. An award of further relief that the Court deems just, equitable, and proper.

Neither Duhn's complaint, Cameron's answer, nor Duhn's answer to Cameron's counterclaim specify which of Cameron's "products" infringe the '925 Patent.

  B. <u>Cameron's Summary Judgment Motions</u>.

Discovery in this case cut off August 29, 2007. The deadline for the parties to file dispositive motions was September 28, 2007. Duhn filed its motion for summary judgment on September 28, 2007, and Cameron filed two separate motions for summary judgment, one on September 28, 2007 and the other on

September 29, 2007. Cameron's motion for partial summary judgment of no infringement states:

> [Cameron] will and hereby does move the Court for an Order entering Partial Summary Judgment of No Infringement Regarding [Cameron's] Patent Pending and New Style Designs. In particular, Defendant Cameron asks this Court to grant a partial summary judgment in favor of [Cameron], finding [Cameron's] Patent Pending and New Style designs do not infringe claims 1-88 of [Duhn's] '925 Patent.

Cameron's memorandum of points and authorities in support of its partial motion for summary judgment of no infringement describes Cameron's wellhead products. There are three separate Cameron products that are _now_ in issue in this lawsuit. The three products are referred to as the "Old Style" Design, the "New Style" Design, and the "Patent Pending" Design. The New Style Design and Patent Pending Design (collectively, "New Designs") are the subject of Cameron's motion for partial summary judgment of no infringement.

When Duhn commenced this case, Cameron was manufacturing what it now identifies as the Old Style Design. Cameron is presently manufacturing the New Style Design, and is phasing out the Old Style Design. Cameron has also developed an additional alternative design and filed a patent application for this design with the USPTO on May 8, 2007; Cameron refers to this third design as the Patent Pending Design. From the outset of this case, Duhn has only alleged the Old Style Design infringes the '925 Patent. While this case has been pending, Cameron has implemented the New Style Design and filed a patent application for the Patent Pending Design. This was not disclosed before the summary judgment motions.

Cameron maintains Duhn has not identified which particular claims of the '925 Patent are infringed by the New Designs, although Duhn's experts in their reports and depositions assert that the New Designs infringe the '925 Patent. However, Duhn asserts prior to Cameron's filing of its partial motion for summary judgment of no infringement, Cameron never identified in discovery any products being made, sold, or used with the New Designs. In fact, Duhn claims it was surprised by Cameron's assertion that Cameron was manufacturing products incorporating the New Style Design because Cameron did not identify in discovery, after being requested to do so, any of its products using the New Designs.

### III.  Discussion.

Duhn maintains the Court lacks jurisdiction to award Cameron declaratory relief where no actual case or controversy exists because the declaration Cameron seeks is not ripe for decision and any opinion the Court issues would be advisory. Duhn also argues Cameron never disclosed information during discovery that the New Designs existed, were being made, used, offered for sale, or sold despite Duhn's written discovery requests seeking identification of each of Cameron's wellhead isolation tools. Although not clearly articulated, Duhn advances two distinct arguments to strike Cameron's partial motion for summary judgment of no infringement on justiciability grounds and as a discovery sanction.

Cameron seeks a determination that its New Designs do not infringe claims 1 through 88 of the '925 Patent. Cameron's

opposition argues for the first time, that it seeks partial summary judgment of no infringement for the New Designs as a defense to Duhn's assertion of alleged lost profits damages, and that Duhn misconstrues the purpose of Cameron's no infringement motion.

A.  <u>Standard for Declaratory Relief</u>.

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("Act"), authorizes federal courts to declare the rights and other legal relations of parties when an actual controversy exists. Specifically, the Act provides

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

It is well-settled that the Act's "actual controversy" requirement is the same as the case or controversy requirement of Article III of the United States Constitution. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).  The Act requires no more stringent showing of justiciability than the Constitution does. *Societe de Conditionnement*, 655 F.2d at 942.  Issuing a judgment in a case without an actual controversy is an advisory opinion, which is prohibited by Article III of the United States Constitution. *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990). Concrete legal issues, rather than abstractions, are

required for adjudication of constitutional issues. *Id.* Where the alleged controversy is hypothetical, federal courts do not have the authority to grant declaratory relief. *Sellers v. Regents of the Univ. of California*, 432 F.2d 493, 500 (9th Cir. 1970).

> A "controversy" in this sense must be one that is appropriate for judicial determination . . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot . . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts . . . .

*Aetna*, 300 U.S. at 240-41 (citations omitted). "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

The standard for declaratory relief under the Act also applies to cases involving patent infringement. *See MedImmune, Inc. v. Genentech, Inc.*, – U.S. –, 127 S. Ct. 764 (2007). It is well-settled

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment.

