IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DUHN OIL TOOL, INC., | ) | No. CV-F-05-1411 OWW/GSA |
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER GRANTING  PLAINTIFF'S |
| Plaintiff, | ) | MOTION FOR LEAVE TO AMEND |
| | ) | COMPLAINT AND FOR JURY TRIAL |
| vs. | ) | FOR PROPOSED AMENDMENT (Doc. |
| | ) | 268) AND DENYING IN PART AND |
| | ) | GRANTING IN PART DEFENDANT'S |
| COOPER CAMERON CORPORATION, | ) | MOTION FOR LEAVE TO AMEND |
| | ) | AND SUPPLEMENT ANSWER AND |
| | ) | COUNTERCLAIMS (Doc. 274) AND |
| Defendant. | ) | DEFERRING TRIAL ON |
| | ) | DEFENDANT'S NEW CLAIMS |
| | ) | |

Before the Court are two motions to amend.

A.  **DUHN'S MOTION TO AMEND AND FOR JURY TRIAL**.

On January 13, 2009, Plaintiff Duhn Oil Tool, Inc. ("Duhn")
filed a motion for leave to amend its Complaint and request for
jury trial regarding its proposed amendment.  (Doc. 268).  This
motion seeks to amend Duhn's Complaint to assert a claim against
Defendant Cooper Cameron Corporation ("Cameron") for willful

1

infringement of Duhn's '925 Patent and enhanced damages
regarding Cameron's "New Style" and "Original" design frac
mandrels and for a jury trial on the issue of Cameron's willful
infringement.[1]

1. <u>Governing Standards</u>.

Rule 15(a), Federal Rules of Civil Procedure, provides that
"leave [to amend] shall be freely given when justice so
requires." "The purpose of pleading is 'to facilitate a proper
decision on the merits' ... and not erect formal and burdensome
impediments to the litigation process. Unless undue prejudice to
the opposing party will result, a trial judge should ordinarily
permit a party to amend its complaint." *Howey v. United States*,
481 F.2d 1187, 1990 (1973). However, "[t]his strong policy
toward permitting the amendment of pleadings ... must be tempered
with considerations of 'undue delay, bad faith or dilatory motive
on the part of the movant, repeated failure to cure deficiencies
by amendments previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, futility of
amendment, etc.' *Foman v. Davis*, 371 U.S. 178, 182 ... (1962)."
*Schlacter-Jones v. General Telephone of California*, 936 F.2d 435,
443 (9th Cir. 1991). "Prejudice is the 'touchstone of the
inquiry under rule 15(a) ... Absent prejudice, or a strong
showing of any of the remaining *Foman* factors, there exists a
*presumption* under Rule 15(a) in favor of granting leave to

---

[1]Cameron does not oppose Duhn's request for jury trial on the proposed amendment

amend." *Eminence Capital, LLC v. Aspeon, Inc.*, *supra*, 316 F.3d at 1052.  "The party opposing leave to amend bears the burden of showing prejudice." *Serpra v. SBC Telecommunications, Inc.*, 318 F.Supp.2d 865, 870 (N.D.Cal.2004).

a.  <u>Undue Delay</u>.

Cameron argues that leave to amend should be denied because of undue delay.  Cameron asserts that it modified the design for its accused frac mandrels in its rental fleet to shift to the New Style design (by widening the groove so that the lockscrews will not engage the shoulder of the groove) in August 2007.  Cameron modified the design for manufacturing new frac mandrels to return to its Original design (by removing the groove so there is no shoulder for the lock screws to engage) in November 2007.  Cameron contends that Duhn has not shown any good cause for its one year delay in seeking leave to amend.

Cameron refers to Duhn's contention that it discovered "evidence for the first time at its September 24, 2008 inspection" of Cameron's frac mandrels which showed indentations on Cameron's frac mandrels, which comes from instances in the past when the lock screws were screwed in and contacted the frac mandrel.  Cameron asserts that this evidence is not new, referring to the deposition testimony of Duhn's expert, George Boyadjieff, that he saw nothing new at the September 28, 2008 inspection that he had not been aware of before and that the inspection confirmed his report concerning lock screw indentations in previous depositions.  Cameron also refers to its

