UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DUHN OIL TOOL, INC., | ) | 1:05-cv-1411 OWW GSA |
| | ) | |
| Plaintiff, | ) | ORDER RE: PLAINTIFF'S |
| | ) | MOTION FOR PRELIMINARY |
| v. | ) | INJUNCTION (DOCKET 240) AND |
| | ) | DEFENDANT'S BUSINESS |
| COOPER CAMERON CORPORATION, | ) | PRACTICES REGARDING THE |
| | ) | INSTALLATION AND USE OF ITS |
| Defendant. | ) | FRAC ASSEMBLY |
| | ) | |

Pending before this Court is Plaintiff Duhn Oil Tool, Inc.'s ("Duhn Oil") Motion for a Preliminary Injunction (Docket 240). Plaintiff Duhn Oil seeks a preliminary injunction to enjoin Defendant Cooper Cameron Corporation ("Cameron") from manufacture, sales, installation, use, and rental of Cameron's New Style and Original Design frac mandrels (Docket 240). The evidence has not yet established how many devices are being used in a manner that is infringing. Based on the factual findings that the Court makes that the frac mandrels are used in connection with well-initiation and well-stimulation, that are usually: (1) in the first instance, a well-initiating use and that the time of that use is in the early life of a well, at that time, what I am going to call "the wellhead equipment" in the

1

well is being installed; and (2) there is the possibility of restimulation, which would mean that a frac mandrel would be reutilized at a later time and that time is not specified because of the geology and the unpredictability of knowing when a source of hydrocarbons is going to become limited or unavailable and when there might be a proximate alternative or additional source that could be successfully tapped by frac'ing.

The Court believes that as to the past actions, there is an adequate remedy at law, which would be damages. There is nothing to enjoin there because those wells have been frac'ed, and the frac mandrels previously installed and used. That happened at a time before the relief was sought.

As to future installations of Old Style, the New Style or the Original Design frac mandrels, the Court has been presented strongly conflicting evidence primarily presented by attorneys. We do not have evidentiary declarations that are focused on the issue of the frequency of use and the frequency of infringing conduct by either Cameron or by any agents or persons acting under or on its behalf. Consequently, the Court does not believe that there is yet a sufficient showing for injunctive relief of the scope and of the nature, including the notice requirement that Plaintiffs are seeking.

However, Cameron should start following practices that assure that the lockscrews are not engaged and that any frac mandrels that are new that they sell for installation or use are not going to be used in an infringing way. That could be accomplished by very specific and directed instructions to purchasers or users (lessees) through the instructions that were

promulgated by Cameron as the engineering instructions in 2008.
There are also other steps that could be taken.

The Court hereby orders that accounting records be maintained for each location of any new or, what would be restimulation of existing wells; where frac mandrels that are new that Cameron has some ability to either supervise, control, or provide advice as to operations; that as to all of those records, there be kept: (1) the identity of the owner or operator of the alleged infringing device; (2) description of any time period of operation that is known; (3) a copy of any written instructions furnished by Cameron; and (4) a transcript of any oral instructions that are given to the alleged infringing user by Cameron or its employees or agents, to be recorded on a recording device and transcribed and that such records be maintained by Cameron.

The Court does not believe that injunctive relief is justified in light of the extent and the depth of the factual dispute.  Further, denial of a preliminary injunction is not against the public interest.  In addition, in balancing the hardships, a published order of injunctive relief, would in effect, convict Cameron in the eyes of a very limited industry before a trial on the merits.

It is the belief of the Court that it would be much more damaging to the defendant with very little gain to the plaintiff if the plaintiff ultimately prevails and will be able to, of course, permanently enjoin any infringing use, recover damages and any other remedies that may be appropriate.

Consequently, issuance of a preliminary injunction at this

time would not be a measured and appropriate exercise of equitable discretion on the present evidentiary record.  The court denies Duhn Oil's Motion for Preliminary Injunction, but will require Cameron to adhere to the following accounting practices from now through trial.

    1.    These accounting practices apply to the "Old Style," "New Style," and "Original Design," frac mandrels that are under the control of Cameron.

    2.    For each installation or use of a frac mandrel that falls within paragraph 1, Cameron will maintain accounting records for the following:

        a.    Dates of install, uninstall, if available, and the identity and location of the wellsite;

        b.    Location where each previously installed frac mandrel was installed, if it is not now installed;

        c.    Any written instructions given by Cameron or its employees or agents to the customer and/or installer;

        d.    Transcript of recording of oral instructions from Cameron given to the customer, installer, and/or well owner.  The person giving such instructions shall use a recording device to record oral instructions for all future installations and/or use of any Cameron frac mandrel described in paragraph 1;

        e.    A unique identifier (e.g., serial number) for the frac mandrel used at any future job;

        f.    Identity of the installer; and

        g.    Cameron shall report this information to Duhn on the last Friday of each month, starting in April, 2009.

    3.    Cameron will provide instructions to its frac mandrel

customers, which unambiguously state that the lockscrews are not to be engaged during installation or use of the frac mandrel.

    4. Within 30 days following service of this Order, Cameron shall allow Duhn to photograph each newly installed or newly installed restimulation frac mandrel in a way that shows each frac mandrel's unique identifier as well as its indentation pattern, if any, created by the tightening-in of the lower lockscrews. At reasonable times thereafter, on twenty (20) days' notice, Cameron will permit Duhn to inspect and photograph the frac mandrels and conduct discovery on the installers until trial.

IT IS SO ORDERED.

**Dated: April 1, 2009**     /s/ Oliver W. Wanger
UNITED STATES DISTRICT JUDGE