IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUHN OIL TOOL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COOPER CAMERON CORPORATION, <br><br> Defendant. | No. CV-F-05-1411 OWW/GSA <br><br> MEMORANDUM DECISION AND DENYING DEFENDANT'S MOTION TO STRIKE FIRST AMENDED COMPLAINT (Doc. 294) |

Before the Court is Defendant Cooper Cameron Corporation's ("Cameron") motion to strike portions of Plaintiff Duhn Oil Tool, Inc.'s (Duhn) First Amended Complaint (FAC).

By Memorandum Decision and Order filed on March 4, 2009 (the March 4 Memorandum Decision), Duhn's motion for leave to file to file a First Amended Complaint to assert a claim against Cameron for willful infringement of Duhn's '925 Patent and enhanced damages regarding Cameron's "New Style" and "Original" design frac mandrels was granted. Duhn filed the FAC on March 12, 2009.

Cameron moves to strike those portions of the FAC that

1  Cameron asserts the Court did not grant leave to Duhn to include
2  in the FAC.
3       Pursuant to Rule 12(f), Federal Rules of Civil Procedure,
4  "the court may order stricken from any pleading ... any
5  redundant, immaterial, impertinent, or scandalous matter."
6  "Immaterial" matters are those which have no essential or
7  important relationship to the claim for relief; "impertinent"
8  matters are statements that do not pertain and are not necessary
9  to the issues in question.  *See Fantasy, Inc. v. Fogerty*, 984
10 F.2d 1524, 1527 (9th Cir.1993), *overruled on other grounds,* 510
11 U.S. 517 (1994).  "'Motions to strike on the grounds of
12 insufficiency, immateriality, irrelevancy, and redundancy are not
13 favored ... and will usually be denied unless the allegations
14 have no possible relation to the controversy and may cause
15 prejudice to one of the parties.'" *Friedman v. 24 Hour Fitness*
16 *USA, Inc.*, 580 F.Supp.2d 985, 990 (C.D.Cal.2008).
17      Cameron acknowledges that the FAC specifically limits Duhn's
18 assertion of willful infringement to the New Style and Original
19 design frac mandrels.  However, Cameron complains, the prayer for
20 relief includes a demand for judgment that "Defendant's acts of
21 infringement since August 2007 have been willful."  Cameron
22 argues that this prayer for relief could be read to seek a
23 judgment of wilful infringement for Cameron's installation of
24 customer-owned Old Style frac mandrels since 2007:
25           Since August 2007, Defendant Cameron has
             modified the frac mandrels in its rental
26           inventory to shift to the New Style design,

which has a widened groove, and then returned to the Original design, which has no groove, for the manufacturing of new frac mandrels, but Cameron continues to manage and install customer-owned Old Style frac mandrels which Cameron sold to its customers prior to the shift to the New Style and Original designs.

Duhn responds that Cameron's focus on the prayer for relief ignores the allegations of the FAC which repeatedly and consistently limit the facts and claims to just the New Style and Original Designs. Duhn refers to the "Factual Background" of the FAC:

> 7. When Plaintiff first initiated this action against Defendant on or about November 5, 2005, Defendant was manufacturing, selling, renting, and/or offering to sell and/or rent an infringing product referred to as its 'Old Style' design. Plaintiff's and Defendant's infringement and non-infringement experts, respectively, have both confirmed in discovery that this 'Old Style' design infringes the '925 Patent as it meets all the claim limitations of the '925 Patent.
>
> 8. In August 2007, Defendant attempted to work around infringement by introducing a 'New Style' design. In the 'New Style' design, Defendant merely widened the groove of the frac mandrel where the lock screws set. Other than this insignificant change, the 'New Style' retains all the same infringing structures as Defendant's 'Old Style,' including lockscrews that could be tightened to engage the surface of the frac mandrel.
>
> 9. In November 2007, Defendant re-introduced its 'Original' design in a second attempt to avoid infringement. Defendant's 'Original' design preceded its infringing 'Old Style' design. The 'Original' design is identical to the Defendant's 'Old Style' and 'New Style' designs, except there is no groove on the frac mandrel where the lockscrews set. The lockscrews for the 'Original' design,

however, still set into the outer surface of the frac mandrel, as confirmed during discovery.

