1  **CHARLES J. ROGERS,** admitted *pro hac vice*
   **CONLEY ROSE, P.C.**
2  **600 Travis Street, Suite 7100**
   **Houston, Texas 77002-2912**
3  **Telephone:  (713) 238-8049**
   **Facsimile:  (713) 238-8008**
4  **e-mail:  crogers@conleyrose.com**

5  Attorneys for Defendant
   Cooper Cameron Corporation
6  n/k/a Cameron International Corporation

7                UNITED STATES DISTRICT COURT

8                EASTERN DISTRICT OF CALIFORNIA

9

10 DUHN OIL TOOL, INC.,                    Case No. 1:05-cv-01411-OWW-GSA

11      Plaintiff/Counterclaim-Defendant,   **DEFENDANT CAMERON'S**
                                            **MEMORANDUM AND POINTS OF**
12      vs.                                 **AUTHORITY IN SUPPORT OF ITS**
                                            **MOTION FOR PARTIAL SUMMARY**
13 COOPER CAMERON CORPORATION,              **JUDGMENT OF NO LOST-PROFITS**
                                            **DAMAGES**
14      Defendant/Counterclaim-Plaintiff.
                                            **Date:   August 31, 2009**
15                                          **Time:  10:00 a.m.**
                                            **Ctrm: 3, Hon. Oliver W. Wanger**
16

17         Defendant Cooper Cameron Corporation, which is now known as Cameron

18 International Corporation, ("Cameron") files this Brief in Support of Its Motion for Partial

19 Summary Judgment of No Lost-Profits Damages ("Motion").   Cameron submits that

20 Plaintiff Duhn Oil Tool, Inc. ("Duhn Oil") is not entitled to lost-profits damages because

21 Duhn Oil cannot, as a matter of law, establish that "but for" Cameron's alleged

22 infringement Duhn Oil would have made all of the sales Cameron made.  Accordingly,

23 Cameron respectfully requests that this Court enter a judgment that, as a matter of law,

24 Duhn Oil is not entitled to lost-profits damages for any alleged infringement of U.S. Patent

25 No. 6,920,925 ("the '925 patent").

26

27

28                                          **Def. Cameron's Mem. in Support**
                                            **of Its Mot. for Partial Summary**
                                            **Judgment of No Lost-Profits**
                                            **Damages**

1
2
3

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................II

TABLE OF AUTHORITIES ......................................................................................... III

TABLE OF EXHIBITS ................................................................................................. V

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARDS .................................................................................... 2

    A.   Legal Standard For Summary Judgment ................................................... 2

    B.   Legal Standard for Lost-Profits Damages ............................................... 3

III.    STATEMENT OF FACTS ............................................................................... 4

    A.   The Accused Products ............................................................................... 4

    B.   No Infringement if Lockscrew are Not Run-In .......................................... 5

    C.   The Lockscrews are NOT Run-In .............................................................. 6

    D.   Installation Checklists ............................................................................... 8

    E.   Customer Bulletins .................................................................................... 9

IV.    SUMMARY OF THE ARGUMENT ............................................................... 10

V.      ARGUMENT: DUHN OIL IS NOT ENTITLED TO LOST PROFITS..................... 10

    A.   Acceptable Non-Infringing Substitutes ................................................... 11

    B.   The *Grain Processing* Decision ............................................................. 12

    C.   Cameron's Confirmed Non-Infringing Frac Mandrel was Available ....... 13

    D.   Cameron's Confirmed Non-Infringing Frac Mandrel is "Acceptable" ................... 14

        1.   Since at Least August 2008, Cameron has only offered non-infringing frac
mandrels.................................................................................................... 15

**Def. Cameron's Mem. in Support
of Its Mot. for Partial Summary
Judgment of No Lost-Profits
Damages**

2.   Cameron's Non-Infringing "Single Load Path" Frac Mandrel is an Acceptable Substitute to Allegedly Infringing "Dual Load Path" Frac mandrels.................. 20

3.   Cameron's Single Load Path Frac Mandrels Do NOT Dance............................. 21

VI.   CONCLUSION ......................................................................................... 22

ii          **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

1

# TABLE OF AUTHORITIES

2

U.S. Supreme Court Cases

3

4

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986). ............................................................................ 3

5

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ....................................................................... 2, 3

6

United States v. Diebold, Inc.,
    369 U.S. 654 (1962) ............................................................................ 2

7

8

U.S. Court of Appeals Cases

9

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
    853 F.2d 1557 (Fed. Cir. 1988) ......................................................... 3

10

Becton Dickinson & Co. v. C.R. Bard, Inc.,
    922 F.2d 792 (Fed. Cir. 1990) ........................................................... 3

11

12

DSU Medical Corp. v. JMS Co., Ltd.,
    471 F.3d 1293 (Fed. Cir. 2006) ....................................................... 14

13

Ericsson, Inc. v. Harris Corp.,
    352 F.3d 1369 (Fed. Cir. 2003) ......................................................... 4

14

15

Fiskars, Inc. v. Hunt Mfg. Co.,
    279 F.3d 1378 (Fed. Cir. 2002) ....................................................... 14

16

Grain Processing Corp. v. Amer. Maize-Prods. Co.,
    185 F.3d 1341 (Fed. Cir. 1999) .......................................... 1, 11, 12, 13

17

Kaufman Co., Inc. v. Lantech, Inc.,
    926 F.2d 1126 (Fed. Cir. 1991). ....................................................... 14

18

19

King Instruments Corp. v. Perego,
    65 F.3d 941 (Fed. Cir. 1995) ............................................................. 1

20

Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,
    575 F.2d 1152 (6th Cir. 1978) ........................................................... 1

21

22

Rite-Hite Corp. v. Kelly Co., Inc.,
    56 F.3d 1538 (Fed. Cir. 1995) (en banc) ................................. 1, 3, 10

