**CHARLES J. ROGERS,** admitted *pro hac vice*
**CONLEY ROSE, P.C.**
**600 Travis Street, Suite 7100**
**Houston, Texas 77002-2912**
**Telephone: (713) 238-8049**
**Facsimile: (713) 238-8008**
**e-mail: crogers@conleyrose.com**

Attorneys for Defendant
Cooper Cameron Corporation
n/k/a Cameron International Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUHN OIL TOOL, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>COOPER CAMERON CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | Case No. 1:05-cv-01411-OWW-GSA<br><br>**DEFENDANT CAMERON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO LOST-PROFITS DAMAGES**<br><br>Date: August 31, 2009<br>Time: 10:00 a.m.<br>Ctrm: 3, Hon. Oliver W. Wanger |

In accordance with Local Rule 56-260(a), Defendant Cooper Cameron Corporation, which is now known as Cameron International Corporation, ("Cameron") submits the following Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment of No Lost-Profits Damages.

**Def. Cameron's Statement of Undisputed Facts in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... II

TABLE OF EXHIBITS ............................................................................................................. II

I.   INTRODUCTION ............................................................................................................ 1

II.  UNDISPUTED FACTS .................................................................................................... 1

    A.   THE ACCUSED PRODUCTS ................................................................................... 1

    B.   NO INFRINGEMENT IF LOCKSCREW ARE NOT RUN-IN ......................................... 1

    C.   INSTALLATION CHECKLISTS ................................................................................ 3

    D.   CAMERON'S CONFIRMED NON-INFRINGING FRAC MANDREL IS "ACCEPTABLE" ......... 4

III. CONCLUSION ................................................................................................................. 5

**Def. Cameron's Statement of Undisputed Facts in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

## TABLE OF EXHIBITS

1. Declaration of Ross Tobin (District Manager of Cameron's Grand Junction Facility), dated July 30, 2009 (designated as "Attorneys' Eyes Only") (**filed under seal pursuant to Protective Order (Doc. No. 37)**) ("Tobin Declaration").

2. Declaration of Gary Devlin (Director of Business Development for Cameron), dated September 28, 2007 ("Devlin Declaration") (also provided at Doc. No. 189-2, pp. 27-30).

3. Declaration of Thomas Taylor (Senior Principal Engineer for Cameron), dated June 27, 2008 ("Taylor Declaration") (also provided at Doc. No. 210-2, pp. 4-15).

4. Excerpts from Nov. 14, 2007 Deposition of Thomas Taylor (Senior Principal Engineer for Cameron) (Non-Confidential Portions of Taylor Deposition Transcript) ("Taylor Depo.").

5. Declaration of Justin Feltman (Account Representative for Defendant Cameron), dated September 11, 2008 ("Feltman Declaration").

6. Excerpts of Transcript of Hearing Held on January 6, 2009 (Doc. No. 287) ("January '09 Hearing").

7. Excerpts from September 17, 2007, Deposition of Mr. Rex Duhn (Named Inventor on the '925 Patent and Duhn Oil's Designated Expert) ("Duhn Depo.").

8. Supplemental Expert Report of Mr. Boyadjieff (Duhn Oil's Expert), dated June 13, 2008 ("First Boyadjieff Supp. Report").

9. Excerpts from June 16, 2009 Deposition of Michael Roland (Senior District Product Service Line Manager for Halliburton ("Halliburton Depo.").

10. Excerpts from July 27, 2009, Deposition of Mr. George Boyadjieff (Duhn Oil's Designated Expert) ("Boyadjieff Depo").

11. Excerpts from April 9, 2007, Deposition of Ross Tobin (Cameron's District Manager, Grand Junction, CO Facility) (designated as "Attorneys' Eyes Only") (**filed under seal pursuant to Protective Order (Doc. No. 37)**) ("Tobin Depo.").

