# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUHN OIL TOOL, INC., | ) 1:05-cv-01411 OWW GSA |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF DUHN OIL TOOL, INC.'S MOTION TO QUASH THIRD PARTY WRITTEN DEPOSITIONS |
| v. | ) (Doc. 307) |
| COOPER CAMERON CORPORATION, | ) |
| Defendant. | ) |
| AND RELATED CROSS-CLAIMS. | ) |

**INTRODUCTION**

Pending before the Court is Plaintiff Duhn Oil Tool, Inc.'s ("Duhn") Motion to Quash Third Party Written Depositions, filed on June 26, 2009. The parties filed a Joint Statement regarding the motion on August 4, 2009. (*See* Doc. 325.)

Plaintiff Duhn seeks an ordering quashing Defendant Cooper Cameron Corporation's ("Cameron") Notice of Deposition on Written Questions and Subpoena Duces Tecum served, on or about June 30, 2009, upon the following parties: (1) Seaboard Holding, Inc.; (2) Seaboard International, Inc.; (3) The Felters Company; (4) The TASI Group; (5) O'Brien Corporation; (6) Xaloy Incorporation; (7) Atlas Material Testing Technology, LLC; (8) API Heat Transfer, Inc.;

1

and (9) IGP Industries, LLC.  Specifically, Plaintiff asserts Defendant did not seek leave of court pursuant to Rule 31 of the Federal Rules of Civil Procedure, and that it did not stipulate to the third party depositions.  Duhn also contends the notices were not timely, nor did Cameron take reasonable steps to avoid undue burden and expense to the entities involved pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Plaintiff further contends that the requests are overbroad and unduly burdensome and seek neither relevant information, nor information reasonably calculated to lead to discovery of admissible evidence.  Lastly, Duhn contends that Cameron has noticed a total of twelve depositions for the same date, including the aforementioned nine (9) third-party depositions, and that the discovery is meant to harass Plaintiff and the third party entities.  (*See* Doc. 307.)

## RELEVANT PROCEDURAL BACKGROUND

Duhn filed its complaint on November 9, 2005, alleging infringement of its United States Patent number 6,920,925 ("'925 patent").  (Doc. 1.)  On March 15, 2006, Cameron filed its answer and counterclaim.  (Doc. 15.)  On April 12, 2006, Duhn filed its answer to the counterclaim.  (Doc. 18.)

On July 20, 2007, Duhn moved to amend its complaint to assert a claim that Cameron's acts of patent infringement were willful.  (Doc. 101.)  The motion was withdrawn on August 22, 2007.  (Doc. 108.)  On November 10, 2008, Duhn filed a Motion for Preliminary Injunction and Request for Leave to Amend Complaint.  (Doc. 240.)  Cameron opposed on November 24, 2008.  (Doc. 247.)  On January 13, 2009, Duhn moved to amend its complaint.  (Doc. 268.)   On January 21, 2009, Cameron moved to amend its answer and counterclaim.  (Doc. 274.)  On February 6 and 9, 2009, the parties filed oppositions to the motions.  (Docs. 277-278.)  Replies were filed on February 13 and 17, 2009.  (Docs. 281-282.)

On March 4, 2009, District Judge Oliver W. Wanger granted Duhn's motion to amend the complaint.  That same date, the Court denied in part and granted in part Cameron's motion.  (Doc. 286 [counterclaims of unenforceability regarding U.S. Patent Nos. 7,322,407 & 7,416,020 will not be tried with determination of validity of '925 patent].)

1    On March 12, 2009, Duhn filed its First Amended Complaint. (Doc. 291.) On March 24,
2 2009, Cameron filed its First Amended Counterclaim. (Doc. 292.) Duhn filed its answer to the
3 counterclaim on March 26, 2009. (Doc. 293.)
4    On March 31, 2009, Cameron filed a Motion to Strike the First Amended Complaint.
5 (Doc. 294.) Duhn filed its opposition on May 22, 2009. (Doc. 300.) Cameron replied on June 1,
6 2009. (Doc. 302.) On June 9, 2009, Cameron's motion to strike was denied. (Doc. 304.) On
7 June 23, 2009, Cameron filed its answer to the amended complaint. (Doc. 306.)
8    The instant motion followed. (Doc. 307.) A joint statement concerning the discovery
9 dispute was filed August 4, 2009. (Doc. 325.) The matter was taken under submission, without
10 oral argument, by this Court on August 25, 2009, pursuant to Local Rule 78-230(h). (Doc. 341.)

