1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DUHN OIL TOOL, INC., | ) | 1:05-cv-01411 OWW GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF DUHN OIL |
| Plaintiff, | ) | TOOL, INC.'S MOTION TO COMPEL |
| | ) | DEFENDANT COOPER CAMERON |
| v. | ) | CORPORATION'S PRODUCTION OF |
| | ) | WITNESSES FOR DEPOSITIONS, AND |
| COOPER CAMERON CORPORATION, | ) | DOCUMENTS |
| | ) | |
| Defendant. | ) | (Doc. 308) |
| | ) | |
| | ) | |
| AND RELATED CROSS-CLAIMS. | ) | |
| | ) | |

## I.

## INTRODUCTION

Pending before the Court is Plaintiff Duhn Oil Tool, Inc.'s ("Duhn") Motion to Compel

Defendant Cooper Cameron Corporation's ("Cameron") Production of Witnesses for Depositions

and Documents, filed on June 30, 2009.  Generally speaking, Duhn seeks discovery pertinent to

its claim that Cameron willfully infringed upon its patent.  The parties filed a Joint Statement

regarding the motion on August 4, 2009.  (*See* Doc. 324.)

//

//

//

**II.**

**RELEVANT PROCEDURAL BACKGROUND**

Duhn filed its complaint on November 9, 2005, alleging infringement of its United States Patent number 6,920,925 ("'925 patent"). (Doc. 1.) On March 15, 2006, Cameron filed its answer and counterclaim. (Doc. 15.) On April 12, 2006, Duhn filed its answer to the counterclaim. (Doc. 18.)

On July 20, 2007, Duhn moved to amend its complaint to assert a claim that Cameron's acts of patent infringement were willful. (Doc. 101.) The motion was withdrawn on August 22, 2007. (Doc. 108.) On November 10, 2008, Duhn filed a Motion for Preliminary Injunction and Request for Leave to Amend Complaint. (Doc. 240.) Cameron opposed on November 24, 2008. (Doc. 247.) On January 13, 2009, Duhn moved to amend its complaint. (Doc. 268.) On January 21, 2009, Cameron moved to amend its answer and counterclaim. (Doc. 274.) On February 6 and 9, 2009, the parties filed oppositions to the motions. (Docs. 277-278.) Replies were filed on February 13 and 17, 2009. (Docs. 281-282.)

On March 4, 2009, District Judge Oliver W. Wanger granted Duhn's motion to amend the complaint. That same date, the Court denied in part and granted in part Cameron's motion. (Doc. 286 [counterclaims of unenforceability regarding U.S. Patent Nos. 7,322,407 & 7,416,020 will not be tried with determination of validity of '925 patent].)

On March 12, 2009, Duhn filed its First Amended Complaint. (Doc. 291.) On March 24, 2009, Cameron filed its First Amended Counterclaim. (Doc. 292.) Duhn filed its answer to the counterclaim on March 26, 2009. (Doc. 293.)

On March 31, 2009, Cameron filed a Motion to Strike the First Amended Complaint. (Doc. 294.) Duhn filed its opposition on May 22, 2009. (Doc. 300.) Cameron replied on June 1, 2009. (Doc. 302.) On June 9, 2009, Cameron's motion to strike was denied. (Doc. 304.) On June 23, 2009, Cameron filed its answer to the amended complaint. (Doc. 306.)

The instant motion followed. (Doc. 308.) A joint statement concerning the discovery dispute was filed August 4, 2009. (Doc. 324.) The matter was taken under submission, without oral argument, by this Court on August 25, 2009, pursuant to Local Rule 78-230(h). (Doc. 341.)

1

2                                    **III.**

3                  **JOINT INTRODUCTORY STATEMENTS**[1]

4          Generally speaking, at issue here is whether Cameron can assert the attorney-client

5   privilege and work product doctrine in response to particular discovery responses propounded by

6   Duhn.

7          *Duhn's Statement*

8          Duhn argues that when Cameron asserted the defense of reliance upon an opinion of

9   counsel in response to its claim of willful infringement, Cameron waived its right to claim

10  attorney client and work product privileges for all documents and testimony related to the

11  opinion from advice counsel ("Opinion").  Duhn asserts the waiver is a broad subject matter

12  waiver and relies upon *In re Echostar Commc'n Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).

13  (Doc. 324 at 1.)

14         More specifically, Duhn complains that Cameron has improperly refused to produce in

15  house counsel, Manish Vyas, and its Federal Rules of Civil Procedure rule 30(b)(6) witness for

16  purposes of deposition.  Duhn also alleges Cameron has refused to produce documents and

17  discovery responses related to the advice of counsel defense, other than that prepared by Fletcher

18  Yoder.  (Doc. 324 at 1.)

19         Duhn believes that further justification in support of its motion is evidenced by

20  Cameron's actions, to wit: rather than relying on the Opinion, Cameron designed and

21  manufactured two alternative frac mandrels during the pendency of this litigation.  Duhn claims

22  it "know[s] that Cameron considered at least two opinions (and likely three) in changing its

23  business strategy and coming out with these attempted designarounds."  (Doc. 324 at 1-2.)

