**CHARLES J. ROGERS,** admitted *pro hac vice*
**CONLEY ROSE, P.C.**
**600 Travis Street, Suite 7100**
**Houston, Texas 77002-2912**
**Telephone:  (713) 238-8049**
**Facsimile:  (713) 238-8008**
**e-mail:  crogers@conleyrose.com**

Attorneys for Defendant
Cooper Cameron Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUHN OIL TOOL, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> vs. <br><br> COOPER CAMERON CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | Case No. 1:05-cv-01411-OWW-GSA <br><br> **DEFENDANT CAMERON'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO LOST-PROFITS DAMAGES** <br><br> Date:  October 26, 2009 <br> Time:  10:00 a.m. <br> Ctrm:  3, Hon. Oliver W. Wanger |

Defendant Cooper Cameron Corporation, which is now known as Cameron International Corporation, ("Cameron") files this Reply Brief in Support of Its Motion for Partial Summary Judgment of No Lost-Profits Damages ("Motion"). Duhn Oil cannot, as a matter of law, establish the prerequisite "but for" causation to obtain lost-profits damages, because acceptable non-infringing substitute products were available on the market. Accordingly, Cameron respectfully requests that this Court enter a judgment that, as a matter of law, Duhn Oil is not entitled to lost-profits damages for any alleged infringement of U.S. Patent No. 6,920,925 ("the '925 patent").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................II
TABLE OF EXHIBITS ........................................................................................................ III
I.    INTRODUCTION ........................................................................................................1
II.   DUHN OIL MISSTATES THE FACTS ......................................................................2
      A.   The History of Cameron's Design Changes ......................................................2
      B.   Duhn Oil's Phantom Dancing ............................................................................4
      C.   What the Checklists Show .................................................................................5
           1.   The Checklists Show Cameron Does Not Run-In Lockscrews ............5
           2.   The Checklists Duhn Oil Contends Show Infringement ......................5
           3.   The Checklists That Show No Dimples ...............................................7
III.  NO ISSUES AS TO AVAILABILITY OR ACCEPTABILITY ................................8
      A.   Duhn Oil's Expert Admits Acceptability ........................................................98
      B.   Duhn Oil Lacks Evidence of Customer Complaints .........................................9
      C.   Cameron's Single-Load-Path Mandrel Was Available ...................................10
IV.   CONCLUSION ...........................................................................................................10

# TABLE OF AUTHORITIES

U.S. Court of Appeals Cases

*See Micro Chem., Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003) .................................................................................... 10

**TABLE OF EXHIBITS**

A. Non-Confidential Excerpts from July 17, 2008, Deposition of Mr. Scott Bender (President of Wood Group Pressure Control) ("Bender Depo.").

B. Excerpts from George Boyadjieff's Expert Report Rev A. Dated August 10, 2007 (Page 14 was excluded for containing information designated as "Confidential" under the Protective Order.). (Also provided as Doc. No. 132-3, pp. 3-21.)

C. George Boyadjieff First Supp. Expert Report Dated June 11, 2008 ("1st Supp. Boyadjieff Report").  (Also provided at Doc. No 210-2, pp. 37-43.)

D. Excerpts from September 24, 2008, Deposition of Mr. George Boyadjieff (Duhn Oil's Non-inventor, Designated Expert) ("Boyadjieff's Sept. '08 Depo.").

E. Excerpts from May 29, 2008 Deposition of Mr. Thomas Taylor (Cameron's Senior Engineer) ("Taylor's May '08 Depo.").

F. Non-Confidential Excerpts from September 8, 2009 Deposition of Mr. Ross Tobin (Cameron's Grand Junction, Co Facility Manager) (Tobin's Sept. '09 Depo.").

G. Excerpt from George Boyadjieff's Second Supplement Expert Report Dated August 25, 2008.

## I. INTRODUCTION

Lost profits are awarded when *a patentee can show* that there is a have-to-have-it feature to the patented product. That have-to-have-it feature must also be one for which *the patentee can show* customers are unwilling to accept substitutes. If the patentee's product was just one of many fungible products available on the market, then there is no demand for the patented feature. And the prerequisite "but for" causation for an award of lost-profits damages would be lacking. In this case, even Duhn Oil's expert stated that Cameron's non-infringing single-load-path frac mandrel is an acceptable substitute product. Duhn Oil does not dispute this.