*Id.* at 771 (internal quotations and citations omitted).

**B.   Justiciability of Cameron's Partial Motion for Summary Judgment of No Infringement.**

Cameron's suggestion that its disputed motion is limited to narrow the issues for trial related to Duhn's claim for lost profits[1] is unavailing for two reasons.  First, the motion itself specifically states

> Defendant Cooper Cameron Corporation ("Cameron") will and hereby does move the Court for an Order entering Partial Summary Judgment of No Infringement Regarding Defendant's Patent Pending and New Style Designs.  In particular, Defendant Cameron asks this Court to grant a partial summary judgment in favor of Defendant, finding that Defendant's Patent Pending and New Style designs do not infringe Claims 1-88 of Plaintiff Duhn Oil Tool, Inc. ("Duhn Oil")'s United States Patent No. 6,920,925 ("the '925 Patent").

Cameron's motion does not mention that its purpose is to negate an element of Duhn's claim for lost profits damages.  Profits are mentioned only twice in Cameron's supporting memorandum of points and authorities.  First, "[Duhn] relies upon its assertion that the Patent Pending Design infringes as a basis for its alleged lost profits damages clam[;]" and "[Duhn] relies upon this alleged infringement in support of its alleged lost profits

---

[1] The prevailing party in a successful suit for patent infringement is entitled to an award of lost profits. *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996).  The Federal Circuit uses the *Panduit* test, which was articulated by the Sixth Circuit in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978).  The *Panduit* test is as follows: To obtain as damages the profits on sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) the absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would have made. *Panduit*, 575 F.2d at 1156.  Cameron contends its New Designs are acceptable noninfringing products that prevent Duhn from recovering lost profits.

damages claim[,]" which apparently comes from Duhn's damages expert's report. Cameron argues "[f]or the foregoing reasons and authorities cited, Defendant Cameron respectfully requests that this Court grant a partial summary judgment in favor of Defendant, finding that Defendant's Patent Pending and New Style designs do not infringe Claims 1-88 of the '925 Patent."

Second, Cameron's opposition asserts:

> Defendant Cameron's request for summary judgment of no infringement regarding its alternative Patent Pending and New Style designs was not filed as a request for a declaratory judgment pursuant to Defendant's declaratory judgment counterclaims of noninfringement. The summary judgment motion was filed in order to narrow for trial the issues underlying Plaintiff's claim for alleged lost profits damages.

Cameron later states in a footnote:

> [i]n the event that Plaintiff Duhn Oil may withdraw its claim for alleged lost profits damages in this action in an attempt to avoid a finding of noninfringement regarding Defendant Cameron's Patent Pending and New Style designs, Cameron would assert that this Court should resolve these noninfringement issues under its discretionary declaratory judgment jurisdiction, which Cameron respectfully asserts could be more efficiently handled in this current action as opposed to a separate declaratory judgment action as Plaintiff Duhn Oil apparently desires.

These contradictory statements do not support Cameron's contention that the new claims have the sole purpose of negating Duhn's lost profits damage claim. Cameron seeks a declaratory judgment of no infringement of the '925 Patent for its New Designs. Judicial efficiency does not determine whether a claim is ripe for review.

    1.   <u>Cameron's New Style Design</u>.

Duhn first learned on September 28, 2007, that Cameron was actually manufacturing the New Style Design, when Cameron filed

9

its partial motion for summary judgment of no infringement and first identified the New Designs.  Throughout this case, Duhn has only asserted that Cameron's Old Style Design infringes the '925 Patent.  During discovery, Duhn repeatedly sought to identify each wellhead isolation tool designed, manufactured, sold, leased, or distributed by or on behalf of Cameron since July 26, 2005.  Cameron, in its responses and supplemental responses to Duhn's requests, only identified the Old Style Design.  Similarly, Duhn's responses to Cameron's discovery requests indicated only the Old Style Design infringed the '925 Patent, because Duhn did not know the New Style Design existed.

Duhn's contention that this case is not ripe for review due to the lack of a factual record regarding the New Style Design is unavailing.  Duhn argues the lack of a factual record does not allow Cameron, Duhn, or the Court to identify a definite and concrete dispute over any adverse legal rights between Cameron and Duhn.  If Cameron is manufacturing the New Style Design as it says it is, then Duhn should be able to determine, by reopening discovery, whether the New Style Design infringes the '925 Patent.  Ripeness addresses the legal relationship between the parties, the imminency of harm, and inquires whether a dispute is ready for review.  The lack of an undeveloped factual record does not make a case unripe for decision.  Additional discovery may reveal a definite and concrete dispute.