3

Engineering Bulletin Re Surface Frac Mandrels dated August 21, 2008, which contains a reminder to Cameron personnel that the running procedures for installation of the frac mandrels have been revised so that the lock screws are to remain fully retracted during the entire frac operation.  Cameron argues that Duhn is asserting infringement against the New Style and Original designs regardless of whether the lock screws are engaged, referring to what Cameron describes as Duhn's "capable of dual load path" interpretation of the "wherein" clause discussed in Cameron's motion for partial summary judgment  that Cameron's Original and New Style designs do not infringe Claims 1-88 of Duhn Oil Tool, Inc.'s (Duhn) '925 patent.  Cameron argues that "it makes no sense for Plaintiff to assert that a purportedly recent discovery that some instances have occurred in the past in which the lock screws were engaged with the frac mandrel somehow now qualifies as new evidence to excuse Plaintiff's over one year of undue delay in seeking leave to amend its Complaint." Cameron contends that Duhn has been asserting infringement for its New Style and Original designs "from the outset of Cameron's shift to these designs over a year ago."  Cameron notes that it filed its motion for summary judgment of no infringement for the New Style design in September 2007 and refiled the motion to include the Original design in May 2008.  Duhn opposed these motions and has been asserting infringement for these designs long before the September 28, 2008 inspection.

Duhn rejoins that Cameron's assertions of undue delay are

4

baseless.   Duhn maintains that since the introduction of its new

design frac mandrels in August 2007, Cameron has represented to

Duhn and the Court that its new designs do not infringe the '925

Patent because the lockscrews "could not" engage the frac

mandrels.   Duhn contends that the "deformations on the new design

frac mandrels, made by torquing in the lockscrews, are so

overwhelmingly and blatantly obvious as confirmed by Duhn's

inspection."   Duhn argues that "Cameron should not be rewarded

for its success in misleading Duhn, and in delaying Duhn's

discovery of the facts."   Duhn asserts:

> It is interesting to note that Cameron now
> tries to subtly mask its misrepresentations
> by stating that it had originally asserted
> that the lockscrews do not 'engage the
> shoulder of the groove.'  This was not
> Cameron's position, as Cameron strongly
> asserted that 'the lockscrews do not engage
> the groove,' which at the time it knew was
> untrue.

Further, Duhn argues, although it believed as early as

August 2007 that the New and Original Style devices infringed the

'925 Patent, "the date that Duhn first claimed that these new

designs infringed is simply irrelevant to the question as to when

Duhn had sufficient evidence to make a charge of willful

infringement."   Duhn contends that Cameron ignores that Duhn had

to meet a heightened standard before it could allege a claim of

willful infringement.

"'Willful infringement is not established by the simple fact

of infringement,' even where the accused has knowledge of the

patents."  *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F.Supp.2d

227, 302 (W.D.N.Y.2008); *see also Honeywell Intern. Inc. v. Universal Avionics Systems Corp.,* 585 F.Supp.2d 636, 642 (D.Del.2008).  "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007), *cert. denied sub nom. Convolve, Inc. v. Seagate Technology, LLC.,* ___ U.S. ___, 128 S.Ct. 1445 (2008).  "[W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement.  Fed. R. Civ. Pro. 8, 11(b)."  *Id.* at 1374.  Duhn contends that, in the months following Cameron's introduction of the New and Original Styles, Duhn had sufficient evidence to claim that Cameron was violating the '925 Patent by "making, selling, using or offering for sale a patented device."  However, Duhn asserts, it was only after a year of discovery that Duhn developed a good faith belief that Cameron was willfully infringing the '925 Patent.  Duhn asserts:

> For example, Duhn discovered that Cameron issued a 'Reminder' notice in August 2008, where it admitted that its installers were still engaging the lockscrews in the New and Original Style frac mandrels.  Shortly thereafter in September and November 2008, Duhn conducted two inspections of Cameron's storage facilities.  At these inspections, Duhn for the first timely firmly established clear and convincing evidence of Cameron's reckless actions.  Within two court days thereafter, Duhn filed its motion for leave to amend to assert Cameron's willful conduct, and to seek a preliminary injunction.

b.   <u>Futility</u>.

Cameron argues that leave to amend should be denied on the ground of futility.

Cameron cites *In re Seagate Technology, LLC, supra,* 497 F.3d 1360.

In *Seagate*, Convolve, Inc. and MIT sued Seagate for patent infringement.  Prior to the lawsuit, Seagate retained an attorney, George Sekimura, to provide opinions concerning Convolve's patents.  Seagate's opinion counsel operated separately and independently of trial counsel at all times. Seagate notified Convolve of its intent to rely on Sekimura's three opinion letters in defending against wilful infringement, and it disclosed all of Sekimura's work product and made him available for deposition.  Convolve moved to compel discovery of any communications and work product of Seagate's other counsel, including its trial counsel.  The District Court ruled that Seagate had waived the attorney-client privilege for all communications between it and any counsel concerning the subject matter of Sekimura's opinions, that the waiver began when Seagate first gained knowledge of the patents and would last until the alleged infringement ceased, or ordered production of any requested documents and testimony concerning the subject matter of Sekimura's opinions.  Seagate filed a petition for writ of mandamus in the Federal Circuit.  In holding "as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver

7

of the attorney-client privilege for communications with trial

counsel," the Federal Circuit stated:

> Further outweighing any benefit of extending
> waiver to trial counsel is the realization
> that in ordinary circumstances, wilfulness
> will depend on an infringer's prelitigation
> conduct.  It is certainly true that patent
> infringement is an ongoing offense that can
> continue after litigation has commenced.
> However, when a complaint is filed, a
> patentee must have a good faith basis for
> alleging willful infringement.  Fed. R. Civ.
> P. 8, 11(b).  So a willfulness claim asserted
> in the original complaint must necessarily be
> grounded exclusively in the accused
> infringer's pre-filing conduct.  By contrast,
> when an accused infringer's post-filing
> conduct is reckless, a patentee can move for
> a preliminary injunction, which generally
> provides an adequate remedy for combating
> post-filing wilful infringement.  *See* 35
> U.S.C. § 283; *Amazon.com, Inc. v.
> Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350
> (Fed.Cir.2003).  A patentee who does not
> attempt to stop an accused infringer's
> activities in this manner should not be
> allowed to accrue enhanced damages based
> solely on the infringer's post-filing
> conduct.

497 F.3d at 1374.

Relying on this statement, Cameron argues that Duhn's

belated motion for preliminary injunction, filed over one year

after Cameron shifted to its New Style and Original designs, does

not cure Duhn's undue delay and place Duhn in the position of a

patentee who had timely filed a motion for preliminary

injunction.  Cameron contends:

> Plaintiff's undue delay in filing its current
> motion for preliminary injunction places
> Plaintiff in the same position as the
> patentee that the Federal Circuit refers to
> in its *Seagate* holding - the patentee who has

8

> declined to seek a preliminary injunction and
> thus shall not be allowed to pursue a claim
> for wilful infringement for post-filing
> activity.

Cameron asserts that, if leave to amend is granted to allege a claim for wilful infringement of the '925 Patent by the New Style and Original designs, Cameron will file a motion to dismiss the claim pursuant to Rule 12(b)(6), based on *Seagate's* "holding." Therefore, Cameron argues, the Court should deny leave to amend on the ground of futility.

On July 7, 2007, Duhn filed a motion for leave to amend the Complaint to allege that willful infringement and to seek enhanced damages on the ground that Cameron had recently informed Duhn that "although it had created such a design around, Defendant had not yet adopted it and was still using and selling the accused product." (Docs. 101-102). On August 22, 2007, Duhn withdrew this motion for leave to amend:

> In accordance with the holding of the United
> States Court of Appeals for the Federal
> Circuit in *In re Seagate Technology, LLC ...,*
> Plaintiff ... hereby withdraws its pending
> Motion for Leave to File an Amended
> Complaint.  This withdrawal is without
> prejudice as Plaintiff intends to file a
> Motion For a Preliminary Injunction and to
> renew its Motion for Leave to File an Amended
> Complaint if a preliminary injunction is not
> granted.

(Doc. 108). Cameron asserts that, after stating that it would be filing a motion for preliminary injunction, Duhn delayed almost 15 months and is now for the first time asking for a preliminary injunction. Cameron argues that if Duhn had a valid claim for

wilful infringement after Cameron shifted to the New Style and Original designs, Duhn should have filed a motion for preliminary injunction then:

> Plaintiff cannot be allowed to sit back and attempt to accrue over a year of enhanced damages for alleged wilful infringement, and then later seek to obtain a preliminary injunction to attempt to stop the alleged infringement.  Plaintiff's undue delay precludes its from qualifying to assert a claim for wilful infringement and precludes Plaintiff from qualifying for preliminary injunctive relief.

Duhn argues that Cameron misreads *Seagate*.  *Seagate*, Duhn contends, confirmed that a patentee must have a good-faith belief prior to making a charge of wilful infringement in its Complaint, but that enhanced damages can accrue from the time the wilful infringement starts.  Duhn asserts:

> Due to Cameron's successful efforts in hiding its post-filing behavior, Duhn could not establish a good faith basis for seeking enhanced damages until November 2008, when it finally got conclusive photographic evidence of Cameron's knowing infringement.  Here, consistent with *Seagate*, Duhn now has the sufficient good faith belief to seek enhanced damages, and has strong evidence that Cameron's infringement has been wilful since August 2007.

Duhn notes that *Seagate* also states:

> We also recognize that in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced.  In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case.