10.  Both Plaintiff's own infringement expert and Defendant's witnesses confirmed during discovery that Defendant's 'New Style' and 'Original' designs (collectively 'new designs') infringe the '925 Patent.  For instance, Plaintiff's expert reports that Defendant's new designs contain all the structures claimed by the '925 Patent, including the 'wherein' clause limitation.  Similarly, Defendant's own senior principal engineer testified at a deposition in [sic] May 29, 2008 that the lockscrews on these new designs indented the frac mandrel when there were torqued into the frac mandrel and will react a sheer force.  He further testified that the lockscrews of the new designs were tightened during fracing to act like set screws to prevent the frac mandrel from rotating and dancing.

11.  Since the introduction of Defendant's new designs in August 2007, Defendant has significantly misrepresented that its new designs do not infringe the '925 Patent.  Defendant has falsely asserted that the lockscrews of these new designs do not engage the frac mandrel and that the new designs are not capable of meeting the claim limitations of the '925 Patent.  To the contrary, Defendant has been fully aware that the lockscrews on these new designs are torqued-in during fracing and that the new designs are capable of meeting the 'wherein' clause of the '925 Patent.  Defendant, for example, sent a reminder bulletin to its employees a year after the introduction of its new designs, in or about August 21, 2008.  In this reminder bulletin, Defendant expressly acknowledges that its installers continued to torque the lockscrews into the new design frac mandrels, thereby infringing the '925 Patent.

13.  Despite knowing that its New Style and Original designs continued to infringe the '925 Patent, Defendant continues to make, sell, rent, use, and offer to sell/rent its

4

>  infringing new designs.
>
>  13.  Defendant knew or should have known that its New Style and Original designs were installed in an infringing configuration. On or about September 24, 2008 and November 6, 2008, Plaintiff inspected several of Defendant's 'New Style' and 'Original' designs at Defendant's storage facilities in Grand Junction, Colorado and Longview, Texas. these inspections revealed blatant indentations and deformations caused by lockscrews still being tightened against the frac mandrels of Defendant's new designs. Defendant knew, or it was clearly obvious to Defendant, that its new designs continued to infringe the '925 Patent.
>
>  14.  Defendant's continued manufacture, sales, rental, use, and offer to sell/rent its infringing 'New Style' and 'Original' designs is deliberate and reckless, and a complete disregard of Plaintiff's rights.

Duhn also refers to Paragraph 19, alleging patent infringement:

>  19.  Defendant's acts of infringement regarding Defendant's New Style and Original designs are deliberate and willful, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285.

Finally, Duhn refers to the prayer for relief seeking judgment that "Plaintiff be awarded enhanced damages since August 2007 in connection with Defendant's activities regarding its New Style and Original Design mandrels, in accordance with 35 U.S.C. § 284 and in view of Defendant's willful infringement."  Duhn argues that Cameron's reliance on the prayer for relief that "Defendant's acts of infringement since August 2007 have been willful," is strictly limited to Cameron's new designs:

>  As clearly set out in paragraph 8 of the First Amended Complaint, August 2007 is when Cameron introduced the Original Design Frac

>Mandrel, and paragraph 9 explains that Cameron introduced the Original Design Frac in November 2007.  In this way, the willful acts referenced in the Prayer are all expressly limited to the New Style and Original Design.

In its reply brief, Cameron accepts Duhn's restrictive reading of the prayer in the FAC but nonetheless requests:

>[T]hat this Court bind Duhn Oil to this understanding of the amended Complaint.  to the extent that Duhn Oil may later attempt to shift its position (as it has cycled through at least five various inconsistent interpretations of the disputed 'wherein' clause in its asserted patent claims), and attempt to seek enhanced damages for Cameron's Old Style design, including Cameron's post-August 2007 management and installation of customer owned Old Style frac mandrels, Cameron respectfully requests that this Court enforce the doctrine of judicial estoppel to prohibit any such attempted shift in position.