23

Wechsler v. Macke Int'l Trade, Inc.,
    486 F.3d 1286 (Fed. Cir. 1987) .............................................. 3, 4, 10

24

25

U.S. District Court Cases

26

DSU Medical Corp. v. JMS Co., Ltd.,
    296 F.Supp.2d 1140 (N.D. Cal. 2003)............................................... 3

27

28

iii

**Def. Cameron's Mem. in Support
of Its Mot. for Partial Summary
Judgment of No Lost-Profits
Damages**

Statutes

35 U.S.C. § 284 ................................................................................................. 1, 2

Rules

FED. R. CIV. P. 56(c) ............................................................................................ 2

iv

**Def. Cameron's Mem. in Support
of Its Mot. for Partial Summary
Judgment of No Lost-Profits
Damages**

1

**TABLE OF EXHIBITS**

2

A.  Defendant Cameron's Statement of Undisputed Facts in Support of Its Motion for
Partial Summary Judgment of No Lost-Profits Damages.

3

4

    1.  Declaration of Ross Tobin (District Manager of Cameron's Grand Junction
Facility), dated July 30, 2009 (designated as "Attorneys' Eyes Only") (**filed
under seal pursuant to Protective Order (Doc. No. 37)**) ("Tobin
Declaration").

5

6

7

    2.  Declaration of Gary Devlin (Director of Business Development for
Cameron), dated September 28, 2007 ("Devlin Declaration") (also provided
at Doc. No. 189-2, pp. 27-30).

8

9

    3.  Declaration of Thomas Taylor (Senior Principal Engineer for Cameron),
dated June 27, 2008 ("Taylor Declaration") (also provided at Doc. No. 210-
2, pp. 4-15).

10

11

    4.  Excerpts from Nov. 14, 2007 Deposition of Thomas Taylor (Senior Principal
Engineer for Cameron) (Non-Confidential Portions of Taylor Deposition
Transcript) ("Taylor Depo.").

12

13

    5.  Declaration of Justin Feltman (Account Representative for Defendant
Cameron), dated September 11, 2008 ("Feltman Declaration").

14

15

    6.  Excerpts of Transcript of Hearing Held on January 6, 2009 (Doc. No. 287)
("January '09 Hearing").

16

17

    7.  Excerpts from September 17, 2007, Deposition of Mr. Rex Duhn (Named
Inventor on the '925 Patent and Duhn Oil's Designated Expert) ("Duhn
Depo.").

18

19

    8.  Supplemental Expert Report of Mr. Boyadjieff (Duhn Oil's Expert), dated
June 13, 2008 ("First Boyadjieff Supp. Report").

20

21

    9.  Excerpts from June 16, 2009 Deposition of Michael Roland (Senior District
Product Service Line Manager for Halliburton ("Halliburton Depo.").

22

23

    10. Excerpts from July 27, 2009, Deposition of Mr. George Boyadjieff (Duhn
Oil's Designated Expert) ("Boyadjieff Depo").

24

25

    11. Excerpts from April 9, 2007, Deposition of Ross Tobin (Cameron's District
Manager, Grand Junction, CO Facility) (designated as "Attorneys' Eyes
Only") (**filed under seal pursuant to Protective Order (Doc. No. 37)**)
("Tobin Depo.").

26

27

    12. Excerpts from September 24, 2008, Deposition of Mr. George Boyadjieff
(Duhn Oil's Designated Expert) ("Boyadjieff Depo. II").

28

v        **Def. Cameron's Mem. in Support
of Its Mot. for Partial Summary
Judgment of No Lost-Profits
Damages**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

After nearly four years of litigation and Duhn Oil's ever-changing interpretations of the disputed "wherein" clause of the '925 patent, this lawsuit distills down to a simple question:  Is the running-in of lockscrews to place a frac mandrel in a "dual load path" configuration of such inventive acumen and value over the existing prior-art "single load path" frac mandrels to justify the issuance of the '925 patent and the award of significant sums in damages?  Cameron submits the answer is an emphatic no.

Under 35 U.S.C. § 284, a patentee is entitled to lost-profits damages only if he can prove that he would have made the sales the accused infringer made "but for" the alleged infringement.[1]  To establish "but for" causation, the patentee must prove, *inter alia*, the absence of acceptable non-infringing substitutes.[2]  The logic is fairly simple: A patentee cannot establish "but for" causation if the accused infringer can show customers who purchased the accused product might have purchased other alternatives to the patented product instead.[3]

---

[1] *See King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995).

[2] *See Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

[3] *See Grain Processing Corp. v. Amer. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999):

> [A] fair and accurate reconstruction of the "but for" market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed.  Without the infringing product, a rational would-be infringer is likely to offer an acceptable non-infringing alternative, if available, to compete with the patent owner rather than leave the market altogether.

1                **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

Duhn Oil cannot, as a matter of law, establish "but for" causation because Cameron's current frac mandrel configuration—i.e., the confirmed non-infringing "single load path" frac mandrel, in which the lower lockscrews are not in contact with the frac mandrel—is an available and acceptable substitute to Duhn Oil's "dual-load-path" frac mandrel.  In determining what would have happened had Cameron not allegedly infringed, it is more likely that Cameron would have offered its non-infringing "single load path" frac mandrel, rather than Duhn Oil obtaining every sale that Cameron made.

Therefore, even if Duhn Oil were to succeed on the merits, Duhn Oil can only request damages based on a reasonably royalty of the accused revenue—not lost profits.[4]

## II.    LEGAL STANDARDS

### A.  LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses.[6]  In considering a motion for summary judgment, the court must examine all evidence in the light most favorable to the non-moving party.[7]  If the moving party does not bear the burden of proof at trial, it may discharge its burden of showing that no genuine issue of material

---

[4] *See* 35 U.S.C. § 284 ("Upon a finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer.").