12. Excerpts from September 24, 2008, Deposition of Mr. George Boyadjieff (Duhn Oil's Designated Expert) ("Boyadjieff Depo. II").

## I.   INTRODUCTION

Defendant Cameron submits this Statement of Undisputed Facts in support of its Motion for Partial Summary Judgment of No Lost-Profits Damages.

## II.   UNDISPUTED FACTS

### A.   THE ACCUSED PRODUCTS

1. Cameron's frac mandrels are currently only offered in the configuration where the lockscrews are in a retracted position and, as such, not in contact the frac mandrel, during either installation or operation.[1]

2. In Cameron's mandrels, a hold-down flange cooperates with a lock ring to secure the frac mandrel during frac operations.[2]

### B.   NO INFRINGEMENT IF LOCKSCREW ARE NOT RUN-IN

3. The Court determined that if the lockscrews are not in contact with the frac mandrel, then there is no "dual load path" as required by the "wherein" clause and, thus, no infringement.[3]

4. If a Cameron frac mandrel is installed such that the lockscrews are not in contact with the mandrel, then there is no infringement.

5. During Mr. Rex Duhn's deposition on September 19, 2007, the following exchange took place:

> Q [Cameron's Counsel]:   So it is your opinion then that when a lock screw is screwed down to engage the

---

[1] *See* Ex. 1, Tobin Declaration, ¶ 4.

[2] *See* Ex. 2, Taylor Declaration, ¶ 5.

[3] Transcript of Hearing on January 6, 2009 (Doc. No. 287), p 183, l. 20 to p. 184, l. 13.

1   **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

| | | |
|---|---|---|
| | | mandrel, that there will be no load transfer unless there is a depression in the frac mandrel? |
| A [Mr. Duhn]: | | Yes. |
| Q: | | And why is that? |
| A: | | You would have to have a contact shoulder for lock pin to engage. |
| Q: | | So in this configuration shown, are you saying that's effectively the same as if the [lockscrews] were removed, pin 58? |
| O [Duhn Oil's Counsel]: | | Objection, vague. |
| A [Mr. Duhn]: | | There's no place for it to react the force. |
| Q [Cameron's Counsel]: | | No place for 58-- |
| A: | | To react the force on the elongate mandrel. |
| Q: | | What if the pin 58 is screwed in real tight, is your answer the same? |
| A: | | It would be insufficient friction coefficient to maintain the mandrel. |
| Q: | | That's because there's no correspondent depression on the frac mandrel for pin 58 to engage? |
| A: | | Correct, you would have no shear point.[4] |

6. Mr. George Boyadjieff believes that any contact between the lockscrews and the frac mandrel would be sufficient to transfer loads in accordance with the "wherein" clause.[5]

7. On August 21, 2008, Cameron issued an engineering bulletin to its field locations reminding Cameron personnel that the lockscrews should not be run-in and should not contact the frac mandrel.[6]

---

[4] Ex. 7, Duhn Depo., pp. 39-40.

[5] *See* Ex. 8, First Supp. Boyadjieff Report, p. 3.

-2-    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

8.      The vast majority of Cameron's surface U.S. frac mandrel installations are coordinated out of Cameron's Grand Junction, Colorado facility.[7]

C. **INSTALLATION CHECKLISTS**

9.      In February 2009, Cameron began documenting the installation of its frac mandrels at its Grand Junction Facility.[8]

10.     The below pictures are accurately represent the type of marking plate Cameron places on the hold-down flange of its frac mandrels.



11.     Cameron's marking plates conspicuously instruct "DO NOT RUN IN TUBING HEAD LOCKSCREWS TO CONTACT FRAC MANDREL. THIS HOLD-DOWN FLANGE FIRMLY SECURES THE FRAC MANDREL DURING FRAC OP".

12.     Since the institution of the installation checklists, Cameron's Grand Junction facility has installed more than 150 frac mandrels, each of which has been documented as being installed such that lockscrews are not in contact with the mandrel.[9]

---

[6] *See* Ex. B to Def.'s Response in Opposition to Pl.'s Motion for Preliminary Injunction, filed under seal (Doc. No. 255).