**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**

12    Defendant Cameron noticed the depositions of a number of third party entities for the
13 purpose of determining whether Duhn's payment of patent fees was proper given its
14 classification as a "small entity" rather than a "large entity." The information is relevant to
15 Cameron's assertion that Duhn's patent is unenforceable as a result of Duhn's underpayment of
16 maintenance fees for the '925 patent.

17    **A.**    *Plaintiff Duhn's Statement*
18    Plaintiff contends the nine third party entities that are the subject of Defendant's
19 deposition notices have absolutely no relevance to the lawsuit, that the information Defendant
20 seeks can be obtained from Plaintiff, and that Defendant's actions are "simply intended to harass
21 Duhn and these related companies."
22    During discovery, Duhn indicated that its first maintenance fee payment on the '925
23 patent was made as a small entity. (Doc. 325 at 2.) Subsequently however, it made a
24 supplemental payment as a large entity. Duhn admitted in responses to Defendant's fourth set of
25 interrogatories that it currently employed more than 500 persons, thus it attained large entity
26 status. Therefore, Plaintiff contends "[t]here is absolutely no justification to take these
27 depositions merely to confirm something that Duhn has already confirmed." (Doc. 325 at 2.)
28

**B.**     *Defendant Cameron's Statement*

Defendant responds that Plaintiff has committed inequitable conduct by improperly claiming small entity status regarding its maintenance fees on the '925 patent, and thus its inequitable conduct renders the '925 patent unenforceable. Further, Defendant contends that, during the course of the instant litigation, Duhn has continued to "improperly pay[] small entity fees in connection with related patent applications . . .." (Doc. 325 at 3.) Of the nine patent applications related to the '925 patent filed by Duhn, five patents applications have issued as patents to date. (Doc. 325 at 3.) Defendant asserts that when "Duhn was acquired by Seaboard . . . [it] has been underpaying filing fees, issue fees, and maintenance fees for several of its patents and patent applications related to the '925 patent." (Doc. 325 at 3.)[1]

Defendant seeks to quantify the amount of Duhn's purported underpayment in patent fees. In order to do so, Defendant claims the first step is to identify each of Duhn's affiliates and confirm its status. Plaintiff Duhn has refused to disclose the identity of its affiliates, and thus, the "nine nonparty subpoenas . . . were served on nine entities which Cameron suspects are at least some of Duhn's affiliates," in light of research performed. Defendant believes the documents it seeks will "confirm the status of these entities as affiliates of Duhn." (Doc. 325 at 4.)

Defendant Cameron contends it needs to obtain information directly from the affiliates rather than Duhn because Duhn has failed to provide it. Defendant contends that "Duhn's number of employees, including affiliates, <u>far exceeds</u> 500, and [that it is] not dealing with a close call such that Duhn's underpayment of fees could be explained away as a simple oversight." (Doc. 325 at 6, emphasis in original.)

Defendant requests this Court deny Duhn's motion to quash the subpoenas "and allow each of Duhn's affiliates to generate a simple report from its employee payroll system so that [Defendant Cooper Cameron] will have its evidence necessary to demonstrate that the total

---

[1] "A 50% reduction in filing fees is given to applicants who qualify as 'small entit[ies],' namely, individual inventors, nonprofit organizations, and 'small business concern[s]' as defined by the Small Business Administration specifically for this purpose." Herbert J. Schwartz & Robert J. Goldman, *Patent Law and Practice*, § 2.III.B.4 at n. 38.

4

numbers of employees for Duhn and its affiliates is far in excess of 500 employees." (Doc. 325 at 6-7.)

## DISCUSSION

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958). Discovery will also serve to narrow and clarify the issues in dispute. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

F. R. Civ. P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990).

Rule 31 of the Federal Rules of Civil Procedure provides, in pertinent part:

> (a) **When a Deposition May Be Taken**
> **(1) *Without Leave.*** A party may, by written questions, depose any person, including a party, without lave of court except as provided in Rule 31(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.
> **(2) *With Leave***. A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2):
> (A) if the parties have not stipulated to the deposition and:
> (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 30 by the plaintiffs, or by the defendants, or by the third-party defendants.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> (3) . . . A party who wants to depose a person by written questions must serve them on every other party, with a notice stating, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs. The notice must also state the name or descriptive title and the address of the officer before whom the deposition will be taken.