24  According to Duhn, Mr. Vyas and trial counsel Rogers were conducting a separate infringement

25

26  _____

27         [1]The Court has done its best to decipher the pleadings in this matter, the organization of
    them often made for a difficult read.  For instance, the Court notes the use of fifty-six (56)
28  footnotes  in a thirty-two (32) page joint statement, many of which were critical and therefore
    should have been provided in the body of the document itself.

analysis and provided Cameron with advice regarding "designs that attempted to workaround Duhn's patent." (Doc. 324 at 2.) Duhn argues that the relevant law mandates it be permitted to review "the full extent of communications and the information Mr. Vyas and Cameron considered, as well as any other opinions regarding the subject of infringement." (Doc. 324 at 2.)

Lastly, Duhn asserts that Cameron is employing delay tactics to prejudice Duhn's ability to participate in discovery and effectively prepare for trial. (Doc. 324 at 3.)

*Cameron's Statement*

Cameron acknowledged that in response to Duhn's claim of willful infringement, it asserted certain defenses, including reliance on a noninfringement opinion issued by opinion counsel Tait Swanson and Lee Eubanks of Fletcher Yoder. (Doc. 324 at 3.)

Cameron asserts that it has produced, in response to Duhn's written discovery requests, documents including the Opinion, all communcations and documents exchanged between Cameron and its opinion counsel regarding the subject matter of the noninfringement Opinion, and all documents and communications between Cameron and its opinion counsel regarding the subject matter of the Opinion, "even if those documents and communications themselves were not communicated from opinion counsel to Cameron . . .." (Doc. 324 at 3-4.)

Cameron claims it complied with the holdings set forth in *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 and *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). More particularly, the "[d]ocuments that embody the advice-of-counsel (the traditional opinion letter itself)" and "[u]ncommunicated work product that reflects a communication between opinion counsel and the client regarding the subject matter of the Opinion." (Doc. 324 at 4.) Cameron did not produce communications with trial counsel, based upon the holding in *Seagate*, wherein the court held that "'asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel.'" (Doc. 324 at 4-5.)

Cameron points out that it and opinion counsel compiled and produced a detailed privilege log pertaining to the documents and categories of documents withheld based upon assertions of the attorney-client and work product privilege. It states it took special care to redact

1   privileged information from that which must be produced and noted the redactions in the

2   privilege log.  (Doc. 324 at 5 & Ex. 10.)  Cameron also took care to redact information

3   "unrelated to infringement issues, which is the subject matter of the noninfringement Opinion" in

4   reliance upon *In re EchoStar*, 448 F.3d at 1297.  (*Ibid*.)

5        Cameron states that in response to Duhn's deposition requests, it "presented its opinion

6   counsel for deposition on June 23, 2009" and filed a motion to quash the deposition of Manish

7   Vyas seeking this Court's guidance.[2]  (Doc. 324 at 6.)  Cameron points out Duhn's "refusal to

8   recognize [its] in-house trial counsel as 'real trial counsel.'" (Doc. 324 at 6.)

9   **IV.**

10  **THE DISCOVERY AT ISSUE**

11       The purpose of discovery is to make trial "less a game of blind man's bluff and more a

12  fair contest with the basic issues and facts disclosed to the fullest practicable extent possible."

13  *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958).  Discovery will also serve to

14  narrow and clarify the issues in dispute.  *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

15       Federal Rules of Civil Procedure rule 26(b) establishes the scope of discovery and states

16  in pertinent part:

17          Parties may obtain discovery regarding any matter, not privileged, that is relevant
    to the claim or defense of any party, including the existence, description, nature, custody,

18  condition, and location of any books, documents, or other tangible things and the identity
    and location of persons having knowledge of any discoverable matter.  For good cause,

19  the court may order discovery of any matter relevant to the subject matter involved in the
    action.  Relevant information need not be admissible at trial if the discovery appears

20  reasonably calculated to lead to the discovery of admissible evidence.

21       "The party who resists discovery has the burden to show that discovery should not be

22  allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v.*

23  *Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna*

24  *Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990).

25       Here, Plaintiff Duhn asserts, (1) it is entitled to see all documents regarding non-

26  infringement opinions and documents relating to Defendant's reliance upon the opinions; (2) it is

27

28         [2]Cameron's motion to quash (Doc. 309) was effectively withdrawn on August 4, 2009 (Doc. 326 ).

entitled to responses from Defendant regarding verbal and written assessments of the risk of

infringement; (3) that Defendant lacks a valid reason for failing to produce witnesses pursuant to

Federal Rules of Civil Procedure rule 30(b)(6); (4) that Duhn is entitled to take the deposition of

Manish Vyas; and (5) that good cause exists to compel production of the witness for deposition

and for the production of documents and information.  (Doc. 308.)

**A.     The Eighth Set of Interrogatories - Numbers 35 & 37-40**

On or about May 14, 2009, Duhn propounded its Eighth Set of Interrogatories to

Cameron.  (Doc. 324, Ex. 5.)

Cameron does not specifically respond to Duhn's interrogatory requests in its Joint

Statement argument.  Rather, Cameron stated it has "produced all documents in the Categories 1

and 3 which the Federal Circuit held in *Echostar* are subject to the waiver triggered by the

advice-of-counsel defense" and that Duhn has not presented this Court with "any proof of the

'unique circumstances to extend waiver to trial counsel . . . set forth in *Seagate*." (Doc. 324 at

29.)