Cameron customers couldn't care less if they received a non-infringing "single-load-path" frac mandrel or an allegedly-infringing "dual-load-path" one.[1] Cameron's field manager in Grand Junction ("GJ"), Colorado. facility—which is the facility where the vast majority of Cameron's frac mandrel installations have occurred—declared that since at least August 21, 2008, Cameron has not run-in the lockscrews.[2] Moreover, Cameron has provided conclusive proof that it has informed every one of its customers that Cameron does not provide "dual-load-path" frac mandrels.[3] In fact, Cameron has placed conspicuous notices on its products to ensure its customers are informed that Cameron does not provide "dual-load-path" mandrels, and that its products are not to be placed in the allegedly-infringing "dual-load-path" configuration.[4] ***None of Cameron's customers has ever complained or suggested that the "single-load-path" configuration***

---

[1] *See* Ex. A (Bender Depo.), pp. 115-118.
[2] *See* Ex. A.1 to Cameron's MSJ No Lost Profits (Tobin Declaration), ¶ 4.
[3] *Id.* at ¶¶ 22-25.
[4] *Id.* at ¶¶ 3-4.

1  **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

*was unacceptable*.[5] Even more telling, Duhn Oil has not presented any thing more than attorney argument to suggest otherwise. The sporadic instances of alleged infringement that Duhn Oil contends Cameron's checklist show, even if that alleged infringement is accepted as true, are not sufficient to establish that Cameron's single-load-path frac mandrel is an unacceptable or unavailable substitute.

## II.   DUHN OIL MISSTATES THE FACTS
### A.   THE HISTORY OF CAMERON'S DESIGN CHANGES

This Court is well aware of Cameron's contention that the history of changes to its frac mandrel has been a function of Duhn Oil's varying interpretations of the disputed "wherein" clause. Had Duhn Oil given Cameron a consistent interpretation of the "wherein" clause in which single-load-path frac mandrels are non-infringing from the start, Cameron could have and would have switched to its single-load-path design immediately.

During the first two years of this litigation, Duhn Oil's contention was that the "wherein" clause encompassed both single-load-path designs and dual-load-path designs.[6] Duhn Oil subsequently changed its position and stated that single-load-path frac mandrels were not infringing. Mr. Boyadjieff, Duhn Oil's retained non-inventor expert, coined the phrase "dual-load-path" in his expert report dated June 13, 2007.[7] In this report, Duhn Oil first stated that there was a dual-load-path requirement in the "wherein" clause, and that this requirement was only satisfied by "two independent load

---

[5] *Id.*

[6] *See* Duhn Oil's Reply in Support of MSJ Validity (Doc. No. 49), pp. 5-6, n. 3; *see also* Markman Hearing Transcript (Doc. No. 68), pp. 92-93.

[7] Ex. B (Boyadjieff Report), p. 9.

-2-   **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

paths."[8] In response, Cameron incapacitated the grooves in its mandrel by widening the grooves on its existing mandrels and removing the groove all together on its newly-manufactured mandrels.[9] Mr. Rex Duhn, one of Duhn Oil's designated experts and a named inventor on the '925 patent, confirmed that this incapacitation was sufficient to avoid infringement.[10] Indeed, Mr. Duhn stated there was no infringement even if, as Cameron's counsel asked, the lockscrew is "screwed in real tight."[11]

*Thus, finding dimples on mandrels that were modified or manufactured during the 2007 timeframe is not surprising, because Duhn Oil told Cameron that engagement with a groove on the mandrel was a prerequisite for infringement.* Cameron had not changed its procedures to avoid running-in of the lockscrews at that time, as it was not necessary to avoid infringement under the named inventor's own interpretation of the "wherein" clause.

In the summer of 2008 and in direct contradiction to the testimony of Mr. Rex Duhn, Duhn Oil changed its interpretation of the "wherein" clause. Duhn Oil began to argue the *any contact* between the lockscrew and the frac mandrel would be sufficient to meet the limitations of the "wherein" clause.[12] Since August 21, 2008, Cameron ensured that is personnel were aware of its new procedures that the lockscrews were not to be placed in contact with the frac mandrels.[13] Moreover, since February, 2009, Cameron

---

[8] *Id.*
[9] *See* Ex. A.2 to Cameron's MSJ No Lost Profits (Devlin Declaration), ¶¶ 5-9.
[10] *See* Ex. A.7 to Cameron's MSJ No Lost Profits (Duhn [Sept. '07] Depo), pp. 39-40.
[11] *See id.*
[12] *See* Ex. C (1st Supp. Report), p. 3.
[13] *See* Ex. A.1 to Cameron's MSJ No Lost Profits (Tobin Declaration), ¶ 4.