Here, Cameron alleges it has the New Style design in production and the Patent Pending Design before the PTO and intends to market those products.  Duhn also argues the New Style Design was not on the market when it commenced this case and that

10

Cameron failed to produce evidence of or that the New Style Design was available at any time prior to the submission of reports by Duhn's damages expert, which do not address the New Style Design.  Duhn admits it only discovered the New Style Design existed when Cameron filed this motion for partial summary judgment of no infringement on September 28, 2007.

No discovery has been conducted on this product.  Further discovery is required to ascertain whether Cameron's New Style Design infringes Duhn's '925 Patent.  A Rule 56(f) motion is in order.  However, the trial is currently set in January 2008.

    2. <u>Cameron's Patent Pending Design</u>.

No evidence has been provided that Cameron's Patent Pending Design has progressed beyond the design stage.  Cameron only alleges that it has filed a patent application for the Patent Pending Design.  Cameron does not assert that the Patent Pending Design is being manufactured, or that it has a working model.  Cameron asks the Court to determine that Cameron's Patent Pending Design, whether in practice, or in theory, does not infringe Duhn's '925 Patent.  The USPTO can require that Cameron change the design of the Patent Pending Design or it can decline to issue Cameron a patent with respect to the Patent Pending Design.  It is premature to determine the legality of Cameron's Patent Pending Design, in advance of issuance of such a patent.  Cameron does not allege it has practiced the invention, or that the product is offered for or on sale.  No infringement is alleged.

As yet, no adverse legal relationship exists between Duhn and Cameron over Duhn's '925 Patent and Cameron's Patent Pending Design.  Duhn's application to strike Cameron's motion for

1  partial summary judgment of no infringement regarding Cameron's
2  Patent Pending Design is GRANTED as the necessary actual
3  controversy to satisfy the ripeness requirement for declaratory
4  relief does not exist.

5      C.    <u>Prejudice to Duhn</u>.

6      Permitting Cameron to proceed with its partial motion for
7  summary judgment of no infringement without discovery would
8  substantially prejudice Duhn.  Duhn has had no opportunity to
9  examine any Cameron product incorporating the New Designs or
10 learn anything about the New Designs.  A declaration of no
11 infringement of the '925 Patent by the New Designs at this point
12 in time would preclude Duhn from asserting an affirmative
13 infringement claim, or from knowing anything about the subject
14 matter of the products incorporating the New Designs.  Cameron
15 did not identify a single product incorporating the New Designs
16 in discovery.  Duhn has been unable to analyze whether such
17 products would infringe the '925 Patent.  The Federal Circuit's
18 opinion in *Polymer Indus. Prods. Co. v. Bridgestone/Firestone,*
19 *Inc.*, 347 F.3d 935 (Fed. Cir. 2003), requires Duhn to bring a
20 compulsory counterclaim under Federal Rule of Civil Procedure
21 ("FRCP") 13(a) or be forever barred from bringing an infringement
22 claim against Cameron for infringement of the '925 Patent by the
23 New Designs.  This presents Duhn with an impossible situation; on
24 the eve of trial, after the discovery cut-off, it has no
25 knowledge of the new products or invention.

26     Duhn's counsel states that Cameron never identified the New
27 Designs in response to Duhn's discovery requests.  Cameron does
28 not dispute this.

1   Cameron, however, has explained that earlier in this case it
2   successfully moved to exclude Duhn's counsel, Christie, Parker &
3   Hale LLP ("CPH"), from obtaining access to confidential
4   information designated "attorney's eyes only."  CPH provides Duhn
5   with both patent prosecution and patent litigation services.  CPH
6   prosecutes patents on behalf of Duhn that are in the same patent
7   family that Cameron currently has at least one patent application
8   pending before the USPTO.  Because of CPH's dual, service
9   providing role, Duhn has had to employ the services of an
10  additional law firm, Thomas, Whitelaw & Tyler LLP ("TWT"), in
11  this case.  TWT is the firm that possesses the relevant
12  attorney's eyes only information regarding the New Designs;
13  neither CPH nor Duhn have access to this information.
14  Information regarding the New Designs was revealed in the
15  parties' damages expert's reports in June 2007.  CPH is not privy
16  to these reports, which adequately explains why neither CPH nor
17  Duhn knew about the New Designs until Cameron filed its partial
18  motion for summary judgment of no infringement on September 28,
19  2007.
20
21                          IV.  Conclusion.
22       For the foregoing reasons, Duhn's *ex parte* application to
23  strike Cameron's motion for partial summary judgment of no
24  infringement is GRANTED, with respect to Cameron's Patent Pending
25  Design, and the ruling is deferred with respect to Cameron's New
26  ///
27  ///
28  ///

Style Design, pending a modification of the schedule in this case.

**IT IS SO ORDERED.**

**Dated:** November 8, 2007              /s/ Oliver W. Wanger
                                         **UNITED STATES DISTRICT JUDGE**