10

*See also ACCO Brands, Inc. v. PC Guardian Anti-Theft Products,*
*Inc.,* ___ F.Supp.2d ___, 2008 WL 5114327 (N.D.Cal.2008):

> Defendants seek summary judgment on
> plaintiff's claim that defendants'
> infringement of the '794 patent was willful.
> Defendants' only argument in this regard is
> that *In re Seagate Technology, LLC,* 497 F.3d
> 1360 (Fed.Cir.2007) stands for the
> proposition that a willful infringement claim
> cannot be based on alleged conduct after the
> filing of the lawsuit if the patentee does
> not file for a preliminary injunction.  The
> Federal Circuit did not hold, however, that
> only conduct after the patentee files for a
> preliminary injunction may be considered as
> the basis of a willfulness claim.  *See id.* at
> 1374 ('whether a willfulness claim based on
> conduct occurring solely after litigation
> began is sustainable will depend on the facts
> of each case.') ....

Cameron's arguments based on Duhn's earlier motion for leave to amend are not particularly persuasive because the record establishes that Duhn's earlier motion was directed to Cameron's continued use of the TSWS (the Old Style).  However, it is arguable that Duhn's delay in seeking a preliminary injunction and leave to amend allows it to do what the Federal Circuit said it cannot do, allow accrual of enhanced damages in the absence of a preliminary injunction.  Resolution will depend on how strong Duhn's evidence is that Cameron affirmatively mislead Duhn and the Court, i.e., such that Duhn could not have sought preliminary injunctive relief; however, that is a question of fact, especially given Cameron's contentions that Duhn mislead Cameron about what would constitute infringement of the '925 Patent.  As noted, there is evidence that Duhn believed all along that the

1   New Style and Original devices infringed the '925 Patent.  Duhn's

2   contentions that only after the September 2008 inspection did it

3   have a good faith belief of *willful* infringement sufficient to

4   enable it to move for preliminary injunction and to amend are

5   almost impossible to resolve without a full trial.  In an

6   abundance of caution, Duhn's motion to amend is granted; the

7   disputes about who mislead who, when and how pertain more to

8   whether or not Duhn will succeed on the claim of willful

9   infringement on the merits and, if it does, the amount of

10  enhanced damages.

11      Duhn's motion to amend is GRANTED WITHOUT PREJUDICE as this

12  ruling does not decide the underlying issues on the merits.

13      B.   <u>CAMERON'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS</u>

14  <u>ANSWER AND COUNTERCLAIM</u>.

15      Cameron moves for leave to amend its Answer and Counterclaim

16  to assert defenses and counterclaims of unenforceability

17  regarding U.S. Patent No. 7,322,407 entitled "Wellhead Isolation

18  Tool and Method of Fracturing a Well" (the "407 Patent"), issued

19  to Duhn on January 29, 2008, and U.S. Patent No. 7,416,020

20  entitled "Wellhead Isolation Tool, Assembly & Method" (the "020

21  Patent"), issued to Duhn on August 26, 2008.  Cameron argues that

22  Duhn's alleged failure to give notice of the Patent Office as

23  required by Section 2001.06(c) of the Manual of Patent Examining

24  Procedure ("MPEP"),[2] and failure to disclose other material

25  _____

26      [2]MPEP § 2001.06(c) provides:

12

information arising in this litigation, including Cameron's allegations of inequitable conduct, while prosecuting related patent applications before the Patent Office, constitutes inequitable conduct which renders the 407 Patent and the 020 Patent unenforceable, and infects the related '925 Patent to render it unenforceable as well on the grounds of reverse infectious inequitable conduct or the more general "unclean hands" doctrine.

In support of its theory of reverse infectious inequitable conduct, Cameron cites *Nilssen v. Osram Sylvania, Inc.,* 504 F.3d 1223, 1230 (Fed.Cir.2007), *cert. denied,* ___ U.S. ___, 128 S.Ct. 2938 (2008).

In *Nilssen*, an inventor and exclusive licensee brought an action against a competitor alleging infringement of patents relating to compact florescent light bulbs and to ballasts for gas discharge lamps such as florescent light bulbs.  The District Court held that the patents were unenforceable due to inequitable conduct.  The Federal Circuit affirmed:

_____

> Where the subject matter for which a patent is being sought is, or has been involved in the litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office; such as, for example, evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure.'  Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents, and testimony.