Cameron's motion to strike on this ground is DENIED.  The FAC clearly alleges willful infringement only in connection with the New Style and Original design frac mandrels from the specified dates.  Cameron's concern that Duhn might change its position is speculative and can be addressed when and if the issue ever comes up.  The Pretrial Order will supersede the FAC and Cameron may preserve its legal position by assuring that the issues of fact and law are limited to the stated time periods for each device.

Cameron further argues that the FAC adds a substantial new claim seeking an exceptional case finding and attorney's fees under 35 U.S.C. § 285, for which the Court did not grant leave to

1 amend.  Cameron contends that Duhn's unauthorized assertion of a
2 new claim for enhanced damages and for attorney's fees under
3 Section 285 has the potential to dramatically alter the landscape
4 of this action:

> With the recent concession by Duhn Oil that Cameron's accused frac mandrels do not infringe when installed and operated with the tubing head lockscrews fully retracted, it is apparent that Duhn Oil's potential for recovery of money damages in this action is limited, even if Duhn Oil were to succeed on the merits of its remaining infringement claims, and overcome Cameron's invalidity defenses.
>
> Since the Plaintiff has accrued over three years of attorney fees prior to amending its Complaint to assert a new claim for recovery of attorney fees, and within a short time after conceding that its infringement claims are significantly limited to not to apply to Cameron's accused frac mandrels installed and operated with the tubing head lockscrews fully retracted, the bulk of Duhn Oil's potential recovery in this case may now lie in a new claim that had not never before been present in this case.

17      35 U.S.C. § 284 provides that in a patent infringement case,
18 a trial court "may increase the damages up to three times the
19 amount found or assessed."  35 U.S.C. § 285 provides that "[t]he
20 court in exceptional cases may award reasonable attorney fees to
21 the prevailing party."

22      Duhn responds that the March 4 Memorandum Decision allowed
23 Duhn to amend its complaint to add a claim for willful
24 infringement, "and to seek all damages that flow from such a
25 finding."  A finding of willful infringement "merely *authorizes*,
26 but does not *mandate* an award of increased damages."  *Modine Mfg.*

*Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990). An express finding of willful infringement is a sufficient basis for classifying a case as exception under Section 285. *Id.* Duhn contends that the request in the FAC for a finding of "exceptional" case and an award of attorney's fees under Section 285 does not constitute a new claim:

> These are not separate causes of action as they are remedies that are automatically available to the plaintiff pursuant to a finding of willful infringement.

Cameron replies that, whether Duhn's prayers for an exceptional case finding and attorney's fees under Section 285 are characterized as new causes of action or newly asserted remedies, Duhn did not seek leave to amend to include these in its motion for leave to amend. Cameron reiterates its argument quoted above that inclusion of these items dramatically changes the landscape of the litigation.

Cameron's motion to strike is DENIED. Although the exceptional case finding and award of attorney's fees under Section 285 are not mandatory, they become available in connection with a claim of willful patent infringement. Cameron's concern that the possibility of increased attorney's fees applying to the claim of willful infringement for post-2007 activities is a matter that can be addressed if and when it becomes necessary to do so. Duhn has for at least a year asserted that Cameron's infringement is willful. This is no surprise. The remedies incident to a claim of willful

infringement are fairly in play.  They are never mandatory.

Cameron asserts that the FAC adds new allegations of patent infringement based on "manufacture" and "use" without obtaining leave of court.  The Complaint alleged:

> 6.  On information and belief, Defendant, by itself or in concert with others, has offered for sale, sold, is offering for sale and/or is selling ... products which infringe the '925 Patent.
>
> 7.  By its aforesaid acts, Defendant has violated 35 U.S.C. § 271 by its infringement of the '925 Patent.

Cameron argues that the FAC's addition of the distinct statutory classes of "making" and "using" dramatically alters the infringement pleadings over three years into this case.