[5] FED. R. CIV. P. 56(c).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[7] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

-2-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case."[8]  Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial."[9]

The Federal Rules of Civil Procedure apply to patent cases as well as to other civil suits.  As such, summary judgment is appropriate in a patent case where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.[10]

## B.  LEGAL STANDARD FOR LOST-PROFITS DAMAGES

"Whether lost profits are legally compensable in a particular situation is a question of law that [the Federal Circuit] reviews *de novo*."[11]  Indeed, as the District Court of the Northern District of California noted:

> Although the Judges [of the Federal Circuit] disagreed as to the specific outcome in the [*en banc*] *Rite-Hite* case, there was no disagreement as to the following underlying principles.  First, the [Federal Circuit] held that "whether the lost profits at issue are legally compensable is a question of law, which [the Federal Circuit] reviews *de novo*.  It follows, of course, that this is also a question of law for the trial court in the first instance.[12]

---

[8] *Celotex*, 477 U.S. at 325.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[10] *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795–96 (Fed. Cir. 1990); *see also Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) ("[T]his court has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.'").

[11] *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286 (Fed. Cir. 1987).

[12] *DSU Medical Corp. v. JMS Co., Ltd.*, 296 F.Supp.2d 1140 (N.D. Cal. 2003) (citing *Rite-Hite Corp.*, 56 F.3d 1538 (Fed. Cir. 1995)).

-3-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

1    **"Only after the court has decided, as a matter of law, that lost profits are available**

2    **does a jury then get to determine the amount of those lost profits."**[13]

3

4                           **III.    STATEMENT OF FACTS**

5        **A.  <u>THE ACCUSED PRODUCTS</u>**

6        Cameron has offered three different frac mandrel types: The Old-style (narrow-

7    groove) frac mandrel; the New-style (wide-groove) frac mandrel; and the Original-design

8    (no-groove) frac mandrel.[14]   However, for the purposes of this Motion, the similarities

9    between these mandrels—not the differences—are most pertinent.   Cameron's frac

10   mandrels are currently only offered in the configuration where the lockscrews are in a

11   retracted position and, as such, not in contact the frac mandrel, during either installation

12   or operation.[15]   That is, Cameron's frac mandrels are currently offered only in the so-

13   called "single load path" configuration.

14

15       In Cameron's mandrels, a hold-down flange cooperates with a lock ring to secure

16   the frac mandrel during frac operations.[16]

17

18

19

20

21

22

23   ────────────────────

     [13] *Wechsler*, 486 F.3d at 1293 (citing *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1373
24   (Fed. Cir. 2003)) (emphasis added).

25   [14] *See* Def.'s Memo. in Support of Its MSJ of No Inf. Re: Its Original and New Style
     Designs (Doc. No. 189) at file-stamped pp. 10-17.

26   [15] *See* Ex. A.1, Tobin Declaration, ¶ 4.

27   [16] *See* Ex. A.2, Taylor Declaration, ¶ 5.

28                                    -4-          **Def. Cameron's Mem. in Support
                                                  of Its Mot. for Partial Summary
                                                  Judgment of No Lost-Profits
                                                  Damages**



Cameron has presented overwhelming evidence that the cooperation between the lock ring and the hold-down flange is more than sufficient to secure the frac mandrel during fracing operations, even when the lockscrews are in the retracted configuration. This evidence includes not only engineering calculations, testimonial evidence and actual product sales, but also includes video evidence of a frac mandrel operating perfectly with the lower lockscrews in a retracted configuration.[17]

### B. NO INFRINGEMENT IF LOCKSCREW ARE NOT RUN-IN

This Court determined that if the lockscrews are not in contact with the frac mandrel, then there is no "dual load path" as required by the "wherein" clause and, thus, no infringement. Specifically, this Court held that:

> The plaintiff has not disagreed that when the [tubing head lock]screws are not connected, when they are not engaged with the frac mandrel, it is not within the call of the patent. That we have established. I mean, that's going to be one of the rulings that come out of this hearing.[18]
>
> …
>
> If Figure 6 [of the '925 patent] intended--*is intended to show the lockscrews disengaged and not connected, then it's not a dual load path. It's not within the wherein clause.*[19]

---

[17] *See* Ex. A.4, Taylor Depo., pp. 39-41; Ex. A.3, Taylor Declaration, ¶¶ 9, 10; Ex. A.1, Tobin Declaration, ¶ 4; Ex. Feltman Declaration A.5, ¶ 7.

[18] Transcript of Hearing on January 6, 2009 (Doc. No. 287), p 183, l. 20 to p. 184, l. 5.

[19] *Id.* at p. 184, ll. 7-13 (emphasis added).

-5-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

Thus, if a Cameron frac mandrel is installed such that the lockscrews are not in contact with the mandrel—i.e., a so-called single load path configuration—this Court confirmed that there is no infringement.[20]

### C. **THE LOCKSCREWS ARE NOT RUN-IN**

At the outset of this litigation, Cameron only offered the Old-style frac mandrel, and Cameron's installation procedures called for the engagement of the lockscrew with a contact shoulder on the frac mandrel. However, Duhn Oil confirmed that minor changes to the design of Cameron's mandrels would take those mandrels outside the scope of the '925 patent.