[7] *See* Ex. 1, Tobin Declaration, ¶ 21.

[8] *See* Ex. 1, Tobin Declaration, ¶2.

[9] *See* Ex. 1, Tobin Declaration, ¶ 4, Ex. A (noting that there are more than 150 installation checklists that indicate the mandrel was installed such that the lockscrews do not contact

-3-    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

**D. CAMERON'S CONFIRMED NON-INFRINGING FRAC MANDREL IS "ACCEPTABLE"**

13. On June 16, 2009, Duhn Oil conducted a telephone deposition of Mr. Michael Roland, who is an Operations Manager for Halliburton in the Rocky Mountain region.[10]

14. Halliburton is a fracing-services provider that, like other fracing-services providers, connects to the top of the wellhead equipment and injects the fracing fluid into the well.[11]

15. With respect to the lockscrews on the well, Mr. Roland testified as follows:

> Q [Plaintiff's Counsel]: In the process of attaching the mandrel or frac system to the wellhead, typically are the lock screws tightened in, the tubing-head lock screws?
>
> [Objections by Defendant's Counsel]
>
> A [Mr. Roland]: All right. I don't-- in my experience we don't mess with setscrews. Our function is to rig up to the top of the master valve, so that stuff is already installed by separate service providers and tested when we arrive on location.[12]

16. Mr. Roland testified that the fracing-services providers do not install frac mandrels[13] and that they only rig up to the top[14] of the equipment.

17. On July 27, 2009, Mr. Boyadjieff stated as follows:

---

the mandrel).

[10] *See* Ex. 9, Halliburton Depo., pp. 10-12.

[11] *See id.* at pp. 16-17.

[12] *See id.* at pp. 19-20.

[13] *See id.* at p. 47.

[14] *See* Ex. 9, Halliburton Depo., p. 20.

-4-    **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

| | | |
|---|---|---|
| Q [Defendant's Counsel]: | | Do you consider the Cameron's accused products to be an acceptable substitute to the '925 patented design. |
| A [Mr. Boyadjieff]: | | Yes, I do. |
| Q [Defendant's Counsel]: | | Do you consider Cameron's designs configured with the lock screws of the tubing spool not in contact with the frac mandrel to be an acceptable substitute to the '925 design. |
| O [Plaintiff's Counsel]: | | Objection, vague. |
| A [Mr. Boyadjieff]: | | Yes, I do.[15] |

18. Duhn Oil had previously argued that Cameron's frac mandrels will "dance" if the lockscrews are not in contact with the frac mandrel.[16]

19. Mr. Boyadjieff is not personally aware of any instance in which a frac mandrel danced.[17]

20. Mr. Boyadjieff's opinion that Cameron's frac mandrel would "dance" is based primarily on the testimony of others[18]

### III.   CONCLUSION

Defendant Cameron respectfully submits the forgoing Statement of Material Facts in Support of it Motion for Partial Summary Judgment of No Lost-Profits Damages.

---

[15] *See* Ex. 10, Boyadjieff Depo., p. 140.

[16] *See* Ex. 8, First Boyadjieff Supp. Report, pp. 4-5.

[17] *See* Ex. 12, Boyadjieff II Depo, pp. 33-35.

[18] *See id.* at p. 44.

-5-   **Def. Cameron's Mem. in Support of Its Mot. for Partial Summary Judgment of No Lost-Profits Damages.**

1   Respectfully submitted this 30th day of July, 2009.

2

3

4                                    /s/ Charles J. Rogers
                                    Charles J. Rogers
                                  Attorney for Defendant
5                                 Cooper Cameron Corporation

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              -6-          **Def. Cameron's Mem. in Support
                                             of Its Mot. for Partial Summary
                                             Judgment of No Lost-Profits
                                             Damages.**