    (4) ***Questions Directed to an Organization***.  A public or private corporation, a partnership, an association, or a governmental agency may be deposed by written questions in accordance with Rule 30(b)(6).
    (5) ***Questions From Other Parties***.  Any questions to the deponent from other parties must be served on all parties as follows: cross-questions, within 14 days after being served with the notice and direct questions; redirect questions, within 7 days after being served with cross-questions; and re-cross questions, within 7 days after being served with redirect questions.  The court may, for good cause, extend or shorten these times.

(Fed. R. Civ. Proc. R. 31.)

  **A.**  **Unduly Burdensome**

  Plaintiff Duhn contends the subpoenas at issue here are unduly burdensome because "discovery should not be permitted on a nonparty when the information sought is readily available from a party."  (Doc. 325 at 10.)  Plaintiff oversimplifies the issue before the Court.

  Defendant has explained it seeks information from each of the nine non-party entities to establish that Plaintiff has misrepresented itself so as to constitute inequitable conduct, which may then make the '925 patent unenforceable.  Plaintiff asserts that when it provided Defendant with information that Plaintiff's first maintenance fee at three and one-half years following issuance of the patent[2] had been corrected, Defendant no longer needed this information.  Obviously Plaintiff did not provide Defendant with information as to whether or not Plaintiff had acted with inequitable conduct, thereby rendering its patent unenforceable.  Thus, despite Plaintiff Duhn's statement to the contrary, this information is not "readily available" from Plaintiff.  The Court finds Cameron's request to be reasonable.

  Patent applicants must prosecute applications with candor, good faith, and honesty.  *Molins PLC v. Textron*, 48 F.3d 1172, 1178 (Fed. Cir.1995).  "A breach of this duty constitutes inequitable conduct." *Id*.  Inequitable conduct can render a patent unenforceable. *See Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1144 (Fed. Cir.2003).

---

[2]Neither party has provided this Court with the relevant dates.  However, assuming the patent issued on July 26, 2005 (Doc. 1 at 2, ¶ 5 & Ex. A), and a maintenance fee was due on or about three and one-half years later, the first maintenance payment was due in January 2009.

When allegations of inequitable conduct arise from submitting an allegedly false declaration to the Patent and Trademark Office ("PTO"), the party asserting inequitable conduct must show: (1) a false statement made to the PTO; (2) materiality of the statement; and (3) intent to deceive the PTO. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir.2003). Materiality and intent must be established by clear and convincing evidence. *Ulead*, 351 F.3d at 1144. The court then weighs materiality and intent "to determine if equity warrants a finding of inequitable conduct." *Id*.

Cameron has asserted the defense of inequitable conduct by Duhn. Because Cameron is entitled to "obtain discovery regarding any matter . . . relevant to the . . . defense of any party," Cameron should be permitted to conduct discovery regarding whether Duhn made false, material statements to the PTO with an intent to deceive. Duhn labels the written deposition questions as "difficult, redundant, or unnecessary" (Doc. 325 at 10), but fails to identify with specificity which of the questions posed is difficult, redundant, or unnecessary. It not the Court's job to do so.

Duhn has failed to establish an undue burden to the third parties, and thus Duhn's motion to quash the subpoenas on this basis is denied.

### B.     Information Readily Available

Duhn argues "[t]here is absolutely no reason for this discovery except to harass [it] and the[] nine third-party entities" because the "only information Cameron needs to know is whether Duhn is a large or small entity, when did it make that determination, and how did it make the determination." Duhn further states "[t]he only issue remaining is whether Duhn had any intent to deceive the patent and trademark office when it made the small entity payment," and because the third parties would not "have any insight into the decision making process," this Court should quash the subpoenas directed to the nine (9) third-party entities. (Doc. 325 at 10-11.)

Cameron responds that it cannot confirm the status of the nine non-party entities as affiliates without the information it seeks, particularly with regard to how "IGP exercises control over its 'portfolio companies' and the number of employees each affiliate has." Duhn has

refused thus far to identify its affiliates or otherwise provide Cameron with the information it seeks.

Duhn asserts that because it provided Cameron with responses indicating "that Duhn's number of employees . . . is currently more than 500 persons," the only issue remaining is whether Duhn had an intent to deceive the PTO. Duhn then merely states that none of the nine third-party entities "would have any insight into the decision-making process" by Duhn on this issue.