Plaintiff's interrogatories and Defendant's specific responses thereto are as follows:

**INTERROGATORY NO. 35:**
Identify each and every counsel that provided an opinion regarding
whether or not YOUR ACCUSED DEVICES infringe the '925 patent.
**RESPONSE TO INTERROGATORY NO. 35:**
Defendant Cameron incorporates by reference General
Objections 1 through 3 as if fully stated here.  Subject to and
without waiving its objections, defendant responds as follows:
Lee Eubanks
Tait R. Swanson
Fletcher Yoder
7915 FM 1960 West, Suite 330
Houston, TX 77070
**INTERROGATORY NO. 37:**
Set forth, with particularity, the opinion(s) prepared by any CAMERON in
house or outside counsel regarding whether or not YOUR ACCUSED DEVICES
infringe the '925 patent.
**RESPONSE TO INTERROGATORY NO. 37:**
Defendant Cameron incorporate by reference General
Objections 1 through 3 as if fully stated herein.  Subject to and
without waiving its objections, Defendant responds as follows:
Pursuant to Rule 33(d) of the Federal Rules of Civil
Procedure, Defendant Cameron refers to records produced in this
action from which information responsive to this Interrogatory may
be derived or ascertained.  The legal Opinion provided by Lee
Eubanks and Tait Swanson of the Fletcher Yoder law firm, and the

1   related billing records, were produced as document numbers
    CAM44245-44972.
2   **INTERROGATORY NO. 38:**
        Identify each and every document and discussion that was used by counsel
3   to prepare the opinions set forth in YOUR response to interrogatory number 37.
                **RESPONSE TO INTERROGATORY NO. 38:**
4           Defendant Cameron incorporate by reference General
    Objections 1 through 3 as if fully stated herein.  Subject to and
5   without waiving its objections, Defendant responds as follows:
            Pursuant to Rule 33(d) of the Federal Rules of Civil
6   Procedure, Defendant Cameron refers to records produced in this
    action from which information responsive to this Interrogatory may
7   be derived or ascertained.  The legal Opinion provided by Lee
    Eubanks and Tait Swanson of the Fletcher Yoder law firm, and the
8   related billing records, were produced as document numbers
    CAM44245-44972.
9   **INTERROGATORY NO. 39:**
        Identify each person to whom any of the opinion(s) set forth in YOUR
10  response to interrogatory number 37 were communicated to, whether
    communicated in document, electronic, or oral form.
11              **RESPONSE TO INTERROGATORY NO. 39:**
            Manish Vyas - written opinion communicated in document
12  and oral form.
            Thomas Taylor - opinion communicated in oral form.
13  **INTERROGATORY NO. 40:**
        Identify the specific counsel(s) [*sic*] and opinion(s) that CAMERON relied
14  upon in deciding to introduce its NEW STYLE and ORIGINAL DESIGN FRAC
    MANDRELS.
15              **RESPONSE TO INTERROGATORY NO. 40:**
            Defendant Cameron incorporates by reference General
16  Objections 1 through 3 as if fully stated herein.  Subject to and
    without waiving its objections, Defendant responds that it relied in
17  part upon the opinion of Duhn Oil's designated technical expert
    George Boyadjieff, who asserted in his expert report dated August
18  10, 2007 that the asserted claims of the '925 patent required a 'dual
    load path," which he described as "two independent load paths"
19  used "to absorb the axial force," and the opinion of Duhn Oil's
    designated technical expert, corporate representative, and named
20  inventor on the asserted '925 patent, Rex Duhn, who testified at
    pages 39-40 of his September 19, 2007 deposition that "[y]ou
21  would have to contact shoulder for the [lockscrew] to engage . . .
    [t]o react the force on the elongate mandrel," and even when the
22  lockscrew is "screwed in real tight" to contact the frac mandrel
    there "would be insufficient friction coefficient to maintain the
23  mandrel" because "You would have no shear point."

24  (Doc. 324, Ex. 5 at 6-7 & Ex. 11 at 4-5.) The general objections by Defendant Cameron include

25  attorney-client privilege and attorney work product doctrine, an assertion that each is

26  unreasonably burdensome and oppressive, and that the "Definitions" and "Instructions" impose

27  burdens and obligations greater or different than those provided for in the Federal Rules of Civil

28  Procedure, or give meanings other than their ordinary meaning.  (Doc. 324, Ex. 11 at 2.)

7

//

**B.      The Seventh Set of Requests for Production**

On or about May 13, 2009, Duhn propounded its Seventh Set of Requests for Production of Documents to Cameron.  (Doc. 324, Ex. 6.)

Plaintiff complains that Cameron responded to its seventh request for production of documents by "producing just <u>a single document</u>, the Fletcher Yoder Opinion."  The seventh request included thirty separate requests for production of documents.  (Doc. 324 at 8, emphasis in original.)