-3-   **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

has ensured that all of its frac mandrels include a clear marking indicating that the lockscrews are not to be run-in.[14]

### B. DUHN OIL'S PHANTOM DANCING

Duhn Oil's contention is that Cameron's frac mandrels in a single-load-path configuration are unacceptable because, ***and only because***, Cameron's mandrels in that configuration tend to "dance."[15]  Duhn Oil's argument is pure conjecture, and clearly wrong in view of empirical evidence.  First, Duhn Oil does not dispute that Cameron's frac mandrels ***have been in used*** in a single-load-path configuration.[16]  Cameron has video-graphed at least three instances where a frac mandrel was used in a single-load-path configuration and, as Duhn Oil's expert confirmed, there was no dancing in those videos.[17]  Second, Duhn Oil concedes that its expert is not personally aware of any instance of dancing and that his conclusion of "dancing" is based on the testimony of others.[18]  In fact, Duhn Oil's expert concluded that there would be no way to calculate at what point "dancing" would occur and that you could only determine if dancing occurred by experience.[19]  Cameron's personnel have repeatedly confirmed that none of them is aware of any instance under any theoretical condition where "dancing" would occur or

---

[14] *See id.*
[15] *See* Ex. C (1st Supp. Report), pp. 4-6.
[16] *See infra* § II(c)(3).
[17] *See* Ex. A.3 to Cameron's MSJ No Lost Profits (Taylor Declaration), ¶¶ 33-36.  Duhn Oil objected to the introduction of this video, but later withdrew its objection.  *See* Doc. Nos. 221 and 237.  *See also* Ex. D (Boyadjieff Sept. '08 Depo.), pp. 37-38.
[18] Duhn Oil's Response to Cameron SOF Re: Cameron's MSJ No Lost Profits, p. 10.
[19] *See* Ex. D (Boyadjieff Sept. '08 Depo.), pp. 42-43.

-4- **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

has occurred.[20]   There have been no complaints from customers that dancing has occurred.[21]  *Nobody has ever seen a Cameron frac mandrel dance.*

Accordingly, there is no evidence, through either engineering analysis or practical experience, which suggests that Cameron's frac mandrel, when placed in a single-load-path configuration, dances and, as such, is unacceptable.  Duhn Oil's conclusory assertion to the contrary is not evidence.

### C. WHAT THE CHECKLISTS SHOW

#### 1. THE CHECKLISTS SHOW CAMERON DOES NOT RUN-IN LOCKSCREWS

Each and every one of the more than 150 installation checklists states that the frac mandrel was installed such that the lockscrews were not placed in contact with the frac mandrel.  Moreover, each of the checklists states that the Cameron frac mandrel being installed has been marked to conspicuously indicate that the lockscrews should not be run-in to contact the mandrel.  Each checklist is signed by the Cameron employee completing the checklist.  That much neither side disputes.

#### 2. THE CHECKLISTS DUHN OIL CONTENDS SHOW INFRINGEMENT

However, as with any procedure, documentary or otherwise, there are going to be clerical errors.  Indeed, numbers will be transposed, documents will be improperly duplicated, and mistakes will be made.  Infallibility cannot be expected from any of Cameron's employees.  When reviewing the checklists, they should be interpreted in context and in light of all of the information available—not with a dogmatic belief that no errors have or could have occurred.

---

[20] *See* Ex. E (Taylor's May '08 Depo.), pp. 180, 184; *see also* Ex. A.1 to Cameron MSJ No Lost Profits (Tobin Declaration), ¶ 4.
[21]

-5-     **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

### a. The Alleged Acts of Infringement.

Reviewing the alleged acts of infringement in context indicates the documents more-likely show clerical errors rather than alleged infringement or demand. For example, Duhn Oil calculates the number of "infringing" uses by counting the number of dimples and dividing by four, to conclude that a mandrel has been used multiple times in a short period.[22] This methodology is wrong.

First, Cameron's mandrels are rarely installed and uninstalled on the same well site. As Cameron's Grand Junction facility manager testified, each frac mandrel is installed in the shop, shipped to a well, and returned to the shop for installation on the next well.[23] That is why he stated that frac mandrels leaving the shop with no dimples and returning with dozens of dimples does not make sense:

> [Cameron's GJ facility Manager]: …. It would alarm me if you went from zero marks to four marks…. if we install a mandrel and it's [*sic*] got zero marks and that's what we indicate and it comes back from the field and we indicate that it has four marks [i.e., the number of lockscrews on Cameron's tubing heads], that would indicate to me that we have a problem…. Now, if it goes from zero to 18 or 35 or 26 marks, that doesn't make any sense, because when the mandrel goes into the field to a well site, if they were in fact to run in the lockscrews, it would go from zero to four marks.[24]