We conclude that the district court did not abuse its discretion in holding that Nilssen engaged in inequitable conduct with respect to the '345 and '690 patents by submitting affidavits by Fiene in support of patentability, including points of distinction over prior art patents, without informing the examiner of the affiant's relationship to Nilssen.  Even though the examiner did not raise a question concerning any such relationship, it is material to an examiner's evaluation of the credibility and content of affidavits to know of any significant relationship between an affiant and an applicant ...; failure to disclose that relationship violated Nilssen's duty of disclosure.  As for the '067 and '342 patents, appellants do not contest the materiality of the prior art references the district court found were intentionally withheld during their prosecutions.  Because inequitable conduct with respect to one or more patents in a family can infect related applications, *see Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 916 F.2d 804 (Fed.Cir.1990), we find no abuse of discretion in the district court's holding the '345, '690, '067, and '342 patents unenforceable prior to determining whether the inequitable conduct related to each of those four patents should render additional related patents unenforceable as well.

504 F.3d at 1229-1230.

Duhn points out that *Nilssen* does not involve a theory of infectious inequitable conduct.   *Nilssen* noted at page 1228:

[T]he court concluded that Nilssen had engaged in inequitable conduct in the prosecution of the '342 patent and the '067 patent as well as the '806, '043, and '681 patents by failing to identify to the PTO relevant prior art of which he had knowledge. However, the court found that the 'descendent relationship' of the '123, '043, '386, '409, and '160 patents to the '342 patent did not render them unenforceable through what it referred to as the 'doctrine of infectious unenforceability.'

14

Duhn suggests in a footnote that "[s]uch a misstatement of the law, even if made through carelessness, is sanctionable," citing *Moser v. Bret Harte Union High School District,* 366 F.Supp.2d 944, 960 (E.D.Cal.2005), and contends that one possible sanction would be the denial of Cameron's motion to amend.

Cameron responds:

> Although the district court in *Nilssen* had decided not to apply the doctrine of infectious unenforceability, based on a finding that there was not 'sufficient relatedness' among the patents demonstrated, the Federal Circuit did not reach these issues because it affirmed the direct unenforceability of each of the patents at issue, without having to apply infectious inequitable conduct. It appears that both Plaintiff and Cameron misread the finer details of the Federal Circuit's decision in *Nilssen,* but the bottom line remains the same - the application of infectious inequitable conduct depends on the relatedness of the patents at issue, and is not necessarily limited as to whether the relatedness is forward or reverse.

Duhn argues that leave to amend to allege a claim based on reverse infectious inequitable conduct or unclean hands should be denied on the ground of futility. Duhn notes that Cameron cites no case law that actually discusses the theory of reverse infectious inequitable conduct and asserts that a review of case law demonstrates why.

Duhn cites *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1370 n.10 (Fed.Cir.2008), *Petition for Certiorari Filed,* Jan. 16, 2009 (No. 08-918): "It is clear that the events in June 2002 and the events that followed cannot

15

1  render the '649 patent unenforceable due to inequitable conduct

2  because the '649 patent had already issued."   In *Pharmacia Corp.*

3  *v. Par Pharmaceutical, Inc.,* 417 F.3d 1369, 1374 (Fed.Cir.2005),

4  the Federal Circuit held:

5          Par asserts that a terminal disclosure can
         bind two related patents together so that
6          inequitable conduct in procuring a later
         prosecuted patent will automatically infect
7          an earlier issued patent.  The district court
         correctly rejected that assertion.

8

9      Duhn also cites *Ristvedt-Johnson, Inc. v. Brandt, Inc.*, 805

   F.Supp. 549, 556 (N.D.Ill.1991):
10

11          [T]he unclean hands doctrine does not apply
         in this case.  In *Keystone* and *Precision*, the
12          Supreme Court required a connection or
         relationship between the alleged
13          unconscionable acts and Brandt's request that
         this court refuse to enforce the patents-in-
14          suit.  Brandt, however, proved no immediate
         and necessary relationship between the '212,
15          '531, '561, and '043 patents and the '280 and
         '003 patents.  Brandt did not prove
16          inequitable conduct on any patent in this
         lawsuit.  Ristvedt-Johnson filed the '280 and
17          '003 patents years before the events
         supporting the inequitable conduct
18          allegations.  Brandt has shown no reason that
         Cummins' conduct years later on other free-
19          standing patent applications should render
         the '280 and '003 patents unenforceable.

20  Duhn also cites SSIH Equipment S.A. v. U.S. Intern. Trade Com'n,

21  718 F.2d 365, 378-379 (Fed.Cir.1983):

22          The 'inequitable conduct' is said to arise
         from a failure on the part of S-W to inform
23          the patent examiner of certain acts alleged
         to constitute a possible on-sale bar under 35
24          U.S.C. § 102(b) to all but the '762 patent.
         This inequitable conduct is not said to have
25          occurred in connection with procurement of
         the '762 patent.  Rather, SSIH relies solely
26          on the supposition that all of the patents

16

> are so interrelated that S-W's 'unclean
> hands' with respect to the later patents
> renders the '762 patent unenforceable.  We
> reject this contention as a matter of law.
>
> The acts which are alleged to have taken
> place all occurred after the '762 patent
> issued and do not deal with the invention
> claimed in the '762 patent.  Moreover, the
> '762 patent issued almost three years before
> any of the other patents were applied for.