Duhn responds that the Complaint pled manufacture and use as a basis of infringement because the Complaint asserted that Cameron had violated Section 271.  Section 271(a) provides:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent.

Duhn asserts that the pleading of Section 271 in the Complaint "sufficiently and properly included all the infringing acts outlined in the statute, including 'manufacture' and 'use', into the infringement claim."  Duhn contends that "by broadly asserting patent infringement under 35 U.S.C. § 271 in its original complaint, Duhn already provided notice to Cameron, from the outset of this case, that any of its conduct outlined in the patent statute violates the '925 Patent, including 'manufacture'

9

and 'use.'" Duhn argues that Section 271 does not delineate statutory classes of infringement "because either or any of the listed conduct implicates the same liability under the statute." Duhn contends:

> The infringement charge does not change merely because Duhn now expressly sets out 'manufacture' and 'use' as Cameron's additional infringing acts in its amended complaint. Cameron knew the basis for Duhn's patent infringement charge under 35 U.S.C. § 271 and cannot claim ignorance of that charge.

The Complaint alleged that Cameron "has offered for sale, sold, is offering for sale and/or is selling ... products which infringe the '925 Patent" and that "[b]y its aforesaid acts, Defendant has violated 35 U.S.C. § 271 by its infringement of the '925 Patent.

Duhn further argues that the allegations in the FAC concerning Cameron's manufacture and use constitute permitted supplemental facts pursuant to the March 4 Memorandum Decision. Duhn refers to its opening brief in support of the motion to amend in which Duhn, in addition to seeking leave to add an allegation of willful infringement for the time period starting August 2007, "also seeks leave to amend its complaint to seek enhanced damages, and to supplement the Complaint with further post-filing facts and occurrences." Duhn contends that, because the Court granted its motion to amend, the Court granted permission to Duhn to supplement the Complaint regarding Cameron's continued infringement.

Duhn's motion sought this relief concerning use and manufacture in the conclusion of its motion; it was not discussed in the body of the brief. Nonetheless, the motion to amend was granted.

Finally, Duhn argues that the allegations of manufacture and use have a direct bearing on Duhn's patent infringement claim and do not prejudice Cameron:

> ... Duhn's allegations of 'manufacture' and 'use' are central to its patent infringement claim as they expressly identify Cameron's specific infringing acts that were confirmed during discovery. Extensive discovery has revealed that Cameron continues to manufacture, sell, rent, and install its infringing frac mandrels, despite notice of their infringement. Even Cameron concedes that these allegations are highly relevant to Duhn's charge as it fails to submit any contrary arguments in its moving papers.
>
> ... Cameron makes no showing in its moving papers that it is prejudiced by Duhn's allegations of 'manufacture' and 'use.' Presumably, Cameron does not suffer any harm as Duhn's original complaint and the extensive discovery already conducted by both parties in this case has provided substantial notice to Cameron how its devices and conduct infringe the '925 Patent ... Cameron cannot plead ignorance after three years of extensive discovery and motion practice by now claiming it does not know that manufacturing and using an infringing device infringes the '925 Patent.

Cameron replies that the Court should "not allow Duhn Oil to use this Court's authorization of amendments to the pleadings regarding new assertions of alleged willful infringement as a camel's nose under the tent for Duhn Oil to dramatically alter the infringement pleadings over three years into this case to add

**the distinct statutory classes of 'making' and 'using' as the means by which Defendant Cameron allegedly infringes the asserted patent."**

The motion to strike on this ground is DENIED.  The subject of manufacture has been fully disclosed since Cameron introduced its New Style mandrel.  Cameron asserts no prejudice to it by the inclusion of manufacturing and use to the FAC.

For the reasons stated:

1. Cameron's motion to strike portions of the First Amended Complaint is DENIED.

IT IS SO ORDERED.

**Dated:   June 8, 2009**                    /s/ Oliver W. Wanger
                                            UNITED STATES DISTRICT JUDGE