Mr. Rex Duhn, a named inventor on the '925 patent and a designated expert, testified that if there is no contact shoulder on the frac mandrel, there would be no infringement. The following exchange took place during Mr. Duhn's deposition on September 19, 2007:

| | |
|---|---|
| Q [Cameron's Counsel]: | *So it is your opinion that when a lock screw is screwed down to engage the mandrel, that there will be no load transfer unless there is a depression in the frac mandrel?* |
| A [Mr. Duhn]: | *Yes.* |
| Q: | And why is that? |
| A: | *You would have to have a contact shoulder for [the lockscrew] to engage.* |
| Q: | So in this configuration shown, are you saying that's effectively the same as if the [lockscrews] were removed? |
| O [Duhn Oil's Counsel]: | Objection, vague. |
| A [Mr. Duhn]: | There's no place for it to react the force. |

---

[20] In addition, Cameron maintains that even if the lockscrews are in contact with the mandrel, there is no infringement. *See, e.g.,* Def.'s Opposition to Pl.'s MSJ Re: Infringement and Validity (Doc. No. 170) § II(C).

-6-                     **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

| | |
|---|---|
| Q [Cameron's Counsel]: | No place for [the lockscrew]-- |
| A: | To react the force on the elongate mandrel. |
| Q: | *What if [the lockscrew] is screwed in real tight, is your answer the same?* |
| A: | *It would be insufficient friction coefficient to maintain the mandrel.* |
| Q: | That's because there's no correspondent depression on the frac mandrel for [the lockscrew] to engage? |
| A: | *Correct, you would have no shear point.*[21] |

Mr. Duhn's testimony takes into account that the lockscrew may be in contact with the frac mandrel, but he, nonetheless, concludes that such contact would be insufficient to meet the load-transfer requirement of the "wherein" clause.

Mr. Duhn's interpretation of the "wherein" clause confirmed that by widening the groove on its rental-inventory frac mandrels such that the lockscrews could not engage the contact shoulder on the mandrel, and by eliminating the groove on its newly-manufactured Original-design frac mandrels, Cameron could avoid even the threat of infringement.  In both of these designs, the lockscrews could contact the mandrel but ***could not engage a "contact shoulder," as required by Mr. Duhn***.  Thus, both of these designs are outside the scope of Mr. Duhn's interpretation of the '925 patent.

Not liking Mr. Duhn's interpretation, Duhn Oil's other expert, Mr. George Boyadjieff, then stated in his first Supplemental Expert Report dated June 13, 2008, that any contact between the lockscrews and the frac mandrel would be sufficient to transfer loads in accordance with the "wherein" clause.[22]  On August 21, 2008, Cameron issued an engineering bulletin to its field locations reminding Cameron personnel that the

---

[21] Ex. A.7, Duhn Depo., pp. 39-40.

[22] *See* Ex. A.8, First Supp. Boyadjieff Report, p. 3.

-7-

**Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

lockscrews should not be run-in and should not contact the frac mandrel.[23]  Simply put, Cameron changed its procedures to ensure that lockscrews do not contact the frac mandrel.

The vast majority of Cameron's frac mandrel installations occur in Cameron's Grand Junction, Colorado facility.[24]  The manger of that facility, Mr. Ross Tobin, stated that at least since August 2008, no Cameron frac mandrel has been installed such that the lockscrews are in contact with the mandrel.[25]  Duhn Oil has presented no evidence to the contrary.  Duhn Oil's accusations are not evidence.

### D.  INSTALLATION CHECKLISTS

In February 2009, Cameron began documenting the installation of its frac mandrels.[26]  Each installation checklist requires the Cameron installer to verify a number of things.  The installer must verify that the frac mandrel has been marked to indicate that the lockscrews should not be run-in to contact the mandrel.  Below is a picture of the marking plate the Cameron places on its frac mandrels.[27]

---

[23] *See* Ex. B to Def.'s Response in Opposition to Pl.'s Motion for Preliminary Injunction, filed under seal (Doc. No. 255).

[24] *See* Ex. A.1, Tobin Declaration, ¶ 21.

[25] *See* Ex. A.11, Tobin Depo., pp. 23-25; *see also* Ex. A.1, Tobin Declaration, ¶ 4.

[26] *See* Ex. A.1, Tobin Declaration, ¶2.

[27] *See* Ex. A.1, Tobin Declaration, ¶ 2, Ex. B.

-8-                        **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**



As can be seen, the marking plate conspicuously instructs "DO NOT RUN IN TUBING HEAD LOCKSCREWS TO CONTACT FRAC MANDREL.   THIS HOLD-DOWN FLANGE FIRMLY SECURES THE FRAC MANDREL DURING FRAC OP".

The installer must also verify that he installed the frac mandrel such that the lockscrews are not in contact with the frac mandrel.[28]   Since the institution of the installation checklists, Cameron's Grand Junction facility has installed more than 150 frac mandrels, each of which has been documented as being installed such that lockscrews are not in contact with the mandrel, i.e., installed in the non-infringing "single load path" configuration.[29]

### E.  CUSTOMER BULLETINS

In addition to the conspicuous instructions on the side of its frac mandrels, Cameron also delivered its updated installation procedures—which expressly state that the lockscrews should **not** contact the frac mandrel—to its customers, and to third parties that may come in contact with Cameron's mandrels, such as fracing services providers

---

[28] *See* Ex. A.1, Tobin Declaration, ¶ 3.

[29] *See* Ex. A.1, Tobin Declaration, ¶ 4, Ex. A (noting that there are more than 150 installation checklists that indicate the mandrel was installed such that the lockscrews do not contact the mandrel).

-9-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

1   like Halliburton.[30]   Moreover, Cameron requested its customers' field mangers confirm

2   by signature that they have received the revised installation procedures.[31]

3

4                          IV.   SUMMARY OF THE ARGUMENT

5          Defendant Cameron seeks a partial summary judgment that Duhn Oil is not

6   entitled to lost-profits damages because Cameron's present offering is an acceptable non-

7   infringing substitute that negates any assertion of "but for" causation.  For the reasons set

8   forth more fully below, Defendant Cameron respectfully requests this Court enter a

9   judgment as a matter of law that Plaintiff Duhn Oil is not entitled to seek lost-profits

10  damages for any alleged infringement of the '925 patent by Cameron.