Duhn ignores the fact that evidence of intentional inequitable conduct will rarely include direct evidence of deceptive intent. Rather, the intent is inferred by a patentee's overall conduct. *Ulead Sys., Inc. v. Lex Computer Mgmt. Corp.,* 351 F.3d at 1146. Further, the burden is on the party asserting the inequitable conduct to establish such inequitable conduct by clear and convincing evidence. *Ibid.* Because Cameron seeks to assert the inequitable conduct defense, and because it should be permitted to conduct discovery it believes is material to that defense, Duhn's assertions that the parties do not have anything relevant to offer is not persuasive. Notably too, Duhn's offer regarding the availability for deposition of Duhn's CFO Jennifer Duncan and/or Duhn's patent counsel Gus Marantidis does not state or explain that Duncan or Marantidis can specifically address the information Cameron seeks from IGP Industries, LLC, and its portfolio company Seaboard, whom acquired Duhn.

Duhn has thus failed to establish that the information Cameron seeks is readily available, and therefore, its motion is denied on this basis.

**C.    A Fishing Expedition**

Duhn contends the "written questions and the requests for documents identified in the subpoenas all pertain to proprietary information about the entities and their affiliates" and that information is irrelevant. Duhn also complains about the burden imposed upon the third party entities, where "figuring out how many affiliates it has under the complex Small Business Administration rules . . . requires sophisticated and expensive legal advise, and consumes management time and company resources." Lastly, Duhn complains the information sought includes "highly sensitive financial documents." (Doc. 325 at 11-12.)

Cameron explains why it seeks the information:

> In order to quantify the total value that Duhn and its affiliates have shorted the Patent Office in underpayment of fees, the first step is to identify each of Duhn's affiliates and confirm their status as affiliates under the Patent Office rules. Duhn has made this first step quite difficult by refusing to disclose the identify its affiliates. Cameron's Interrogatory No. 35 asks Duhn to "[p]lease identify all affiliates of Duhn Oil." Duhn responded with nothing but objections and did not identify a single affiliate. [Citation.] The nine nonparty subpoenas that are the subject of Duhn's Motion to Quash were served on nine entities which Cameron suspects are at least some of Duhn's affiliates. Based on information available on the Internet, such as IGP's web site, Cameron believes that these entities are affiliates of Duhn. Most all of the documents requested in the subpoenas are to confirm the status of these entities as affiliates of Duhn, by determining the means though which IGP exercises control over its "portfolio companies," which most likely is through a majority ownership of each company's stock.

(Doc. 325 at 4.) Nothing about Cameron's explanation is interpreted by the Court to amount to "a burdensome fishing expedition." Neither has Duhn provided any authority to support its position. Duhn's motion to quash the subpoenas on this basis is denied.

### D.     Violations of the FRCP

Lastly, Duhn contends Cameron's requests violate several provisions of the Federal Rules of Civil Procedure. First, Cameron did not seek leave of Court to take the depositions pursuant to Federal Rules of Civil Procedure, rule 31. Second, Duhn contends Cameron "did not allow for the 28 day process needed for written deposition questions," nor did Cameron timely serve the notices and subpoenas. (Doc. 325 at 12.)[3]

#### 1.    Leave of Court

Duhn asserts that Cameron did not seek leave of Court, nor did Duhn stipulate regarding these depositions, and that "Cameron has exceeded the number of permitted depositions." (Doc. 325 at 12.) Cameron replied that is has "followed the rules in noticing" the depositions, but offers no further explanation on this point. Cameron further states, "[a]s to the 10 depositions limit, Cameron respectfully requests that this Court treat Duhn and its affiliates as one family of entities for the purposes of the limit on the number of depositions, or in the alternative grant

---

[3] To the degree Duhn argues, again, that the requests were "overbroad, unduly burdensome" (Doc. 325 at 12, lines 20-23), see this Court's discussion related thereto, *ante*.

9

leave to the extent necessary for Cameron to obtain the information it needs . . ..” (Doc. 325 at 12-13.)

No party has provided the Court with the total number of depositions completed to date. The Court assumes from Cameron's statement that one or more of the depositions noticed to the nine third-party entities would exceed the ten deposition limit. Cameron has not provided authority for its request that the Court treat Duhn and its affiliates as "one family of entities."

Rule 30(a)(2) of the Federal Rules of Civil Procedure presumptively limits the number of depositions that each side may take. "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2) . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants . . .." Fed. R. Civ. P. 30(a)(2).