**1.      Numbers 104, 106-113, 115-116, 118-119, 121-122 & 124-127**

The requests provide as follows:

**REQUEST FOR PRODUCTION NO. 104**
        Any and all documents evidencing communications between YOU and any and all attorneys acting on YOUR behalf regarding the '925 PATENT.
**REQUEST FOR PRODUCTION NO. 106**
        Any and all documents evidencing communications between YOU and all attorneys acting on YOUR behalf regarding YOUR ACCUSED DEVICES.
**REQUEST FOR PRODUCTION NO. 107**
        Any and all documents evidencing communications between YOU and any and all attorneys acting on YOUR behalf regarding any similarities or differences between YOUR ACCUSED DEVICES and the '925 PATENT.
**REQUEST FOR PRODUCTION NO. 108**
        Any and all documents and things used or relied upon by any and all attorneys acting on YOUR behalf for their opinion regarding YOUR ACCUSED DEVICE and the '925 PATENT.
**REQUEST FOR PRODUCTION NO. 109**
        Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON's decision to stop selling its OLD STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the OLD STYLE FRAC MANDREL infringed the '925 PATENT.
**REQUEST FOR PRODUCTION NO. 110**
        Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON's decision to introduce its NEW STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the NEW STYLE FRAC MANDREL infringed the '925 PATENT.
**REQUEST FOR PRODUCTION NO. 111**
        Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON's decision to introduce its ORIGINAL STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the ORIGINAL STYLE FRAC MANDREL infringed the '925 patent.
**REQUEST FOR PRODUCTION NO. 112**
        Any and all mail store files for Manish Vyas, including without limitation the mail store files for mail account manish.vyas@c-a-m.com, that evidence, refer or relate to any oral or written advice of counsel relating to the '925 PATENT, or

the ACCUSED DEVICES, including, without limitation, e-mail archive files, locally stored files, network stores files, Exchange files, PST files, MSF files, and mailbox files.

**REQUEST FOR PRODUCTION NO. 113**

Any and all mail store files for Thomas Taylor that evidence, refer or relate to any oral or written advice of counsel relating to the '925 PATENT, or the ACCUSED DEVICES, including, without limitation, e-mail archive files, locally stored files, network stores files, Exchange files, PST files, MSF files, and mailbox files.

**REQUEST FOR PRODUCTION NO. 115**

Any and all emails, email attachments, and instant messages to or from Manish Vyas that evidence, refer or relate to any oral or written advice of counsel relating to the '925 PATENT, including, without limitation, e-mail archive, locally stored files, network stores files, Exchange files, PST files, MSF files, mailbox files, and mail stores.

**REQUEST FOR PRODUCTION NO. 116**

Any and all emails, email attachments, and instant messages to or from Thomas Taylor that evidence, refer or relate to any oral or written advice of counsel relating to the '925 PATENT, including, without limitation, e-mail archive, locally stored files, network stores files, Exchange files, PST files, MSF files, mailbox files, and mail stores.

**REQUEST FOR PRODUCTION NO. 118**

Any and all emails, email attachments, and instant messages to or from Manish Vyas that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to stop selling its OLD STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the OLD STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 119**

Any and all emails, email attachments, and instant messages to or from Thomas Taylor that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to stop selling its OLD STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the OLD STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 121**

Any and all emails, email attachments, and instant messages to or from Manish Vyas that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to introduce its NEW STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the NEW STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 122**

Any and all emails, email attachments, and instant messages to or from Thomas Taylor that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to introduce its NEW STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the NEW STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 124**

Any and all emails, email attachments, and instant messages to or from Manish Vyas that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to introduce its ORIGINAL DESIGN FRAC MANDREL, including without limitation those documents relating to whether or not the ORIGINAL DESIGN FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 125**

Any and all emails, email attachments, and instant messages to or from Thomas Taylor that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to introduce its ORIGINAL DESIGN

FRAC MANDREL, including without limitation those documents relating to whether or not the ORIGINAL DESIGN FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 126**

Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to any videos taken to support this litigation regarding YOUR ACCUSED DEVICES.

**REQUEST FOR PRODUCTION NO. 127**

Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to any INDENTATIONS made by the lower lockscrews on YOUR ACCUSED DEVICES.

(Doc. 324, Ex. 6 at 7-12.)

Cameron objected to foregoing requests on the following bases: (1) unreasonably burdensome and oppressive; (2) protected from disclosure by privilege, including the attorney-client privilege and the attorney work product doctrine; (3) documents do not exist and/or are not within Cameron's possession, custody or control; and (5) the "Definitions" and "Instructions" impose burdens and obligations on Cameron greater than those set forth in the Federal Rules of Civil Procedure. Yet, Cameron stated that "relevant non-objectionable documents responsive to this request . . . will be made available for inspection and copying . . .."

Duhn has not received responsive documents to these requests. (Docs. 324 at 8 & 325, Ex. 9.) In its motion to compel the requested documents, Duhn relies upon *In re Echostar Commc'n Corp.*, 448 F.3d at 1302-1303, in support of its position.

**2.      Numbers 114, 117, 120, 123, & 128-130**

The requests provide as follows:

**REQUEST FOR PRODUCTION NO. 114**

Any and all emails, email attachments, and instant messages to or from Charles Rogers that evidence, refer or relate to any oral or written advice of counsel relating to the '925 PATENT, including, without limitation, e-mail archives, locally stores files, network stored files, Exchange files, PST files, MSF files, mailbox files, and mail store files.

**REQUEST FOR PRODUCTION NO. 117**

Any and all emails, email attachments, and instant messages to or from Charles Rogers that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to stop selling its OLD STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the OLD STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 120**

Any and all emails, email attachments, and instant messages to or from Charles Rogers that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to stop selling its NEW STYLE FRAC

MANDREL, including without limitation those documents relating to whether or not the NEW STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 123**

Any and all emails, email attachments, and instant messages to or from Charles Rogers that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S decision to stop selling its ORIGINAL STYLE FRAC MANDREL, including without limitation those documents relating to whether or not the ORIGINAL STYLE FRAC MANDREL infringed the '925 PATENT.