Second, Cameron's frac mandrels do not have a turnaround time of the "same day" or "two weeks." As Cameron's GJ facility manager testified, "I can say that the

---

[22] *See, e.g.,* Duhn Oil Oppos. to Cameron's MSJ No Lost Profits, pp. 9-11. "Mandrel M-68 was installed for Williams Company on April 23, 2009 from Cameron['s] Grand Junction facility. This installation was done after was buffing out the mandrels prior to installation. But, [o]n July 14, 2009, the M-68 mandrel had to have 16 indentations buffed out. Because a tubing spool has four to six lockscrews, M-68 was installed and used <u>at least three times</u> in that two week period, all with the lockscrews fully engaged." *Id.* at p. 10 (emphasis in original).

[23] *See* Ex. F (Tobin's Sept. '09 Depo.), pp. 43-45.

[24] *Id.* at p. 86.

-6-                **Def. Cameron's Reply in Support
                    of Partial MSJ of No Lost-Profits**

mandrel did not enter the field between 4/22 and 5/5 because that turnaround time for Williams has never happened on that sort of installation."[25]  Thus, Duhn Oil's conclusions that the mandrels were used "at least three times in that two week period" or installed and returned on the same day are incongruous with the realities of frac-mandrel installation and operation.  More important, Duhn Oil has not presented any evidence, in the form of declaration evidence or deposition testimony, which contradicts Cameron's GJ facility manager's interpretation of the checklists and potential errors in them.

### b. When The Dimples Were Made

As the checklists show, Cameron's mandrels are often out in the field for months at a time.[26]  Thus, until all of Cameron's frac mandrel in the field are returned and buffed, Cameron will continue to receive frac mandrels with dimples that were made before Cameron changed its procedures.  As discussed above, Duhn Oil expressly told Cameron that infringement does not occur if there is no contact shoulder on the mandrel.  In reliance on Duhn Oil's statement, Cameron incapacitated or removed the groove that carried the contact shoulder on its mandrel.  It is only later that Duhn Oil changed its contentions and asserted that any contact on the mandrel was sufficient for infringement.  Duhn Oil should not be allowed to have misled Cameron regarding what is or is not infringing and, then, claim that the presence of any dimple is proof of "blatant infringement."

### 3. THE CHECKLISTS THAT SHOW NO DIMPLES

Even if, for the purpose of summary judgment, we assume that Duhn Oil's interpretations of so-called "nineteen" checklists prove lockscrews are being run-in, Duhn Oil has not provided any rebuttal for the checklists that establish the single-load-

---

[25] *Id.* at p. 84.
[26] *See e.g.* Ex. A.1 to Cameron's MSJ No Lost Profits (Tobin Declaration), ¶¶ 8-20.

-7-    **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

path configuration was implemented.[27]  Thus, the checklists, even when viewed in a manner most favorable to Duhn Oil, prove that Cameron single-load-path frac mandrel is acceptable to its customers.

### III.   NO ISSUES AS TO AVAILABILITY OR ACCEPTABILITY

The parties agree that if Cameron can show there are no genuine issues as the availability or acceptability of its single-load-path frac mandrel, then Cameron should win this motion.  Cameron can do both, even though Duhn Oil—not Cameron—bears the burden for obtaining lost profits.  Despite the fact that Duhn Oil's expert stated that Cameron's non-infringing single-load-path frac mandrel was an acceptable substitute, Duhn Oil points to the checklists in order to create an issue.  However, even in a light most favorable to Duhn Oil, the checklists do not prove Cameron's non-infringing single-load-path mandrel is unacceptable.  At best, the checklists indicate that, in sporadic instances, Cameron's frac mandrel may have been improperly installed or used in an allegedly infringing manner.  Indeed, installers or field personnel may make mistakes.  The fact that such mistakes may be made does not establish unacceptability of the product.

Cameron has notified its customers that it is only providing single-load-path mandrels, and has received no complaint or comments that evidence unacceptability.  Duhn Oil has presented no evidence from a customer or installer or third party to suggest, in rebuttal, that the market demands a dual-load-path frac mandrel.  Similarly, with respect to availability, Duhn Oil misapplies Federal Circuit precedent to conclude that unscrewing lockscrews required substantial acumen.

---

[27] *See, e.g., id.* at ¶¶ 8, 11, 13, 17, 20.