Duhn also cites *Noll v. O.M. Scott & Sons Co.*, 467 F.2d 295, 303 n.6 (6th Cir.1972), *cert. denied*, 411 U.S. 965 (1973): "There was no proof offered as to the truth or falsity of the representations.  If they were false, such conduct could only invalidate the patents in whose applications the assertions were made."

Cameron responds that the cases upon which Duhn relies did not involve "the direct link we have in the present case."   With regard to *Pharmacia Corp.,* Cameron argues:

> If [Duhn] were correct and Federal Circuit
> law would never allow for the application of
> infectious inequitable conduct to render
> unenforceable an earlier issued patent, then
> the *Pharmacia* court would not have needed to
> address the question of whether a terminal
> disclaimer is a sufficient link to apply the
> doctrine of infectious inequitable conduct.
> The *Pharmacia* holding therefore supports the
> doctrine of reverse infectious inequitable
> conduct, but holds that a terminal disclaimer
> is not a sufficient link to meet the
> 'immediate and necessary relation' standard.

Cameron has cited no authority holding that inequitable conduct in the application process before the Patent Office for later issued patents invalidates an earlier issued patent with respect to which no inequitable conduct is alleged.  Furthermore,

17

Cameron's reading of *Pharmacia* is bootstrapping.

In *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933), the Supreme Court affirmed the Sixth Circuit's ruling that all five patents-in-suit were unenforceable due to unclean hands. The Supreme Court stated that "courts of equity do not make quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Id.* at 245. The Supreme Court relied on two factors in applying the test for unclean hands. First, the plaintiff had paid a witness in an earlier suit concerning three of the patents to suppress evidence relating to a prior use of the invention claimed in one. The plaintiff obtained a decree of validity in that earlier case and had relied on that decree to apply for a temporary injunction in the case before the Court. Second, the devices covered by the five patents-in-suit were "important, if not essential, parts of the same machine." *Id.* at 246. The Supreme Court considered the relation of the inequitable conduct to the equity requested by the plaintiff; namely, enforcement of each of the separate patents-in-suit. The plaintiff was able to rely on the decree inequitably obtained in the earlier suit in its attempt to enforce all of the patents in the case before the Court. Thus, the plaintiff's unclean hands had a direct effect on each of the causes of action for patent infringement asserted by the plaintiff. For that reason, all of the patents were

unenforceable.

In *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945), the Supreme Court held that three Automotive patents-in-suit were unenforceable for unclean hands.  The application that led to one of the patents was filed by an employee of defendant Precision Instrument.  However, the alleged inventor had obtained his information indirectly from Automotive's inventor named on the other two patents.  During the prosecution of the application, the Patent Office declared an interference between one of the Automotive applications and the Precision Instrument employee's application.  Precision Instrument's alleged inventor filed a false statement concerning the dates of the invention.  Automotive discovered the fraud, and the parties settled the interference without notifying the Patent Office of the inequitable conduct.  In the settlement agreements, the defendants assigned all of their rights in the patents to Automotive and acknowledged the validity of the claims that would issue on the application.  The suit before the Court was brought to enforce the agreements and the patents.  The Supreme Court stated that "[t]he history of the patents and contracts in issue is steeped in perjury and undisclosed knowledge of perjury."  *Id.* at 816.  The Supreme Court followed *Keystone Driller* and determined that Automotive's inequitable conduct in not disclosing to the Patent Office the false affidavit impregnated the entire cause of action and justified dismissal under the unclean hands doctrine.  Inequitable conduct was present in the

patents that were the subjects of the settlement contracts and that conduct related to the entire cause of action to enforce those contracts.  *Id.* at 819.

Relying on these Supreme Court cases, Cameron argues:

> Plaintiff's misconduct in the Patent Office during the prosecution of the '407 and '020 patents, regarding the disputed 'wherein' clause that has become the focal point of the concurrent litigation in which Plaintiff is enforcing the '925 patent, provides the direct link that the Federal Circuit requires to apply the doctrines of unclean hands and infectious inequitable conduct to render unenforceable a family of related patents.