11

12         V.   ARGUMENT: DUHN OIL IS NOT ENTITLED TO LOST PROFITS

13         To obtain lost profits under 35 U.S.C. § 284, the patentee must prove "causation

14  in fact" establishing that "but for" the infringement he would have made additional

15  profits.[32]  To establish "but for" causation, it is well-settled Federal Circuit precedent that

16  the patentee must meet the four factors originally articulated by the Sixth Circuit in

17  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d. 1152 (6th Cir. 1978).  "The

18  *Panduit* test requires a patentee establish: 1) demand for the patented product; 2) absence

19  of acceptable non-infringing substitutes; 3) manufacturing and marketing capability to

20  exploit the demand; and 4) the amount of the profit it would have made."[33]   Cameron

21

22

23  ───────────────

    [30] *See* Ex. A.1, Tobin Declaration, ¶ 22, Ex. R.

24  [31] *See* Ex. A.1, Tobin Declaration, ¶ 22, Exs. S, T and U (noting that the customers'

25  representatives signed and returned the notification regarding Cameron's new installation
    procedures).

26  [32] *See Wechsler*, 486 F.3d at 1293.

27  [33] *Rite-Hite Corp.*, 56 F.3d at 1545.

28                                    -10-        **Def. Cameron's Mem. in Support**
                                                  **of Its Mot. for Partial Summary**
                                                  **Judgment of No Lost-Profits**
                                                  **Damages**

1  respectfully submits that Duhn Oil, as a matter of law, cannot meet its burdens regarding

2  at least the second prong of the *Panduit* test: The absence of acceptable non-infringing

3  substitutes.

4  **A.  ACCEPTABLE NON-INFRINGING SUBSTITUTES**

5  In determining patent damages, a patentee must reconstruct the market to project

6  economic damages that did not occur; it is a hypothetical enterprise.[34]  "To prevent the

7  hypothetical from lapsing into pure speculation, [the Federal Circuit] requires sound

8  economic proof of the nature of the market and likely outcomes with infringement

9  factored out of the economic picture."[35]   "But for" analysis must take into account

10  alternative actions the accused infringer foreseeably would have undertaken had he not

11  infringed.[36]  For example, without the infringing product, a rational would-be infringer is

12  likely to offer an acceptable non-infringing alternative, if available, to compete with the

13  patent owner rather than leave the market altogether.[37]   Thus, a claim of lost-profits

14  damages can be vitiated if it is found that a non-infringing alternative was 1) available

15  and 2) acceptable.[38]

---

[34] *See Grain Processing*, 185 F.3d at 1350.

[35] *Id.*

[36] *Id.* at 1350-51.

[37] *Id. at* 1351.

[38] *Grain Processing*, 185 F.3d at 1349 (""[T]o be an acceptable non-infringing substitute, the product or process must have been available or on the market at the time of infringement.'  This is an apt summary of this court's precedent, which permits available alternatives—including but not limited to products on the market—to preclude lost profits damages.").

-11-     **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

**B.  THE *GRAIN PROCESSING* DECISION**

The facts of the present case are very analogous to those in the Federal Circuit's *Grain Processing* decision.  In *Grain Processing*, the Federal Circuit held that the patentee was not entitled to lost-profits damages because the accused infringer eventually developed a non-infringing product and brought that product to market.

In *Grain Processing*, the defendant had sequentially developed four different accused techniques during the period of infringement.[39]  The district court determined that the defendant's first-developed technique was non-infringing, but the Federal Circuit reversed the district court.[40]  After the reversal, the defendant changed its technique.  The district court determined the revised technique did not infringe, but the Federal Circuit again reversed the district court.[41]  Ultimately, on the fourth iteration of its technique, the defendant developed an alternative that the parties agreed was non-infringing.[42]

After the iterative liability phase of the trial, the district court moved to the damages phase and determined that the patentee "could not establish causation for lost-profits damages, because [the defendant] 'could have produced' a non-infringing substitute."[43]  The defendant only developed the non-infringing alternative seven months before the asserted patent expired, but the district court, nonetheless, found the later-

---

[39] *Id.* at 1344-45.

[40] *Id.* at 1345. ("[t]he district court held that the [accused technique] did not infringe any of the claims…. This court reversed….").

[41] *Id.* at 1346 ("[T]he district court ruled that [the revised technique] did not infringe…. This court reversed in a nonprecedential opinion.").

[42] *Id.* at 1346 ("The parties agree that Process IV yielded only noninfringing [results].").

[43] *Id.* at 1347.

**Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

developed alternative "scotches" the patentee's entire request for lost-profits damages.[44]

The district court found that the defendant "'did not have to invent around the patent…all it had to do was use [a known feature] in its production process.'"[45]   Simply put, the district court determined that the later-developed technique was "available" for entire period of infringement.  Additionally, the district court determined that the non-infringing technique was fungible with the infringing technique, which led to the district court's conclusion that the non-infringing technique was "acceptable."[46]

The patentee appealed the district court's ruling, and asserted that the defendant could not escape lost-profits liability based on a product that was developed after the period of infringement.[47]   After a few more iterations between the Federal Circuit and the district court, the Federal Circuit ultimately upheld the district court's conclusion that the patentee was not entitled to lost-damages.[48]   Indeed, the Federal Circuit agreed that the district court properly concluded that the later-developed technique—which was developed after infringement occurred—was both sufficiently 1) available and 2) acceptable to vitiate the patentee's claim for lost-profits damages.