While Cameron asserts that "underpayment issues . . . arose during the late stages of this action" (Doc. 325 at 13), it fails to explain why it did not seek leave of Court, or how seeking leave of Court may have impeded its ability to comply with the Scheduling Order and related discovery deadline.

Nevertheless, this Court "may alter the limits . . . on the number of depositions and interrogatories . . .." Fed. R. Civ. P. 26(b)(2)(A). Cameron has established good cause for this Court to permit it to exceed the number of depositions permitted, and therefore permits the depositions of those nine (9) third-parties identified in Exhibits 5 through 13 of Docket Number 325.

    **2.  The 28 Day Process/Timeliness**

Duhn complains Cameron did not comply with Rule 31 of the Federal Rules of Civil Procedure in that Cameron "did not allow for the 28 day process needed for written deposition questions. There was no time for Duhn to prepare cross examination questions and no time for redirect, re-cross, etc." (Doc. 325 at 12.) Cameron responds that it "followed the rules" and "noticed the depositions on written questions 14 days in advance of the deposition to allow for

cross-questions under the rules. Cameron thereby voluntarily waived its right to serve redirect questions, which eliminated any need for recross-questions." (Doc. 325 at 12-13.)

Cameron issued its subpoenas from (1) the United States District Court for the Southern District of Texas for the subpoenas directed to Seaboard Holdings, Inc., and Seaboard International, Inc., referenced depositions that were to take place in Houston, Texas (Doc. 325 at Exs. 5 & 6); (2) the United States District Court for the District of South Carolina for the subpoena directed to The Felters Company referenced a deposition to take place in Roebuck, South Carolina (Doc. 325 at Ex. 7); (3) the United States District Court for the Southern District of Ohio for the subpoena directed to The TASI Group referenced a deposition that was to take place in Cleves, Ohio (Doc. 325 at Ex. 8); (4) the United States District Court for the Eastern District of Missouri for the subpoena directed to the O'Brien Corporation referenced a deposition to take place in St. Louis, Missouri (Doc. 325 at Ex. 9); (5) the United States District Court for the Western District of Pennsylvania for the subpoena directed to Xaloy Incorporation referenced a deposition to take place in New Castle, Pennsylvania (Doc. 325 at Ex. 10); (6) the United States District Court for the Northern District of Illinois for the subpoena directed to Atlas Material Testing Technology, LLC, referenced a deposition to take place in Chicago, Illinois (Doc. 325 at Ex. 11); (7) the United States District Court for the Western District of New York for the subpoena directed to API Heat Transfer, Inc., referenced a deposition to take place in Buffalo, New York (Doc. 325 at Ex. 12); and (8) the United States District Court for the Northern District of California for the subpoena directed to IGP Industries, LLC, referenced a deposition to take place in San Francisco, California (Doc. 325 at Ex. 13). The subpoenas were served on June 16, 2009, and the depositions were noticed for June 30, 2009.

Subdivision 5 of Rule 31 provides that cross-questions are due within fourteen days "after being served with the notice and direct questions. Redirect questions are due within seven days after being served with cross-questions." Lastly, re-cross questions are due within seven days after being served with redirect questions. *See* Fed. R. Civ. Proc. R. 31(a)(2)(b)(5).

As Cameron explained, it effectively waived redirect questions by providing a total of fourteen days notice to the parties. Thus, Duhn is incorrect when it states "there was no time for

1  Duhn to prepare cross examination questions." (Doc. 325 at 12.)  Subdivision 5 specifically
2  provides that the cross questions are due *within* fourteen days of being served with the notice and
3  direct questions.  Therefore, Duhn had the fourteen day period between June 16, 2009, and June
4  30, 2009, to prepare cross questions.  Duhn could have served its cross questions on June 30,
5  2009, and Cameron could not have objected.
6        Additionally, in light of Cameron's waiver of redirect questions by virtue of the timing of
7  its notices and subpoenas, there was no need for re-cross questions by Duhn.  Because a court
8  may, for good cause, extend or shorten these times, this Court finds this an insufficient basis
9  upon which to quash the subpoenas.

## CONCLUSION AND ORDER

11        For the reasons discussed above, this Court hereby ORDERS that Duhn's Motion to
12  Quash Third Party Written Depositions be DENIED.  Defendant Cameron has thirty (30) days
13  from the date of service of this Order to complete the aforementioned third party depositions.

16      IT IS SO ORDERED.
17      **Dated:   October 15, 2009**        /s/ **Gary S. Austin**
                                                                           UNITED STATES MAGISTRATE JUDGE