**REQUEST FOR PRODUCTION NO. 128**

Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to any checklists regarding the installation and use of YOUR ACCUSED DEVICES.

**REQUEST FOR PRODUCTION NO. 129**

Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to any FRAC MANDREL identification tags or placards for any ACCUSED DEVICE.

**REQUEST FOR PRODUCTION NO. 130**

Any and all documents that evidence, refer or relate to any oral or written advice of counsel relating to CAMERON'S response to the Court Order entered April 2, 2009 regarding DUHN'S Motion for Preliminary Injunction and CAMERON'S business practices regarding the installation and use of its FRAC assembly.

(Doc. 324, Ex. 6 at 9-12.)

Cameron objected to the forgoing requests on the following bases: (1) unreasonably burdensome and oppressive; (2) protected from disclosure by privilege, including the attorney-client privilege and the attorney work product doctrine; (3) documents do not exist and/or are not within Cameron's possession, custody or control; and (5) the "Definitions" and "Instructions" impose burdens and obligations on Cameron greater than those set forth in the Federal Rules of Civil Procedure.  (Doc. 324, Ex. 9.)

### 3.      Numbers 101-103 & 105

These requests provide as follows:

**REQUEST FOR PRODUCTION NO. 101:**

All documents that evidence, refer or relate to any opinion of counsel, whether oral or written, upon which YOU intend to rely in support of an advice of counsel defense to any claims asserted by DUHN.

**REQUEST FOR PRODUCTION NO. 102:**

All documents that evidence, refer or relate to any opinion of counsel, whether oral or written, regarding the validity, enforceability, and/or infringement of the '925 PATENT on which YOU intend to rely as evidence that any infringement of the '925 PATENT was not willful or deliberate.

**REQUEST FOR PRODUCTION NO. 103:**

All documents that evidence, refer or relate to any oral or written advice of counsel relating to infringement of the '925 PATENT by any ACCUSED DEVICE.

**REQUEST FOR PRODUCTION NO. 105:**

Any and all documents evidencing communications between YOU and any other PERSON(S) regarding the '925 PATENT.

(Doc. 324, Ex. 6.)

### C.    The Deposition of Manish Vyas

On or about June 10, 2009, Duhn noticed the deposition of Manish Vyas for June 25, 2009, in Houston, Texas.  Mr. Vyas was specifically identified as "in-house counsel for Cooper Cameron Corporation."  (Doc. 324, Ex. 7.)  On or about June 21, 2009, Cameron moved to quash the depositions of "its in-house counsel for June 23 and 25, 2009."  (Doc. 324, Ex. 12.)

Cameron requests that "this Court provide guidance to the parties regarding the scope of the subject matter waiver triggered by the advice-of-counsel defense" and "implement guidelines for these depositions to insure that Duhn will not be allowed to inquire regarding attorney-client privileged communications . . .."  (Doc. 324 at 30.)  Further, Cameron acknowledged

> that all communications between Cameron (including Mr. Vyas) and its opinion counsel regarding the subject matter of the noninfringement Opinion are within the scope of the waiver, so Mr. Vyas is prepared to testify as to all of his communications with Cameron's opinion counsel regarding the subject matter of the noninfringement opinion, but Mr. Vyas' role as trial counsel must preclude Duhn's attempts at further inquiry into Mr. Vyas' communications with Cameron personnel regarding issues other than the Opinion itself.

(*Ibid.*)  Additionally, Cameron asks this Court to recognize that the waiver of the attorney-client privilege, following assertion of an advice-of-counsel defense, does not extend to communications concerning other defenses to infringement.  (*Ibid.*)  Lastly, Cameron asks this Court to recognize the waiver must be limited to information in or after August 2007 because Duhn's allegations are limited to Cameron's "New Style" and "Original" design frac mandrels.  (*Id.*, at 31.)

### D.    Deposition of Cooper Cameron Corporation

On or about June 16, 2009, Plaintiff noticed the deposition of Cooper Cameron Corporation, pursuant to Federal Rules of Civil Procedure, rules 26 and 30(b)(6)[3], for June 23,

---

[3]Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:
. . . In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate

2009, in Houston, Texas.  (Doc. 324, Ex. 8.)  On or about June 21, 2009, Cameron moved to quash the deposition.  (Doc. 324, Ex. 12.)

Cameron's position regarding this deposition mirrors that detailed above regarding the deposition of Manish Vyas.  *See* subheading C, *ante*.

## V.

## DISCUSSION AND ANALYSIS

In a controversy surrounding assertions of privilege in a patent case, substantive patent law applies, so the law of the Federal Circuit governs, rather than the law of the regional circuit. *In re EchoStar Commc'ns Corp*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

"The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." *Carter v. Gibbs*, 909 F.2d 140, 1451 (Fed. Cir. 1990) (en banc), superceded in non-relevant part, Pub.L. No. 104-424, § 9(c), 108 Stat. 4361 (1994), as recognized in *Mudge v. United States*, 308 F.3d 1220, 1223 (Fed. Cir. 2002).  A client can waive the attorney-client privilege by asserting the defense of advice-of-counsel.  *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1299; *Carter*, 909 F.2d at 1451. The attorney-client privilege is waived as to communications regarding the same subject matter. *In re EchoStar Commc'ns Corp.*, at 1301.  Work product doctrine waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege.