-8-   **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

### A. DUHN OIL'S EXPERT ADMITS ACCEPTABILITY

In a rather frank admission, Duhn Oil's own expert conceded that Cameron's non-infringing single-load-path configuration was an acceptable substitute. Cameron expressly noted this in its opening brief, and Duhn Oil was silent in its opposition. Considering, as discussed above, that Duhn Oil's expert has not presented any technical or testimonial evidence as to why he believed Cameron's frac mandrel is unacceptable because it would dance, it is not surprising that Duhn Oil's expert finally concedes this point. This admission, in and of itself, should be sufficient to deny Duhn Oil lost-profits damages.

### B. DUHN OIL LACKS EVIDENCE OF CUSTOMER COMPLAINTS

Cameron has taken rather extraordinary measures to ensure its customers are well-informed about the products it provides. There is no dispute that Cameron has notified its customers that it will only provide frac mandrels in a single-load-path configuration, through mailings, through direct delivery of Cameron's procedures to its customer contacts, and through its conspicuous on-product notices.[28] Thus, Cameron's customers certainly know what frac mandrel configuration Cameron is providing. Beyond the handful of checklists Duhn Oil contends prove alleged infringement, Duhn Oil has provided no evidence that Cameron's customers are disobeying Cameron's instructions or that Cameron's customers have complained or taken sales away from Cameron when it began offering the single-load-path frac mandrel. In fact, a third party frac company, Halliburton, confirmed that it does not touch the lockscrews and would not run-in the screws.[29]

---

[28] *See id.* at ¶¶ 2, 3, 21-26
[29] *See* Cameron's MSJ No Lost Profits (Doc. No. 319-2), at p. 23 of 30.

-9-   **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

Moreover, third-party supplier testimony supports the conclusion that Cameron's products and those of other competitors are acceptable substitutes. Mr. Scott Bender, the President of Wood Group Pressure Control, a company that provides a frac mandrel Duhn Oil has not accused of infringement,[30] stated that customers don't care about the particulars of the frac mandrel: "They all work. They all do the job."[31]

### C. CAMERON'S SINGLE-LOAD-PATH MANDREL WAS AVAILABLE

Duhn Oil attempts to argue there are genuine facts regarding availability by citing to inapposite case law. In the *Mirco Chem* decision relied on by Duhn Oil, the Federal Circuit found the non-infringing device was not available because it took months to "convert" the infringing devices to non-infringing one.[32] Moreover, the Federal Circuit found that specially fabricated parts needed to be obtained to "convert" the devices.[33] By contrast, the only thing Cameron had to do to change its product to a conceded non-infringing one was not screw in a screw. There were no new parts need for conversion. All Cameron had to do was not turn a screw. Thus, like the accused infringer in *Grain Processing,* the basis for not having made the confirmed non-infringing product available earlier was disputes over what the claims covered—not a technical ability.

### IV. CONCLUSION

For the foregoing reasons and authorities cited, Defendant Cameron respectfully requests that this Court find that, as a matter of law, that Duhn Oil is not entitled to lost-profits damages for any alleged infringement of the '925 patent. .

---

[30] *See* Ex. G.
[31] *See* Ex. A (Bender Depo.), pp. 115-118.
[32] *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123-24 (Fed. Cir. 2003).
[33] *See id.*

-10-   **Def. Cameron's Reply in Support of Partial MSJ of No Lost-Profits**

Respectfully submitted this 19th day of October, 2009.

    /s/ Charles J. Rogers
Charles J. Rogers
Attorney for Defendant
Cooper Cameron Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2009, I filed the foregoing ***Reply in Support of Cameron's Motion for Partial Summary Judgment of No Lost-Profits Damages*** with the Court through this district's CM/ECF system.  Pursuant to Local Rule 5-135(a), the "Notice of Electronic Filing" automatically generated by CM/ECF at the time the document is filed with the system constitutes automatic service of the document on the following counsel of record who have consented to electronic service.

| | |
|---|---|
| Edward R. Schwartz<br>Christie, Parker & Hale, LLP<br>P. O. Box 7068<br>Pasadena, California 91109-7068<br>Telephone:  (626) 795-9900<br>Facsimile:  (626) 577-8800 | ers@cph.com |
| James M. Whitelaw<br>Joseph E. Thomas<br>Thomas Whitelaw & Tyler LLP<br>18101 Von Karman Ave., Suite 230<br>Irvine, CA  92612<br>Telephone:  (949) 679-6400<br>Facsimile:  (949) 679-6405 | jwhitelaw@twtlaw.com<br>jthomas@twtlaw.com |

**Counsel for Plaintiff/Counter-Defendant Duhn Oil Tool, Inc.**


                                    /s/ Charles J. Rogers
                                      Charles J. Rogers