The absence of on-point authority to support Cameron's contention that Duhn's alleged failures to comply with Section 2001.06(c) of the MPEP in connection with patent applications resulting in patents issued in January and August 2008, renders unenforceable the '925 Patent issued on July 26, 2005, is significant.  The case authority cited by Duhn indicates that an otherwise validly issued patent cannot be made unenforceable because of inequitable conduct occurring years later in connection with the issuance of other patents.  The fact that the later issued patents may relate in subject matter to the initial patent does not appear to be the kind of link relied upon by the Courts.  The cases require that the inequitable conduct must be traceable to the original patent.

Cameron's motion to amend its Answer and Counterclaims to challenge the enforceability of the '925 Patent because of alleged failures to comply with Section 2001.06(c) of the MPEP in

connection with the '407 and '020 Patents is **DENIED** on the ground

of futility.

Cameron's motion to amend seeks to include a claim that the

'407 and '020 Patents are unenforceable because of Duhn's

inequitable conduct.

Duhn argues that leave to amend to include these claims

should be denied:

> This is effectively an effort to introduce
> declaratory relief claims seeking a
> declaration that those two patents are
> unenforceable.  However, such claims must be
> supported by a case or controversy or the
> court has no subject matter jurisdiction to
> adjudicate the claims.

28 U.S.C. § 2201(a) provides that "in a case of actual

controversy within its jurisdiction ... any court of the United

States ... may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not

further relief is or could be sought."

In determining whether declaratory relief can be granted, an

inquiry must be made as to whether there is a case or controversy

between the parties. *Principal Life Ins. Co. v. Robinson*, 394

F.3d 665, 669 (9th Cir.2005); *American States Ins. Co. v. Kearns*,

15 F.3d 142, 144 (9th Cir.1994).  The requirement is identical to

the Article III's constitutional case or controversy requirement.

*Kearns*, 15 F.3d at 144.  In order for a case to be justiciable

under Article III of the Constitution, it must be ripe for

review.  *Id.*  A controversy in this sense must be definite and

concrete, touching the legal relations of the parties having

adverse legal interests.  *West v. Secretary of the DOT*, 206 F.3d 920, 924 (9th Cir.2000).  It must be a real and substantial controversy, admitting of a specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.  *Id.* In *Medimmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007), the Supreme Court explained:

> *Aetna* and the cases following it do not draw the brightest of lines between those declaratory judgment actions that satisfy the case-or-controversy requirement and those that do not.  Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' ... In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 ... (1941), we summarized as follows: 'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'

127 S.Ct. at 771.  The party invoking federal jurisdiction bears the burden of establishing the existence of an actual case or controversy.  *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1228 (9th Cir.1998).  The Ninth Circuit has held that something less than an "actual threat" of litigation is required to meet the "case or controversy" requirement; instead, courts must focus on whether a declaratory plaintiff has a "reasonable

apprehension" that he or she will be subjected to liability. *Paramount Pictures Corp. v. Replay TV,* 298 F.Supp.2d 921, 924 (citing *Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 944 (9th Cir.1981).).

Duhn has not asserted any claims against Cameron based on the '407 and '020 Patents and notes that Cameron presents no evidence that it has any concern that these patents will be asserted against it.  Duhn refers to its arguments that no inequitable conduct allegedly committed in connection with the '407 and '020 Patents has any impact on the enforceability of the '925 Patent.

Cameron argues that Duhn's continued enforcement of the '925 Patent, including claims that are nearly identical to claims in the '407 and '020 Patents, creates a justiciable controversy for the '407 and '020 Patents.  Cameron contends that the fact Duhn has not asserted the '407 and '020 Patents against Cameron does not negate a case or controversy for purposes of declaratory relief.  Cameron contends that a review of the prosecution file history of the '407 and '020 Patents "reveals a purposeful approach to Duhn Oil's continued prosecution of patent applications related to the '925 patent."   Cameron asserts:

> For example, although each of the claims in the '020 patent includes the same disputed 'wherein' clause found in each of the asserted '925 patent claims, Duhn Oil has slightly modified this 'wherein' clause in the '020 patent to change the phrase 'is reacted' to 'will be reacted.'  It is clear to Cameron that Duhn Oil made this change to address Cameron's invalidity contentions in

1        which Cameron asserts that the '925 patent
'wherein' clause is an improper mixed
2        method/apparatus claim.

3        Although this Court has rejected Cameron's
invalidity contentions on this issue, it is
4        clear to Cameron that Duhn Oil had these '020
patent claims issued with this modified
5        language as a backup to assert against
Cameron in the event Cameron ultimately
6        prevails on this issue.   Duhn Oil has
further tweaked other language in the
7        asserted '925 patent claims and succeeded in
getting the Patent Office to issue additional
8        claims in slightly modified forms in the '407
and '020 patents.