## C.   CAMERON'S CONFIRMED NON-INFRINGING FRAC MANDREL WAS AVAILABLE

Like the defendant in *Grain Processing*, Cameron did not have to "invent" the confirmed non-infringing "single load path" frac mandrel.  The only difference between Cameron's originally-offered frac mandrels and currently-offered frac mandrels is the

---

[44] *Id.*

[45] *Id.* at 1354.

[46] *Id.* at 1355.

[47] *Id.*

[48] *Id.* at 1356.

-13-

**Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

retraction of lockscrews.  There was no change in structure between the two offerings; Cameron is just configuring them in a different way.  Thus, Cameron certainly had the necessary equipment, know-how, and experience to implement the confirmed non-infringing frac mandrel during the entire period of alleged infringement.[49]  Indeed, if it were not for the five different interpretations of the "wherein" clause provided by Duhn Oil,[50] Cameron would have been afforded the opportunity to place its devices in the non-infringing single-load-path configuration almost instantaneously.

Thus, Cameron certainly had available to it a frac mandrel configuration in which the lockscrews are not in contact with the frac mandrel, a configuration that this Court has confirmed as being non-infringing.

### D.   CAMERON'S CONFIRMED NON-INFRINGING FRAC MANDREL IS "ACCEPTABLE"

Cameron submits that it also meets the second-prong of the *Grain Processing* test, i.e., acceptability.  The Federal Circuit has repeatedly held that "market sales of an acceptable non-infringing substitute often suffice alone to defeat a case for lost profits."[51] Moreover, "to be deemed acceptable, the alleged acceptable non-infringing substitute must not have a disparately higher price than or posses characteristics significantly different from the patented product."[52]  In the present case, Cameron has undoubtedly

---

[49] *See Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("The defendant in *Grain Processing* supported its claim that it had the necessary equipment, know-how, and experience during the period of infringement to implement the non-infringing process.").

[50] *See generally,* Ex. C to Def. Cameron's Response in Opposition to Plaintiff Duhn Oil's Motion for Leave to Amend its Complaint, Doc No. 278-2, file-stamped pp. 46-50.

[51] *See, e.g.*, *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006).

[52] *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1126, 1142 (Fed. Cir. 1991).

-14-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

shifted its sales from the allegedly infringing "dual load path" frac mandrel to the confirmed non-infringing "single load path" frac mandrel. Cameron does not even offer the "dual load path" configuration. Secondly, there is no difference in price or operating characteristic between Cameron's "dual load path" frac mandrel and its current "single load path" frac mandrel. They are identical in character.

### 1. SINCE AT LEAST AUGUST 2008, CAMERON HAS ONLY OFFERED NON-INFRINGING FRAC MANDRELS

As discussed above, this Court determined that if a Cameron frac mandrel is installed such that the lockscrews are not in contact with the frac mandrel, there is no infringement of the '925 patent. Since at least August 2008, every Cameron frac mandrel has been offered in this non-infringing configuration. For the purposes of lost-profits analysis, the fact that infringement may have occurred in the past is irrelevant.[53] Instead, the inquiry focuses on whether Cameron has made "market sales" by *currently* offering its non-infringing "single load path" frac mandrels to its customers.[54]

### a. No Evidence Cameron Runs-In the Lockscrews

The best evidence against Duhn Oil's lost-profits claims is the fact that Cameron no longer offers its frac mandrels in the allegedly infringing "dual load path" configuration. The installation checklists provide documentary evidence that Cameron has only offered and installed its frac mandrels in a non-infringing configuration since at least February 2009. In addition, Mr. Ross Tobin—Cameron's operation manager for the Grand Junction, Colorado facility—avers that Cameron frac mandrels have not been installed in an allegedly infringing "dual load path" configuration since at least August

[53] *See supra* § (V)(B).

[54] *Id.*

-15-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

2008.  Since August 2008, Cameron has offered and installed hundreds of frac mandrels

to and for its customers.  Thus, Cameron certainly has made "market sales" of its non-

infringing so-called "single load path" frac mandrels.

Duhn Oil cannot support its assertion that Cameron's frac mandrels are currently

provided in an allegedly infringing "dual load path configuration" without some

colorable evidence.[55]  That is, Duhn Oil, to support its claim for lost-profits damages,

must present some evidence that Cameron has not made "market sales" of its non-

infringing "single load path" frac mandrel.  Duhn Oil has not and cannot do this.

### b.  No Evidence Frac Companies Run-In the Lockscrews

Duhn Oil has presented no evidence to suggest that third parties that work for

Cameron's customers are systematically running-in the lockscrews.[56]  That is, Duhn Oil

has not shown that customers will only accept Cameron's "single load path" frac mandrel

because those customers have a third party reconfigure the mandrels into the allegedly

infringing "dual load path" configuration.

---

[55] Transcript of Hearing on January 6, 2009 (Doc. No. 287), p. 25, ll. 4-12.  (Plaintiff's Counsel Mr. Whitelaw: "So on their best day, we have August of '08 where they're still torquing [i.e., running-in]  in the lockscrews.  We don't agree with their position that they're not torquing [the lockscrews] in anymore….   Maybe further discovery is required.").

[56] Cameron is aware of two instances where dimples were found on a mandrel that was installed after August 21, 2008.  *See* Ex. A.11, Tobin Deposition, pp. 30-33. These dimples were found in the early part of March 2009, and were not created by Cameron.  *Id.* Moreover, these dimples are believed to have been created by a third party improperly using Cameron's frac mandrel, and are believed to have been created before Cameron placed instruction on these mandrels and before instructions were sent to the customers.  *Id.*

Even if, *arguendo*, Duhn Oil presents evidence that third parties have, in limited circumstances, run-in the lockscrews, such evidence would not be sufficient to show Cameron had not made "market sales" of its non-infringing frac mandrel and, as such, that frac mandrel was not "acceptable."  Indeed, sporadic instances of dimples would not be sufficient to show that Cameron's frac mandrels were not acceptable to its customers.