In *In re EchoStar Commc'ns Corp.*, TiVo brought suit for infringement against EchoStar, pertaining to its United States Patent No. 6,233,389 ("the '389 patent").  EchoStar asserted the defense of reliance on advice of counsel.  TiVo sought production of certain documents in possession of Merchant & Gould, from whom EchoStar obtained advice, but upon whom's advice EchoStar chose not to rely.  The district court ruled that EchoStar had waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement, including Merchant & Gould.  It held the waiver included communications that

---

one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation.  The persons designated must testify about information known or reasonably available to the organization . . ..

occurred before or after the filing of the complaint and any work product, whether or not it was communicated to EchoStar.  EchoStar could redact only information related to trial preparation or information unrelated to the alleged infringement.  EchoStar produced communications, including two infringement opinions prepared by Merchant & Gould, but did not produce work product related to the Merchant & Gould opinions.  *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1297.

In response to the district court's ruling, the parties sought clarification.  TiVo argued that the court should order EchoStar to produce all Merchant & Gould documents relating to the advice of counsel defense, including documents not in its possession because the information was not communicated to EchoStar.  EchoStar, on the other hand, asserted it should be required to produce only those documents it was provided by Merchant & Gould.  *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1297.

In its order clarifying the previous order, the district court found the waiver of immunity extended to all work product of Merchant & Gould even where it had not been communicated to EchoStar.  The district court reasoned that the documents could be relevant or lead to the discovery of admissible evidence.  EchoStar petitioned for a writ of mandamus to the Federal Circuit.  *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1297.

The Federal Circuit reaffirmed that "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived."  *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1299.  In response to EchoStar's argument that it intended to rely on in-house counsel and in-house investigation, as distinguished from advice counsel, the Federal Circuit found

> when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould.

*Ibid.*

With regard to EchoStar's argument that the district court erred by ordering that it produce communications never communicated from Merchant & Gould to EchoStar, the Federal Circuit agreed:

> In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is called, can protect "documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails. We recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent. Essentially, the work-product doctrine encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor. . . .
>
> Like the attorney-client privilege, however, the work-product doctrine is not absolute. First, a party may discover certain types of work product if they have substantial need . . . and the party is unable without undue hardship to obtain [the material] by other means. . . . [¶] Second, a party may discover work product if the party waives its immunity. However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead, work-product waiver only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product.
>
> We recognize that the line between factual work product and opinion work product is not always distinct . . .. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.
>
> That being said, we recognize at least three categories of work product that are potentially relevant to the advice-of-counsel defense here. They include: (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. . . . [W]e conclude that waiver extends to the third category but does not extend so far as the second.

*In re EchoStar Commc'ns Corp.*, 448 F.3d at 1301-1303, internal citations & quotation marks omitted. The Federal Circuit held that work product never communicated to the client is not discoverable. That type of work-product deserves the greatest protection from disclosure. *Id*., at 1303. Counsel's mental impressions and legal opinions not communicated do not become evidence of non-privileged, relevant facts, and thus are not within the scope of the waiver. *Id*., at 1303-1304. Uncommunicated legal opinion and mental impressions "provide little if any assistance to the court in determining whether the accused knew it was infringing, and any

relative value is outweighed by the policies supporting the work-product doctrine." *Id.*, at 1304.

In sum, the Federal Circuit concluded that

> when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused.  This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.

*Ibid.*

In *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), Convolve, Inc. and MIT sued Seagate for patent infringement.  Prior to the lawsuit, Seagate retained attorney George Sekimura to provide opinions regarding Convolve's patents.  Opinion counsel operated separately from Seagate's trial counsel at all times.  Seagate notified Convolve that it intended to rely on Sekimura's three opinion letters in defense of Convolve's willful infringement allegation.  It disclosed Sekimura's work product and made him available for deposition.  Convolve moved to compel discovery of communications and work product of Seagate's other counsel, including trial counsel.  The district court concluded that Seagate waived the attorney-client privilege for all communications between it and any counsel concerning the subject matter of Sekimura's opinions, that the waiver commenced with Seagate's knowledge of the patents and would continue until the alleged infringement ceased, or ordered production of any requested documents and testimony concerning the subject matter of Sekimura's three opinions.  Seagate petitioned for a writ of mandamus.  *In re Seagate Technology, LLC*, 497 F.3d at 1366-1367.

In *Seagate*, the Federal Circuit was to confront the willfulness scheme and its functional relationship compared to the attorney-client privilege and work product protection, and whether waiver resulting from advice of counsel and work product defenses extend to trial counsel, a question not answered in its previous *EchoStar* holding.  *In re Seagate Technology, LLC,* 497 F.3d at 1370.   In relevant part, the Federal Circuit stated

> district courts have reached varying results with respect to trial counsel.  Some decisions have extended waiver to trial counsel, whereas others have declined to do so.  Still others have taken a middle ground and extended waiver to trial

counsel only for communications contradicting or casting doubt on the opinions asserted.