9

10       [Duhn Oil] is effectively prosecuting the
instant action in this Court as a trial run
11       to test the '925 patent, while throughout the
process having the Patent Office issue
12       slightly modified claims to address the
defects in the '925 patent claims which
13       Cameron is asserting.   Cameron should be
allowed to bring these related patents into
14       the current action and have them all resolved
efficiently in a single action.

15    Cameron cites *Teva Pharmaceuticals USA, Inc. v. Novartis*

16 *Pharmaceuticals Corp.*, 482 F.3d 1330, 1344 (Fed.Cir.2007),

17 ("[R]elated litigation involving the same technology and the same

18 parties is relevant in determining whether a justiciable

19 declaratory judgment controversy exists on other related

20 patents."); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824

21 F.2d 953, 955 (Fed.Cir.1987)("[T]he current parties have had a

22 clear history of adverse legal interests as shown by the ongoing

23 state court action."); *Vanguard Research, Inc. v. PEAT, Inc.*, 304

24 F.3d 1249, 1255 (Fed.Cir.2002)("By filing the earlier lawsuit and

25 informing Vanguard's clients that Vanguard is using the PEAT

26 technology without a license, PEAT has shown 'a willingness to

protect that technology.' ... Filing a lawsuit for patent
infringement would be just another logical step in its quest to
protect its technology.").

Duhn argues that, even if the Court concludes that it has
jurisdiction to determine the enforceability of the '407 and '020
Patents, the Court should exercise its discretion to deny
Cameron's motion to amend to include these claims.

Under the Declaratory Judgment Act, a district court may
decline to exercise jurisdiction over a declaratory action even
though subject matter jurisdiction is otherwise proper. *Wilton
v. Seven Falls Co.*, 515 U.S. 227, 288-289 (19995); *Brillhart v.
Excess Ins. Co. of America,* 316 U.S. 491, 494 (1942).  In
assessing actions for declaratory judgment, "the normal principle
that federal courts should adjudicate claims within their
jurisdiction yields to considerations of practicality and wise
judicial administration."  *Wilton, id.*, at 289.

Duhn argues that "[g]iven the speculative nature of
Cameron's theory relative to the patent that is at issue in this
case and the extensive additional issues that would be injected
into this case at this late date by having to determine the
enforceability of two additional patents, the court should
exercise its discretion to decline to allow amendment to
introduce such extraneous claims."

Cameron responds: "Considering this Court's familiarity with
the subject, it would make no sense for Cameron to be forced to
bring a separate action to resolve the unenforceability of the

1   '407 and '020 patents in a separate forum."

2      Cameron's motion to amend its Answer and Counterclaims to

3   seek a declaration at the presently scheduled trial that the '407

4   and '020 patents are unenforceable because of Duhn's alleged

5   failures to comply with Section 2001.06(c) of the MPEP in

6   connection with the '407 and '020 Patents does not comport with

7   principles of wise judicial administration.  Although the trial

8   date is months away, there is no claim by Duhn that Cameron's

9   various devices infringe either the '407 or '020 Patents.  If it

10  is determined at trial that one or more of the Cameron devices

11  infringe the '925 Patent and that Cameron's affirmative defenses

12  of invalidity of the '925 Patent are without merit, there is no

13  need to determine the enforceability of the '407 and '020

14  Patents.  Duhn has not given Cameron notice that Cameron is

15  infringing either of these patents.  Conversely, the same is true

16  if Cameron prevails.  Adding declaratory relief invalidity claims

17  that the '407 and '020 Patents are invalid will unduly complicate

18  the upcoming trial.  Amendment will be permitted, but the new

19  declaratory relief claims as to the '407 and '020 Patents shall

20  not be tried with the determination of the validity of the '925

21  Patent.  If the '925 Patent is invalidated, the declaratory

22  relief action will go forward.  If no invalidity of the '925

23  Patent is found, Cameron's declaratory relief claims as to the

24  '407 and '020 Patents will not go forward unless independent

25  grounds of invalidity are identified.

26                          **CONCLUSION**

**For the reasons stated:**

**1.   Duhn's motion for leave to amend and for jury trial on the proposed amended claim is GRANTED;**

**2.   Cameron's motion for leave to amend and supplement its Answer and Counterclaims is DENIED IN PART AND GRANTED IN PART BUT THE NEW INVALIDITY CLAIMS SHALL BE DEFERRED PENDING DETERMINATION OF VALIDITY OF THE '925 PATENT;**

**3.   The amendments permitted by this Memorandum Decision and Order shall be filed within 20 days of the filing date of the Memorandum Decision and Order.**

IT IS SO ORDERED.

Dated:   __March 4, 2009__            _____/s/ Oliver W. Wanger_____
                                                UNITED STATES DISTRICT JUDGE

27