-16-            **Def. Cameron's Mem. in Support
of Its Mot. for Partial Summary
Judgment of No Lost-Profits
Damages**

On June 16, 2009, Duhn Oil conducted a telephone deposition of Mr. Michael Roland, who is an Operations Manager for Halliburton in the Rocky Mountain region.[57] Halliburton is a fracing-services provider that, like other fracing-services providers, connects to the top of the wellhead equipment and injects the fracing fluid into the well.[58] With respect to the lockscrews on the well, Mr. Roland testified as follows:

> Q [Plaintiff's Counsel]:    In the process of attaching the mandrel or frac system to the wellhead, typically are the lock screws tightened in, the tubing-head lock screws?
>
> [Objections by Defendant's Counsel]
>
> A [Mr. Roland]:    All right.   I don't-- in my experience we don't mess with setscrews.  Our function is to rig up to the top of the master valve, so that stuff [i.e., the lockscrews] is already installed by separate service providers and tested when we arrive on location.[59]

In fact, Mr. Roland repeatedly testified that the fracing-services providers "do not install frac mandrels"[60] and that they only "rig up to the top"[61] of the equipment.  Thus, it is clear that fracing-services providers do not, as a matter of course, run-in the lockscrews in the field, nor do Cameron's customer request such.

### c.   No Evidence Customers Run-In the Lockscrews

Further still, Duhn Oil has provided no evidence to suggest Cameron's customers will reconfigure Cameron's frac mandrel into the allegedly infringing dual load path configuration.   As noted above, Cameron—in addition to affixing conspicuous

---

[57] *See* Ex. A.9, Halliburton Depo., pp. 10-12.

[58] *See id.* at pp. 16-17.

[59] *See id.* at pp. 19-20.

[60] *See id.* at p. 47.

[61] *See* Ex. A.9, Halliburton Depo., p. 20.

-17-                **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

instructions on its mandrels regarding the lockscrews—directly notified the field managers of its customers that the lockscrews should not be placed in contact with the frac mandrel.   Duhn has presented no evidence that suggests Cameron's customers generally disregard these instructions.

### d. Installation, Buffing and Return Checklists Evidence When No New Dimples Have been Created

Duhn Oil has presented no evidence to indicate or suggest that the dimples on Cameron's frac mandrels are the result of lockscrews being run-in, as a matter of course, after the August 21, 2008 distribution of the Engineering Bulletin.   Duhn Oil has repeatedly pointed to isolated instance of dimples on mandrels to claim, among other things, that Cameron's frac mandrels are not offered in the non-infringing "single load path" configuration.   However, Duhn Oil has presented nothing to indicate that those dimples were created after August 21, 2008.   Even if Duhn Oil can show isolated instances of misuse of Cameron's frac mandrels, such evidence does not demonstrate that Cameron's frac mandrels are not "acceptable" under a lost-profits analysis.

Even though it is not Cameron's burden to disprove infringement, Cameron has instituted a checklist procedure to document whether new dimples are being created on its frac mandrels.   Because Cameron's frac mandrels circulate through inventory, the presence of a new dimple can be determined more easily if the old dimples are buffed out (i.e., ground down).   On April 16, 2009, Cameron instituted a "buffing" procedure to ensure all dimples are buffed out of its frac mandrels before they are installed and shipped, and a "buffing" checklist to record when and how many dimples were buffed

-18-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

out.[62]   In addition, on June 11, 2009, Cameron instituted a "return" checklist, which indicates how many dimples are on a frac mandrel when it returns to the Cameron facility.[63]   Thus, by looking at the installation, buffing and return checklists, one can determine if any new dimples were created.

As noted in the Tobin declaration, thirteen (13) frac mandrels have returned to Cameron's Grand Junction facility since the institution of the return-checklist procedure.[64]   Of those thirteen mandrels, four (4) were indicated as being returned with dimples.[65]   However, by looking at the installation checklists, it is clear that each of these mandrels was installed and shipped before Cameron began its buffing procedure.[66]   Thus, the dimples on these four (4) mandrels were likely created before Cameron changed its installation procedures.[67]

The return checklists for the remaining nine (9) mandrels indicate the absence of dimples.[68]   Moreover, the installation checklists for these (9) mandrels indicate that they were installed with the lockscrews in a retracted configuration.[69]   Thus, the two checklists establish that lockscrews were not placed in contact with these nine (9) mandrels.[70]   That

---

[62] *See* Ex. A.1, Tobin Declaration, ¶5.

[63] *Id* at ¶ 6.

[64] *Id.* at ¶ 7.

[65] *See* Ex. A.1, Tobin Declaration, ¶¶ 9, 10, 12, and 18.

[66] *Id.*

[67] *Id.*

[68] *See* Ex. A.1, Tobin Declaration, ¶¶ 8, 11, 13-17, 19, 20.

[69] *Id.*

[70] *Id.*

-19-          **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

is, these mandrels were not placed into an allegedly infringing "dual load path" configuration by any party.

In no instance do the checklists provide any indication that a new dimple has been created.  Thus, rather than Duhn Oil providing any evidence of infringement, Cameron has shouldered the burden and provided irrefutable evidence that it is not infringing.

### 2. CAMERON'S NON-INFRINGING "SINGLE LOAD PATH" FRAC MANDREL IS AN ACCEPTABLE SUBSTITUTE TO ALLEGEDLY INFRINGING "DUAL LOAD PATH" FRAC MANDRELS

Cameron further submits that its so-called "single load path" frac mandrel is identical in character to the allegedly infringing "dual load path" frac mandrel, and, as such, is an "acceptable" substitute.