Recognizing the value of a common approach . . . we conclude that the significantly different functions of trial counsel and opinion counsel advise against extending waiver to trial counsel. Whereas opinion counsel serves to provide an objective assessment for making informed business decisions, trial counsel focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker. And trial counsel is engaged in an adversarial process. We previously recognized . . . that defenses prepared [by litigation counsel] for a trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as due care before undertaking any potentially infringing activity. Because of the fundamental difference between these types of legal advice, this situation does not present the classic sword and shield concerns typically mandating broad subject matter waiver. Therefore, fairness counsels against disclosing trial counsel's communications on an entire subject matter in response to an accused infringer's reliance on an opinion counsel's opinion to refute a willfulness allegation.

*Id.*, at 1372-1373.

"Further outweighing any benefit of extending waiver to trial counsel is the realization

that in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct."

*Id.*, at 1374. And,

communications of trial counsel have little, if any, relevance warranting their disclosure, and this further supports generally shielding trial counsel from the waiver stemming from an advice of counsel defense to willfulness. Here, the opinions of Seagate's opinion counsel, received after suit was commenced, appear to be of similarly marginal value. . . .

In sum, we hold, as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel. We do not purport to set out an absolute rule. Instead, trial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery. . . .

*Id.*, at 1374-1375.

With regard to the work product protection, the *Seagate* court held

as a general proposition, relying on opinion counsel's work product does not waive work product immunity with respect to trial counsel. Again, we leave open the possibility that situations may arise in which waiver may be extended to trial counsel, such as if a party or his counsel engages in chicanery. And, of course, the general principles of work product protection remain in force, so that a party may obtain discovery of work product absent waiver upon a sufficient showing of need and hardship, bearing in mind that a higher burden must be met to obtain that pertaining to mental processes. *See* Fed. R. Civ. Pro. 26(b)(3).

Finally, the work product doctrine was partially codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which applies work product protection to "documents and tangible things." Courts continue to apply *Hickman v. Taylor*, 329 U.S. 495 [], to "nontangible" work product. *See, e.g., In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662-63 (3d Cir. 2003); *United States v. One Tract of*

*Real Property*, 95 F.3d 442, 428 n. 10 (6th Cir. 1996).  This is relevant here because Convolve sought to depose Seagate's trial counsel.  We agree that work product protection remains available to "nontangible' work product under *Hickman*.  Otherwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions.

*In re Seagate Technology, LLC*, 497 F.3d at 1376.

### *Application*

Cameron waived its "attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel." *EchoStar*, at 1299.  Cameron, in asserting the defense of advice of counsel in response to an assertion of willful infringement, may not rely upon the attorney-client privilege.  Thus, Cameron must respond to any interrogatories, and produce any documents, relating to this subject, including any communications with counsel other than in-house counsel.

Three categories were identified by the *EchoStar* court as potentially relevant to an advice of counsel defense: documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; documents analyzing law, facts, trial strategy, and so forth that reflect the attorney's mental impressions that were not given to the client; and, documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.  The second category identified - documents analyzing law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client - remain protected by the work- product doctrine, and thus, Cameron need not produce them. *EchoStar*, at 1301-1303.

Here however, the issue is more complex because Mr. Vyas has been identified as both in-house counsel for Cameron *and* trial counsel, along with Charles Rogers.  Duhn argues that Mr. Vyas is in-house counsel only, and in the Joint Statement pointed out that Mr. Vyas was not licensed to practice law in California, nor had he applied for *pro hac vice* status in this matter. The Joint Statement was filed on August 4, 2009.  (Doc. 324.)  The day prior however, on August 3, 2009, a *pro hac vice* application was submitted to this Court, accompanied by the necessary fee, on behalf of Manish B. Vyas.  (*See* Doc. 321.)  On August 3, 2009, District Judge

Oliver W. Wanger signed an Order approving the application, and the Order was docketed on August 5, 2009.  (Doc. 327.)[4]

Even prior to the submission of the *pro hac vice* application, Duhn asserted that Cameron's characterization of Mr. Vyas as trial counsel was inappropriate and was in fact evidence of Cameron employing the "sword-and-shield litigation tactics" that *EchoStar* warned against.  (Doc. 324.)

Cameron responds that this Court should "recognize Cameron's in-house trial counsel Manish Vyas as Cameron's 'real trial counsel,' along with Cameron's other trial counsel Charles J. Rogers."  This is so, argues Cameron, because various excerpts from the transcripts of "the ten hearings held so far in this action show [that] Mr. Vyas and Mr. Rogers have both been actively serving as Cameron's trial counsel since the outset of this action."  (Doc. 324 at 29.)

Interestingly, the Court notes that Mr. Vyas had not been previously identified as "in house *trial* counsel" by Cameron.  While Mr. Vyas certainly appeared along with Mr. Rogers for a number of appearances, he was identified only as "in house counsel" or "Managing Attorney, Patent Services" for Cameron in the majority of those occasions.  (*See* Doc. 324, Ex. 19 at 4 & 6 ["here today also our in-house counsel at the Cooper Cameron Corporation, Manish Vyas"], 54 ["and I have with me our in-house counsel, Mr. Manish Vyas"], 62-63 [in-house counsel], 72 ["Manish Vyas, in-house counsel for Cameron International"], 97 ["I have with me Mr. Manish Vyas and Peter Belinski, in-house counsel at Cameron"].)  Otherwise, Mr. Vyas remained unidentified as to his status as counsel in the remaining appearances.  (*See cf.* Doc. 324, Ex. 19 at 38, 42, 45, 157).[5]  Notably too, while Mr. Vyas has certainly participated in a number of hearings before the Court, the Court notes that he was not present for the initial scheduling conference, or scheduling conferences that did not otherwise follow a more substantive hearing.  (*See, e.g.* Docs. 14 & 162.)