Strong evidence of this acceptability was presented by Duhn Oil's expert, Mr. Boyadjieff.  On July 27, 2009, Mr. Boyadjieff stated as follows:

> Q [Defendant's Counsel]:   Do you consider the Cameron's accused products to be an acceptable substitute to the '925 patented design.
>
> A [Mr. Boyadjieff]:   Yes, I do.
>
> Q [Defendant's Counsel]:   *Do you consider Cameron's designs configured with the lock screws of the tubing spool not in contact with the frac mandrel to be an acceptable substitute.*
>
> O [Plaintiff's Counsel]:   Objection, vague.
>
> A [Mr. Boyadjieff]:   *Yes, I do.*[71]

Thus, Duhn Oil's own expert agrees that Cameron's "single load path" frac mandrel is an acceptable substitute to the "dual load path" frac mandrel described in the '925 patent.

---

[71] *See* Ex. A.10, Boyadjieff Depo., p. 140 (emphasis added).

-20-        **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

### 3. CAMERON'S SINGLE LOAD PATH FRAC MANDRELS DO NOT DANCE

Duhn Oil had previously argued that Cameron's frac mandrels will "dance" if the lockscrews are not in contact with the frac mandrel.[72]  Duhn Oil's expert, Mr. Boyadjieff, asserted that Cameron's frac mandrel is "free to spin" if the lockscrews are not in contact with the mandrel, and that the mandrel will "crawl" due to the vibration forces during fracing.  However, Mr. Boyadjieff provided no basis for this conclusion.  When pressed, Mr. Boyadjieff conceded that he was not aware of any instance in which a frac mandrel danced nor was he able to provide any calculations to support his conclusion that dancing would occur.[73]  Mr. Boyadjieff's opinion that Cameron's "single load path" frac mandrel would "dance" is based wholly on a mischaracterization of the testimony of others:

> Yes, in those depositions I heard about it happening.  And then I noticed the sequence of event of what went on with the design of this thing, and I got to believe it happened because--you know, we had this so-called original style with no groove in it, and Cameron went to a great expense to put a groove in the so-called --I get the terms confused.  I guess there was an original design with no groove.  Then there was a –most of the product appears to be with a groove in it.  I can't imagine Cameron going to great expense of putting this groove in there unless they were concerned about this dancing, and therefore it must have occurred somewhere.  Otherwise, why would they do all that?[74]

Mr. Boyadjieff presented noting more than a conclusory argument: The frac mandrel must always be in contact with the lockscrews because the lockscrews have been in contact with the frac mandrel.

---

[72] *See* Ex. A.8, First Boyadjieff Supp. Report, pp. 4-5.

[73] Boyadjieff II Depo P. 33, 34, 35.

[74] Boyadjieff II Depo p 44.

-21-

**Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

Cameron added the groove to engage the lockscrews not for engineering reason, but simply because there was little down-side in doing so.[75]   There was no evidence of that dancing had occurred or that it would occur.[76]   In fact, in the more than hundred installations that Cameron has documented as being in the single load path configuration, there has not been one report of "dancing."[77]

Duhn Oil's conclusory arguments and bald accusations are not sufficient to support its claim for lost-profits damages.   Duhn Oil has presented no evidence that Cameron's so-called "single load path" frac mandrels "dance" and are, therefore, not acceptable substitutes to the '925 patent's "dual load path" frac mandrels.

### VI.   CONCLUSION

In accordance with the *Grain Processing* decision, Duhn Oil is not entitled to lost-profits damages for any alleged infringement of the '925 patent, because Cameron's non-infringing "single load path" frac mandrel was available and is an acceptable substitute to Duhn's "dual load path" frac mandrels.

For the foregoing reasons and authorities cited, Defendant Cameron respectfully requests that this Court find that, as a matter of law, Duhn Oil is not entitled to lost-profits damages for any alleged infringement of the '925 patent.   Pursuant to Local Rule 5-137, a proposed Order granting this requested relief is attached to this Motion.

---

[75] *See* Ex. A.4, Taylor Depo., pp. 38-41.

[76] *See* Ex. A.3, Taylor Declaration, ¶ 9.

[77] *See* Ex. A.1, Tobin Declaration, ¶ 4.

-22-                    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages**

1    Respectfully submitted this 30th day of July, 2009.

2

3

4                    /s/ Charles J. Rogers
                     Charles J. Rogers
5                    Attorney for Defendant
                     Cooper Cameron Corporation

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          -23-        **Def. Cameron's Mem. in Support
                                        of Its Mot. for Partial Summary
                                        Judgment of No Lost-Profits
                                        Damages**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2009, I filed the foregoing *Memorandum and Points of Authority in Support of Cameron's Motion for Partial Summary Judgment of No Lost-Profits Damages* with the Court through this district's CM/ECF system.   Pursuant to Local Rule 5-135(a), the "Notice of Electronic Filing" automatically generated by CM/ECF at the time the document is filed with the system constitutes automatic service of the document on the following counsel of record who have consented to electronic service.

Edward R. Schwartz                           ers@cph.com
Christie, Parker & Hale, LLP
P. O. Box 7068
Pasadena, California 91109-7068
Telephone:  (626) 795-9900
Facsimile:  (626) 577-8800


James M. Whitelaw                            jwhitelaw@twtlaw.com
Joseph E. Thomas                             jthomas@twtlaw.com
Thomas Whitelaw & Tyler LLP
18101 Von Karman Ave., Suite 230
Irvine, CA  92612
Telephone:  (949) 679-6400
Facsimile:  (949) 679-6405

**Counsel for Plaintiff/Counter-Defendant**
**Duhn Oil Tool, Inc.**


                                    /s/ Charles J. Rogers
                                    Charles J. Rogers

-24-        **Def. Cameron's Mem. in Support**
            **of Its Mot. for Partial Summary**
            **Judgment of No Lost-Profits**
            **Damages**