---

[4]Mr. Rogers' *pro hac vice* application, by comparison, was submitted on February 13, 2006 (Doc. 8) and granted on February 16, 2006 (Doc. 11).

[5]A number of the pages to Exhibit 19 do not reflect Mr. Vyas appearance at all, rather, only Mr. Rogers' appearance is reflected in the transcript excerpts provided to the Court.  *See* Doc. 324, Ex. 19 at 48-50, 67-68

This Court is not persuaded by Cameron's recent assertion that Mr. Vyas is trial counsel in this matter.  Between the numerous appearances wherein Mr. Vyas is expressly identified as in house counsel, the filing of Mr. Vyas's *pro hac vice* application just *one* day prior to the filing of the instant joint statement (particularly where this litigation commenced in 2005), as well as Cameron's own August 2009 pleading wherein it moved to quash the deposition of "in house counsel," the record clearly belies this assertion.  Moreover, this Court is free to exercise its discretion in "unique circumstances to extend waiver to trial counsel" and finds this case presents unique circumstances justifying its finding.[6]  *Seagate*, 497 F.3d at 1375.

Further, as the *Seagate* court acknowledged, district courts retain the ability to find a waiver of the work product doctrine where "situations may arise in which waiver may be extended to trial counsel . . .."  *In re Seagate Technology, LLC*, 497 F.3d at 1376.  For the reasons given above, this Court is concerned with the sword-and-shield litigation tactics employed in this matter.  Thus, the Court believes its finding represents a fair balance between the policy to prevent sword-and-shield litigation tactics with the policy to protect work product.

### The Interrogatories

Duhn's motion to compel responses to the identified interrogatories is GRANTED.  For the reasons stated above, Cameron shall respond to Interrogatory Numbers 35, 37, 38, 39 and 40. Cameron's objections thereto are overruled.

### The Requests for Production

Duhn's motion to compel responses to the identified request for production is GRANTED IN PART for the reasons outlined above.  Cameron shall respond to Request for Production numbers 103 through 104, 106 through 113, 115 through 116, 118 through 119, 121

---

[6]Compare *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 476 F.Supp.2d 1159, 1167 (N.D. Cal. 2007), where trial counsel and opinion counsel hailed from the same law firm:

> The Court doesn't presume to mandate who a litigant hires as trial counsel and opinion counsel, nor to forbid the hiring of the same firm as both trial counsel and opinion counsel, but it does seem risky, and a litigant shouldn't presume the privilege of shielding all opinion-related work product and communications to which trial counsel is privy.

through 122, and 124 through 130.  For the reasons provided herein, Cameron's objections thereto are otherwise overruled.

However, with regard to Requests for Production numbers 114, 117, 120, and 123, Duhn's motion is DENIED because the requests seek information from trial counsel Charles Rogers.

### The Depositions

#### Manish Vyas

Duhn's motion to compel the deposition of attorney Manish Vyas is GRANTED.  In light of this Court's finding that Mr. Vyas is more properly considered in house counsel for Cameron, rather than trial counsel, his deposition will proceed.

With regard to the scope of Mr. Vyas's deposition, and in light of this Court's finding that Mr. Vyas has been consistently identified as "in house counsel" rather than trial counsel, Mr. Vyas will testify at his deposition consistent with his obligation as in house counsel, up to and including August 3, 2009, wherein Mr. Vyas submitted a *pro hac vice* application with this Court.  In other words, Mr. Vyas's status as trial counsel, if in fact he intends to participate alongside Mr. Rogers, commences as of August 3, 2009, but not before that date.

Any objection asserted by Cameron is overruled.

#### Cooper Cameron Corporation

Duhn's motion to compel the deposition of Cooper Cameron Corporation is GRANTED. Any objection asserted by Cameron is overruled.

## CONCLUSION AND ORDER

The Court finds that Cameron has waived attorney-client privilege and the work product doctrine for all attorney-client communications on the same subject matter as the opinion relied on, for all work product which references such communications, and for all work product on the same subject matter which was communicated to the client.

For the reasons discussed above, this Court hereby ORDERS as follows:

1.      Cameron shall provide supplemental responses to Interrogatory numbers 35, 37, 38, 39, and 40 of Duhn's Eighth Set of Interrogatories within fourteen (14) days of the date of this Order;

2.      Cameron shall provide supplemental responses to Request for Production numbers 103 through 104, 106 through 113, 115 through 116, 118 through 119, 121 through 122, and 124 through 130 of Duhn's Seventh Request for Production of Documents within fourteen (14) days of the date of this Order;

3.      Cameron's in house counsel, Manish Vyas, shall submit to a deposition, in accordance with this Order, within thirty (30) days of the date of this Order;

4.      Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Cameron shall identify a designee who shall submit to a deposition, in accordance with this Order, within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

Dated:    **October 15, 2009**                          **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE