IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DUHN OIL TOOL, INC., | ) | No. CV-F-05-1411 OWW/GSA |
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER GRANTING PLAINTIFF'S |
| Plaintiff, | ) | MOTION FOR LEAVE TO FILE |
| | ) | SECOND AMENDED COMPLAINT |
| vs. | ) | (Doc. 377) |
| | ) | |
| | ) | |
| COOPER CAMERON CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Before the Court is Plaintiff Duhn Oil Tool, Inc.'s ("Duhn")

motion for leave to file a Second Amended Complaint (SAC) to

assert claims against Defendant Cooper Cameron Corporation

("Cameron") of infringement by manufacture and use, and indirect

infringement.  The proposed SAC alleges:

       III.  <u>FACTUAL BACKGROUND</u>.

       ...

       6.  Defendant, by itself or in concert with
       others, manufactured, used, offered for sale,
       sold, is manufacturing, using, offering for

1

sale and/or is selling in this district and elsewhere in the United States, products which infringe the '925 Patent, literally and/or pursuant to the Doctrine of Equivalents, and/or by otherwise contributing to the infringement or inducing others to infringe the '925 Patent.

7.   When Plaintiff initiated this action against Defendant on or about November 5, 2005, Defendant was manufacturing, selling, renting, and/or offering to sell and/or rent an infringing product referred to as its 'Old Style' design.  Plaintiff's and Defendant's infringement and non-infringement experts, respectively, have both confirmed in discovery that this 'Old Style' design infringes the '925 Patent as it meets all the claim limitations of the '925 Patent. Defendant has provided manuals and training to third parties for knowingly inducing them to infringe the '925 Patent.  Further, Defendant's mandrel systems have no substantial non-infringing use.  Accordingly, Defendant has been contributing to infringement or inducing others to infringe the '925 Patent, in particular its customers and certain third party installer companies, regarding the 'Old Style' design.

8.   Defendant continuously made, used, sold, and offered for sale the 'Old Style' design, and/or contributed to or induced others to infringe, until about August 2007, when Defendant attempted to work around infringement by introducing a 'New Style' design.  In the 'New Style' design, Defendant merely widened the groove of the frac mandrel where the lock screws set.  Despite this insignificant change, the 'New Style' retains all the same infringing structures as Defendant's 'Old Style,' including lockscrews that could be tightened to engage the surface of the frac mandrel.

9.   In November 2007, Defendant re-introduced its 'Original' design in a second attempt to avoid infringement.  Defendant's 'Original' design preceded its infringing 'Old Style' design.  The 'Original' design is identical to Defendant's 'Old Style' and 'New Style'

2

designs, except there is no groove on the frac mandrel where the lockscrews set.  The lockscrews for the 'Original' design, however, still set into the outer surface of the frac mandrel, as confirmed during discovery.

10.  Both Plaintiff's own infringement expert and Defendant's witnesses confirmed during discovery that Defendant's 'New Style' and 'Original' designs (collectively 'new designs') infringe the '925 Patent.  For instance, Plaintiff's expert maintains that Defendant's new designs contain all the structures claimed by the '925 Patent, including the 'wherein' clause limitation. Similarly, Defendant's own senior principal engineer testified at a deposition in May 29, 2008 that the lockscrews on these new designs indented the frac mandrel when they were torqued into the frac mandrel and will react a sheer force.  He further testified that the lockscrews of the new designs were tightened during fracing to act like set screws to prevent the frac mandrel from rotating and dancing.

11.  Since the introduction of Defendant's new designs in August 2007, Defendant has significantly misrepresented that its new designs do not infringe the '925 Patent. Defendant has falsely asserted that the lockscrews of these new designs do not engage the frac mandrel and that the new designs are not capable of meeting the claim limitations of the '925 Patent.  To the contrary, Defendant has been fully aware that the lockscrews on these new designs are torqued-in during fracing and that the new designs are capable of meeting the 'wherein' clause of the '925 Patent.  Defendant, for example, sent a reminder bulletin to its employees a year after introduction of its new designs, in or about August 21, 2008.  In this reminder bulletin, Defendant expressly acknowledges that its installers continued to torque the lockscrews into the new design frac mandrels, thereby infringing the '925 Patent.

12.  Despite knowing that its New Style and

3

Original designs continued to infringe the '925 Patent, Defendant continues to make, sell, rent, use, and offer to sell/rent its infringing new designs literally and/or pursuant to the Doctrine of Equivalents, and/or by otherwise contributing to infringement or inducing others to infringe the '925 Patent. Even after the introduction of the New Designs, Defendant's 'Old Style' continues to infringe the '925 Patent due to Defendant's continuing to contribute to or induce others to infringe the '925 Patent.

13. Defendant knew or should have known that its New Style and Original designs were installed in an infringing configuration. On or about September 24, 2008 and November 6, 2008, Plaintiff inspected several of Defendant's 'New Style' and 'Original' designs at Defendant's storage facilities in Grand Junction, Colorado and Longview, Texas. These inspections revealed blatant indentations and deformations caused by lockscrews still being tightened against the frac mandrels of Defendant's new designs. Defendant knew, or it was clearly obvious to Defendant, that its new designs continued to infringe the '925 Patent.

14. Defendant's continued manufacture, sale, rental, use, and/or offer to sell/rent its infringing 'New Style' and 'Original' designs, either directly or by otherwise contributing to infringement or inducing others to infringe the '925 Patent is deliberate and reckless, and a complete disregard of Plaintiff's patent rights.

IV. **PATENT INFRINGEMENT**.

15. By its aforesaid acts, Defendant has violated and continues to violate 35 U.S.C. § 271 by its infringement of the '925 Patent by making, using, selling, and/or offering to sell products or devices that embody or otherwise practice one or more of the claims of the '925 Patent, literally and/or pursuant to the Doctrine of Equivalents, and/or by otherwise contributing to infringement or inducing others to infringe the '925 Patent. The infringing products or devices include

4

the 'Old Style,' 'New Style,' and 'Original Design' frac mandrels.

16. The acts of infringement of Defendant will continue unless enjoined by this Court.

17. Plaintiff is being damaged by Defendant's infringement of the '925 Patent and is being and will continue to be irreparably damaged unless Defendant's infringement is enjoined by this Court. Plaintiff does not have an adequate remedy at law.

18. As a result of Defendant's infringement of the '925 Patent, Plaintiff has been damaged, and its business and property rights will continue to be damaged, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

19. Defendant's acts of infringement regarding Defendant's New Style and Original designs are deliberate and willful, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. That this Court adjudge and declare:

   a. That it has jurisdiction over the parties and of the subject matter of this action;

   b. That United States Patent No. 6,920,925 is valid and owned by Plaintiff;

   c. That Defendant has committed acts of patent infringement by its manufacture, use, sale, rental, and offers to sell/rent products that infringe the '925 Patent; and

   d. That Defendant's acts of infringement since August 2007 has been willful;

5

2.  That Defendant, its agents,
      representatives, employees, assigns and
      suppliers, and all persons acting in concert
      or in privity with any of them be
      preliminarily and permanently enjoined from
      making, using, offering for sale or rental,
      selling, renting, or importing the inventions
      of the '925 Patent.

           3.  That Defendant be required by mandatory
      injunction to deliver to Plaintiff for
      destruction any and all products in
      Defendant's possession, custody, or control
      embodying the patented invention as well as
      any promotional literature therefor;

           4.  That Plaintiff be awarded damages caused
      by the acts of patent infringement of the
      Defendant in an amount sufficient to
      compensate Plaintiff for the infringement;

           5.  That Plaintiff be awarded enhanced
      damages since August 2007 in connection with
      Defendant's activities regarding the New
      Style and Original Design mandrels, in
      accordance with 35 U.S.C. § 284 and in view
      of Defendant's willful infringement;

           6.  That Plaintiff be awarded prejudgment
      interest on infringement damages;

           7.  That Plaintiff have and recover its costs
      in this action, including its attorneys'
      fees; and

           8.  That Plaintiff have such other and
      further relief as the court may deem just and
      proper.

A.   Background.

     By Memorandum Decision and Order filed on March 4, 2009,

Duhn's motion for leave to file a First Amended Complaint ("FAC")

to assert a claim against Cameron for willful infringement of

Duhn's '925 Patent and enhanced damages regarding Cameron's "New

Style" and "Original" design frac mandrels was granted.  Duhn

                                    6

filed the FAC on March 12, 2009.

On March 31, 2009, Cameron filed a motion to strike the FAC. Cameron's motion to strike the FAC was denied by the June 9 Memorandum Decision.  Cameron raised three grounds in support of the motion to strike:

> Plaintiff Duhn Oil filed its First Amended Complaint which amends the Complaint to add a new claim for alleged willful infringement and enhanced damages under 35 U.S.C. § 284, but the amendment regarding alleged willful infringement is not limited to Cameron's New Style and Original design frac mandrels.  In addition, the First Amended Complaint adds a substantial new claim seeking an exceptional case finding and attorneys fees under 35 U.S.C. § 285, for which this Court did not grant leave to amend.  Furthermore, the First Amended Complaint adds new allegations of infringement based on 'manufacture' and 'use' as the means by which Defendant Cameron allegedly infringes the assert [sic] patent, which are statutory classes of infringement distinctly different from the 'selling' or 'offering to sell' allegations in the original Complaint.

The June 9 Memorandum Decision denied Cameron's motion to strike Duhn's claim for alleged willful infringement and enhanced damages under 35 U.S.C. § 284 to the extent Cameron argued that the amendment regarding alleged willful infringement is not limited to Cameron's New Style and Original design frac mandrels. Cameron acknowledged that the FAC specifically limited Duhn's assertion of willful infringement to the New Style and Original design frac mandrels, but argued that the demand for judgment that "Defendant's acts of infringement since August 2007 have been willful," could be read to seek a judgment of willful

infringement for Cameron's installation of customer-owned Old Style frac mandrels since 2007. In denying this aspect of the motion to strike, the Court relied on the allegations of the FAC and Duhn's representations that the claim for willful infringement and enhanced damages are *limited to* the New Style and Original design frac mandrels. The June 9 Memorandum Decision ruled:

> In its reply brief, Cameron accepts Duhn's restrictive reading of the prayer in the FAC but nonetheless requests:
>
>> [T]hat this Court bind Duhn Oil to this understanding of the amended Complaint. to [sic] the extent that Duhn Oil may later attempt to shift its position (as it has cycled through at least five various inconsistent interpretations of the disputed 'wherein' clause in its asserted patent claims), and attempt to seek enhanced damages for Cameron's Old Style design, including Cameron's post-August 2007 management and installation of customer owned Old Style frac mandrels, Cameron respectfully requests that this Court enforce the doctrine of judicial estoppel to prohibit any such attempted shift in position.
>
> Cameron's motion to strike on this ground is DENIED. The FAC clearly alleges willful infringement only in connection with the New Style and Original design frac mandrels from the specified dates. Cameron's concern that Duhn might change its position is speculative and can be addressed when and if the issue ever comes up. The Pretrial Order will supersede that FAC and Cameron may preserve its legal position by assuring that the issues of fact and law and limited to the stated time periods for each device.

(June 9 Memorandum Decision, 6:4-22).

The June 9 Memorandum Decision denied Cameron's motion to strike to the extent that Cameron argued that the FAC adds a claim seeking an exceptional case finding and attorneys' fees under 35 U.S.C. § 285:

> Although the exceptional case finding and award of attorney's fees under Section 285 are not mandatory, they become available in connection with a claim of willful patent infringement. Cameron's concern that the possibility of increased attorney's fees applying to the claim of willful infringement for post-2007 activities is a matter that can be addressed if and when it becomes necessary to do so. Duhn has for at least a year asserted that Cameron's infringement is willful. This is no surprise. The remedies incident to a claim of willful infringement are fairly in play. They are never mandatory.

The June 9 Memorandum Decision then denied Cameron's motion to strike the allegations in the FAC based on "manufacture" and "use:"

> Cameron asserts that the FAC adds new allegations of patent infringement based on 'manufacture' and 'use' without obtaining leave of court. The Complaint alleged:
>
> > 6. On information and belief, Defendant, by itself or in concert with others, has offered for sale, sold, is offering for sale and/or is selling ... products which infringe the '925 Patent.
> >
> > 7. By its aforesaid acts, Defendant has violated 35 U.S.C. § 271 by its infringement of the '925 Patent.
>
> Cameron argues that the FAC's addition of the distinct statutory classes of 'making' and

9

'using' dramatically alters the infringement pleadings over three years into this case.

Duhn responds that the Complaint pled manufacture and use as a basis of infringement because the Complaint asserted that Cameron had violated Section 271. Section 271(a) provides:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent.

Duhn asserts that the pleading of Section 271 in the Complaint 'sufficiently and properly included all the infringing acts outlined in the statute, including "manufacture" and "use," into the infringement claim.' Duhn contends that 'by broadly asserting patent infringement under 35 U.S.C. § 271 in its original complaint, Duhn has already provided notice to Cameron, from the outset of the case, that any of its conduct outlined in the patent statute violates the '925 Patent, including "manufacture" and "use."' Duhn argues that Section 271 does not delineate statutory classes of infringement 'because either or any of the listed conduct implicates the same liability under the statute.' Duhn contends:

> The infringement charge does not change merely because Duhn now expressly sets out "manufacture" and "use" as Cameron's additional infringing acts in its amended complaint. Cameron knew the basis for Duhn's patent infringement charge under 35 U.S.C. § 271 and cannot claim ignorance of that charge.

The Complaint alleged that Cameron 'has offered for sale, sold, is offering for sale and/or is selling ... products which infringe the '925 Patent' and that '[b]y its aforesaid acts, Defendant has violated 35 U.S.C. § 271 by its infringement of the '925 Patent.

10

Duhn further argues that the allegations in the FAC concerning Cameron's manufacture and use constitute permitted supplemental facts pursuant to the March 4 Memorandum Decision. Duhn refers to its opening brief in support of the motion to amend in which Duhn, in addition to seeking leave to add an allegation of willful infringement for the time period starting August 2007, 'also seeks leave to amend its complaint to seek enhanced damages, and to supplement the Complaint with further post-filing facts and occurrences.' Duhn contends that, because the Court granted its motion to amend, the Court granted permission to Duhn to supplement the Complaint regarding Cameron's continued infringement.

Duhn's motion sought this relief concerning use and manufacture in the conclusion of its motion; it was not discussed in the body of the brief. Nonetheless, the motion to amend was granted.

Finally, Duhn argues that the allegations of manufacture and use have a direct bearing on Duhn's patent infringement claim and do not prejudice Cameron:

> ... Duhn's allegations of "manufacture" and "use" are central to its patent infringement claim as they expressly identify Cameron's specific infringing acts that were confirmed during discovery. Extensive discovery has revealed that Cameron continues to manufacture, sell, rent, and install its infringing frac mandrels, despite notice of their infringement. Even Cameron concedes that these allegations are highly relevant to Duhn's charge as it fails to submit any contrary arguments in its moving papers.

> ... Cameron makes no showing in its moving papers that it is prejudiced by Duhn's allegations of "manufacture" and "use." Presumably, Cameron does not suffer

> any harm as Duhn's original
> complaint and the extensive
> discovery already conducted by both
> parties in this case has provided
> substantial notice to Cameron how
> its devices and conduct infringe
> the '925 Patent ... Cameron cannot
> plead ignorance after three years
> of extensive discovery and motion
> practice by now claiming it does
> not know that manufacturing and
> using an infringing device
> infringes the '925 Patent.

> Cameron replies that the Court should 'not
> allow Duhn Oil to use this Court's
> authorization of amendments to the pleadings
> regarding new assertions of alleged willful
> infringement as a camel's nose under the tent
> for Duhn Oil to dramatically alter the
> infringement pleadings over three years into
> this case to add the distinct statutory
> classes of "making" and "using" as the means
> by which Defendant Cameron allegedly
> infringes the asserted patent.'

> The motion to strike on this ground is
> DENIED.  The subject of manufacture has been
> fully disclosed since Cameron introduced its
> New Style mandrel.  Cameron asserts no
> prejudice to it by the inclusion of
> manufacturing and use to the FAC.

On July 8, 2009, Cameron filed a motion for clarification or reconsideration of the Court's Memorandum Decision denying Cameron's motion to strike the FAC.  (Doc. 310).  Cameron argued that the June 9 Memorandum Decision did not permit Duhn to amend its complaint to allege infringement for making or using the Old Style frac mandrel, contending that Duhn's motion for leave to amend was limited to addressing issues related to Cameron's New Style and Original design frac mandrels that had been discovered after the filing of the Complaint.  At the December 8, 2009

hearing on Cameron's motion, the Court ruled from the bench:

>THE COURT: [¶] So it seems to me that what we have is we have a complaint that says nothing about manufacture or use and a complaint that was amended to pick up activities after the date in 2007 of the original and the new style, but not the, in quotes, old style. And so as the Court understands this, there is neither a willful infringement nor is there a damage claim for manufacture and use of the old style product in either of these complaints.
>
>And so that that extent, it seems to me that that is a clarification that should be made so we're all in the same page.
>
>So that's my tentative decision. Now, anybody who wishes to be heard may do so.
>
>MR. ROGERS: Yes, Your Honor. I think that clarification is a good thing. That's what we were seeking. And with one caveat. You said no damage claim for - and I hope that you're also referring to liability as well. No liability claim. No liability -
>
>THE COURT: For manufacture or use.
>
>MR. ROGERS: Yes.
>
>THE COURT: There is no claim.
>
>MR. ROGERS: Respecting manufacture and use of the old style.
>
>MR. ROGERS: Yes, Your Honor. That's the relief we're requesting in our motion.
>
>...
>
>MR. WHITELAW: Thank you, Your Honor. I think we need to take a couple of steps back here to see where the parties started, where the parties have been litigating this case, where the parties have conducted discovery. Plaintiffs' motion to strike and what the scope of that motion was and where they made the very same arguments they're making now. But again, this is a case with infringement

13

on the old style during the pendency of this action changes were made to the old style. And that's brought about the willful infringement claims that we later sought for the manual, which was the basis for their motion to strike.

THE COURT: I said manufacture and use. That's all that alleged as to the old style in either of the complaints.

MR. WHITELAW: Well, Your Honor, if you go back to the original complaint, there are allegations regarding infringement under 35 USC Section 271, which includes manufacture and use. And again, this was brought out in the opposition to the motion to strike. And the Court ruled and acknowledged that manufacture and use was covered by that section. [¶] Additionally, in the prayer of that original complaint, there's reference to remedies in connection with the express action of manufacturing and use on page three of the complaint. And I believe it's paragraph two on page three. Defendant, its agents, representatives, employees, assigns and suppliers and all persons acting in concert, et cetera, be permanently enjoined from making, using, offering for sale, selling or importing the invention of the '925. These arguments, they very same identical arguments were argued in the motion to strike. In our -

THE COURT: Yes. And we said that we would be essentially, as we got closer to trial and have a pretrial statement, we would be parsing what the claims are. And this isn't inconsistent with that. This is to prevent, if you establish infringement, patent infringement of the '925 patent, any making, use, offering for sale, selling or importing the inventions of the '925 patent. And so this doesn't say what they are. This doesn't say what they have been. And depending upon what the proof is at trial, we will see. [¶] And so what this does is this - a prayer normally is not part of - it's not an operative part of the pleading that is a complaint. However, for the purposes of talking about what remedies are sought, that

is a remedy in futural that would essentially, if you get a judgment finding patent infringement, that would prevent any infringement by any statutory means. Knowing what the statutory means and using express language of means and not saying any and all other ways or attempting to expand it, it seems to me that that is, at least by inference, a limitation because, of course, you knew how to say it when you wanted to for activities that would be included within the purview of the statute. And so that, quite frankly, is the way I see it. That's the way you pled it. And in terms of - I don't know what the volume is of old style products. I don't know what the use of those has been. I don't know what has been done with them, where they are. And, you know, you all know that. And if that's fairly in play, then we're going to face that in doing a pretrial, final pretrial conference order. And that's going to state what the factual and legal issues in the case are. And if you show me that essentially that's what the discovery has covered, that's what everybody knows about, that's what damages projections and the expert calculation of damages have addressed and the experts on both sides have done that, then, quite frankly, it's the equivalent of a rule 15 amendment to conform to proof if that's the basis on which the lawsuit has been tried. But right now, as to what is in the pleadings, this is what is in the pleadings.

MR. WHITELAW: Well, Your Honor, considering the substantial extent of old style's presence in the case by way of discovery, by way of expert reports, all in the financial expert reports deal with old style, by way of all the depositions in the case. And, quite frankly, Duhn filed a brief, a motion for summary judgment of infringement on the old style.

THE COURT: Right.

MR. WHITELAW: Not at any point did they argue that old style was out of the case. The parties -

THE COURT: It's not out of the case. There is a - there is an allegation of selling, offering for sale and renting. That's in the case. But making and using has not been alleged. And so it that's an amendment to conform to proof, that's something different. That's what I'm saying.

MR. WHITELAW: Well, and again, Your Honor, this is a complete surprise to Duhn. We weren't expecting to see arguments about the very nature of the claims as they pertain to the old style. Again, this motion for reconsideration and the motion to strike dealt with willful infringement of the new claims. But I will note for the record in their motion for summary judgment, in its Ps & As, the motion for summary judgment deals with, and I quote, manufacture, offer for sale and sale and/or its inducement of others to use the TSW alleged infringing device. So we've always been dealing with manufacture and use. We feel it was covered by the general pleading in the statute, which was alleged in the original complaint, and it was further brought out and exemplified in the amended complaint, which has now brought about this clarification motion. But the parties have always recognized, have always acted, knowing that manufacture and use has always been a claim by Duhn. Manufacture and use come into the case by way of our damages, by way of their conduct and specifically with respect to renting and installing these infringing devices. So they are - those facts are in the case. [¶] Now, if Your Honor is not convinced that there's a sufficient pleading in the complaints, then I would request that Duhn be given the opportunity to brief this issue, to bring a rule 15 motion to amend to that it's clear that manufacturing and use are and should be as they have been treated in this case as part of our damage claim.

THE COURT: Well, that is certainly your prerogative. I have simply read the pleadings as they are in the context of how this motion is presented.

MR. WHITELAW: And the motion that you're

talking about is their motion -

THE COURT: For clarification. The motion for clarification.

MR. WHITELAW: Okay. Again, but the clarification, again, this is what's confusing to Duhn, Your Honor. This motion for clarification follows a motion, an order on a motion to strike that deals with willful infringement claims -

THE COURT: Yes.

MR. WHITELAW: - on the new style original design. Nothing to do with the old style.

THE COURT: Well, that's what I thought as well. There's no question about that. And that's how I ruled on that.

MR. WHITELAW: Well, the additional allegations that refer to the old style claims was, again, part three of the Court's order going back to the rule 15 order, which granted us leave to amend in the first place. That order allowed us to put supplemental facts in there. And these facts that are not being played by counsel dealt with the manufacture and use -

THE COURT: Well, here's where I am, Mr. Whitelaw and here's my concern. I don't want to face this argument at trial or post trial. On a motion for judgment as a matter of law and/or a new trial motion. I want to know every device and every purported infringing activity with regard to that device for which damages are being sought. And I don't think that ought to be a secret. That isn't what's alleged in this complaint. This complaint alleges strictly sale, sold and offering for sale. And/or is selling. That's what the defendant is alleged to have done. What you asked for by way of injunctive relief that you want to cover every potential activity of infringement under the statute doesn't mean that it's - that it's in play or that it has occurred. In other words, once you have a protectable patent right, then you can get as broad a relief as the statute will justify.

> So I think we're talking about apples and
> oranges here. But the one thing I don't want
> to do is I don't want to start picking that
> jury and have the two of you, the two sides
> fighting about what is and is not an issue in
> the case and what infringement damages are
> being sought for and for what willful
> infringement damages are being sought for.
> That's what pertains to the original and the
> new style, the willful infringement damages
> claim. Not the old style. [¶] And so the
> old style was being sold, offering to sell or
> renting. If you say there's more, then you
> need to amend the complaint. And we do need
> to determine that both parties have relied
> upon and have discovered the case and have
> litigated the case based on those being
> issues.

B.  <u>Governing Standards</u>.[1]

Rule 15(a), Federal Rules of Civil Procedure, provides that "leave [to amend] shall be freely given when justice so requires." "The purpose of pleading is 'to facilitate a proper decision on the merits' ... and not erect formal and burdensome impediments to the litigation process. Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey v. United States*, 481 F.2d 1187, 1990 (1973). However, "[t]his strong policy toward permitting the amendment of pleadings ... must be tempered

---

[1]The parties address this motion solely by reference to the standards governing a motion to amend under Rule 15, Federal Rules of Civil Procedure. There is a pretrial scheduling order, which normally means that resolution of this motion is governed by the "good cause" requirement of Rule 16, Federal Rules of Civil Procedure. However, by Minute Order filed on January 13, 2010, the pretrial conference and trial dates were vacated because of proceedings before the Federal Circuit. Consequently, this Memorandum Decision does not address the "good cause" standard of Rule 16.

with considerations of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' *Foman v. Davis*, 371 U.S. 178, 182 ... (1962)." *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1991). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186; *see also Jones*, 127 F.3d at 847 n.8. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight ... Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). "The party opposing leave to amend bears the burden of showing prejudice." *Serpra v. SBC Telecommunications, Inc.*, 318 F.Supp.2d 865, 870 (N.D.Cal.2004).

    B. <u>Application of Factors</u>.

    Here, Cameron's opposition to Duhn's motion is limited to the factors of undue delay, prejudice, and futility.

        1. <u>Undue Delay</u>.

    "'[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.'" *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994),

quoting *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir.)*, cert. denied*, 479 U.S. 816 (1986).  As explained in *Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480, 1493 (9th Cir. 1987), *vacated on other grounds*, 485 U.S. 931 (1988):

> We have held that where the party seeking amendment knows or should know of the facts underlying the amendment when the original complaint is filed, the motion to amend may be denied ....
>
> Mere delay in proffering an amendment does not justify denying leave to amend ... The court has also held that where a defendant is on notice of the facts contained in an amendment to a complaint, there is no prejudice to defendant in allowing the amendment ... Here, where all of the amendments were based upon facts contained in Union Oil's own records, Union Oil had notice of the facts.  Thus, there was no prejudice to Union Oil.

Duhn asserts that it has not unduly delayed in seeking leave to amend.  Duhn contends that its proposed amendment simply seeks to conform the pleadings to the parties' conduct: "The parties have always understood and acted from the outset of the case that manufacture, use, and indirect infringement are asserted infringing acts."  Duhn refers to the amount of discovery conducted by the parties relative to issues of manufacture, use, and indirect infringement, assertions that are not disputed by Cameron.

Cameron argues that this factor weighs against leave to amend:

> Duhn Oil seeks leave to add these substantial

20

> new claims for alleged infringement at the
> final stage of this case, <u>over four years</u>
> after Duhn Oil filed its original Complaint,
> and <u>over two years</u> after Defendant Cameron
> specifically notified Duhn Oil in the 2007
> summary judgment proceedings that it had not
> pled these allegations in its Complaint.

Cameron refers to its memorandum in response to Duhn's motion for partial summary judgment and validity as to asserted claims filed on December 6, 2007, (Doc. 170, pp. 3-4):

> Plaintiff Duhn Oil's allegations of
> infringement in its Complaint assert that
> Defendant Cameron 'has offered for sale,
> sold, is offering for sale and/or is selling
> ... products which infringe the '925 patent.'
> ... This is an allegation for 'direct'
> infringement for alleged sales and offers for
> sale of the accused products.  This
> allegation of 'direct' infringement is
> distinct from an allegation of 'indirect'
> infringement, such as 'inducement' or
> 'contributory infringement,' which Plaintiff
> has not pled.

Duhn replies that it did not delay in bringing this motion for leave to conform its pleadings to the parties litigation conduct.  Duhn asserts that Cameron raised its objections to Duhn's pleading of manufacture and use for the first time at the hearing on December 7, 2009 regarding Cameron's motion for clarification or reconsideration of the Memorandum Decision denying Cameron's motion to strike the First Amended Complaint. (Doc. 310).  Duhn contends that Cameron never disputed the sufficiency of Duhn's pleading regarding manufacture and use prior to the December 7, 2009 hearing.  Duhn contends that, although Cameron raised an issue regarding the sufficiency of Duhn's pleading of indirect infringement in the summary judgment

proceedings, Duhn's responses put Cameron on notice that indirect infringement was a claimed infringing act:

> Despite Cameron's objections, the pleading issue regarding indirect infringement was never addressed by the Court when it heard Duhn's summary judgment motion on May 5, 2008. Therefore, there has been no definitive ruling on whether Duhn has sufficiently pled indirect infringement, and Duhn was thus not under any notice to amend its pleading.

Here, the record establishes that the parties conducted discovery relevant to the issues of manufacture and use, and contributory and inducement infringement of the accused frac mandrels. These issues are no surprise to Cameron; nor are claims based on this discovery. While it is arguable that Duhn should have sought leave to amend in 2007, Duhn's consistent position has been that the pleadings sufficiently placed Cameron on notice that Duhn's claims of patent infringement included the use and manufacture of the accused devices. Mere delay in seeking leave to amend is not a valid ground for denial of leave to amend, absent a showing of prejudice.

Despite the Court's urging that the parties proceed to trial, the pending interlocutory appeal has caused the trial date to be vacated with no new trial date in sight.

2. __Prejudice__.

"Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case ... The party opposing the motion bears the burden of showing prejudice."

22

*Sharper Image Corp. v. Target Corp.*, 425 F.Supp.2d 1056, 1080 (N.D.Cal.2006).

Cameron argues that it will be severely prejudiced by the proposed Second Amended Complaint's new claims of making, using, contributory and inducement infringement.

Cameron asserts that Duhn is seeking through the proposed amendments a substantial award of monetary damages for alleged acts of infringement that occurred prior to the amendment, a time in the past that Cameron now cannot go back to and modify its accused frac mandrel products or installation procedures to avoid liability. Cameron argues that, when the Complaint alleged direct infringement for selling or offering to sell infringing products, Cameron could avoid liability by not seeking or offering for sale a "wellhead assembly" having all of the required elements of the '925 Patent claims: "Cameron could avoid all of the asserted liability by continuing its standard practice of not selling or offering to sell 'casing' or 'production tubular members' with its frac mandrel sales and rentals." If Duhn is allowed to amend to include allegations of patent infringement based on making and using an infringing product, Cameron asserts:

> Duhn Oil would then assert liability for acts of alleged infringement including Cameron's past installations of its Old Style frac mandrels at the customer's well site, where Cameron's past installations of its Old Style frac mandrels were made up in a wellhead assembly including a casing and production tubing. And with these new allegations of infringement then at issue for past

installations, Cameron would not be able to
                    go back in time to take additional steps to
                    avoid the asserted liability by modifying its
                    frac mandrel products or installation
                    procedures.

Cameron asserts that, had it known at the outset of this case

that Duhn's pleadings would be amended to include "making and

using to encompass Cameron's installations of its Old Style frac

mandrels, and Cameron knew that Duhn Oil eventually would end up

limiting the asserted scope of its patent claims to require a

'dual load path' configuration, then Cameron could have, and

would have, taken additional steps to modify its frac mandrel

products and installation procedures for those installations of

the Old Style frac mandrel in the early stages of this case to

make sure that the tubing head lockscrews in its frac mandrels

were not run in to contact the frac mandrel."  Cameron argues

that Duhn's "assertion of its patent in this case has effectively

become a game of gotcha, more akin to entrapment than the noble

assertion of exclusive rights to an invention."

        Cameron argues that the assertion of new claims for indirect

infringement, including contributory infringement and inducement,

would cause it the same type of extreme prejudice.  Cameron

asserts that it has put into place procedures with regard to the

New Style and Original Design frac mandrels which will safely

assure that Cameron cannot be found to have contributed to or

induced others to infringe the '925 Patent claims, each of which,

Cameron contends, require that the tubing head lockscrews be in

contact with the frac mandrel.  As to the Old Style frac

mandrels, Cameron argues:

> Cameron cannot go back in time to provide these same notification procedures or retroactively apply the notice plates to Cameron's Old Style frac mandrels for its prior installations from the early stages of this case. If Cameron had known at the outset of this case that Duhn Oil's pleadings would be retroactively modified to include acts of alleged infringement other than direct infringement for selling or offering to sell, to include acts alleged to contribute to or induce the infringement of others, and Cameron knew that Duhn Oil eventually would end up limiting the asserted scope of its patent claims to require a 'dual load path' configuration, then Cameron could have, and would have, taken additional steps to include notification procedures regarding the use of its frac mandrel products, such as notice plates on each of its frac mandrels, to instruct others that the tubing head lockscrews are not to be run in to contact Cameron's frac mandrel.

As Duhn notes, Cameron does not contend it is prejudiced by the proposed amendments because additional discovery will be required or that leave to amend will delay resolution of the case.

Duhn characterizes as "pure fiction" that Cameron's statement that Duhn "is seeking through amendment a substantial award of monetary damages (millions of dollars) for acts of alleged infringement that occurred prior to the amendment." Duhn contends that the proposed amendment does not alter the damage reports as the parties have always litigated this case with manufacture, use, and indirect infringement as asserted infringing acts, and have already accounted for these acts in their damages analyses. Duhn refers to the Declaration of

William J. Kolegraff, filed on January 6, 2010, (Doc. 382-2):

> 2. The parties have already conducted and
> completed extensive discovery on manufacture,
> use, and indirect infringement in this case,
> so Duhn's proposed Second Amended Complaint
> will not require any further discovery on
> these issues.
>
> 3. Duhn's expert financial reports already
> account for making, using, and indirect
> infringement, as alleged in Duhn's Second
> Amended Complaint. Duhn's proposed amendment
> will not change the expert damages reports.
>
> 4. If Duhn is not granted leave to file its
> Second Amended Complaint, Duhn's expert will
> be required to undertake a reassessment of
> his damages analysis, and will issue amended
> expert damage reports. As such a parsing of
> infringing acts was never contemplated,
> additional discovery may need to be taken to
> complete the reassessment.

Duhn asserts that Cameron already knows that Duhn is seeking millions of dollars in damages. Duhn refers to its initial damages report issued on June 29, 2007, in which Duhn's expert laid out the facts and financial analysis showing that Cameron's exposure was already in the millions of dollars, and later-issued supplemental reports showing the damages growing by millions of dollars as Cameron made additional sales of its allegedly infringing frac system. Duhn refers to paragraph 14 of Cameron's June 19, 2007 expert report:

> I understand from Mr. Devlin that Duhn is
> claiming that the '925 patent relates to a
> way of connecting and securing the frac
> mandrel to the tubing head by using certain
> flanges which, during the well activation
> process transfers the force between the frac
> mandrel and tubing head to manage the extreme
> pressures during the fracturing process.
> Therefore, it is anticipated that Duhn seeks

a reasonable royalty for the value associated
                    with the patented technology as it is accused
                    of being used by Cameron.

No copy of Cameron's expert report is attached; however, Cameron did not object to consideration of this quotation at the hearing or thereafter.

Duhn replies that Cameron's claim that, had it known that it would be alleged to have manufactured or used the Old Style frac mandrel, or to have induced or contributed to infringement regarding the Old Style frac mandrel, it would have made changes earlier, is "meaningless" and "utterly baseless."  Duhn refers to evidence that Cameron's customers and installers continue to engage the lockscrews of Cameron's frac mandrels, despite Cameron's revisions to its installation manuals and modifications of its frac mandrels.

Cameron's assertions of prejudice is not persuasive.  The assertion of prejudice is based solely on potentially increased monetary liability and an asserted inability to retroactively design around the Old Style frac mandrel.  However, it is not disputed by Cameron that additional discovery will be necessary or that the trial of this action will be delayed by the additional allegations.  Cameron's claim of prejudice is not the type of prejudice that will foreclose Cameron's ability to defend.

          3.   <u>Futility</u>.

Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.  *Saul v. United States*,

928 F.2d 829, 843 (9th Cir.1991). Leave to amend may be denied based upon futility alone. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). A claim is considered futile and leave to amend shall not be given if there is no set of facts that can be proved under the amendment that would constitute a valid claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988). However, denial on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed. *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D.Cal.2003), citing *Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial* at 8:422 (The Rutter Group, 2002).

Cameron asserts that Duhn's proposed amendment to assert a claim for inducement to infringement fails to plead a number of required elements, citing *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed.Cir.2006). In *DSU Medical Corp.*, the Federal Circuit addressed "in the context of induced infringement, 'the required intent ... to induce the specific acts on [infringement] or additionally to cause an infringement.'" *Id.* at 1304. The Federal Circuit stated:

> Under section 271(b), '[w]hoever actively induces infringement of a patent shall be liable as an infringer.' ... To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and *knowingly* aid[ed] and abett[ed] another's direct infringement.' ... However, 'knowledge of the acts alleged to constitute

> infringement' is not enough ... The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'
>
> ...
>
> It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements.

*Id.* at 1305-1306. Cameron asserts that Duhn's proposed amendment fails to plead Cameron's knowledge of the '925 Patent and Cameron's specific intent to induce another's direct infringement. Cameron argues that its repeated attempts thoughout this litigation to modify its accused products and installation procedures to make sure that the products do not infringe the '925 Patent, by phasing out its prior Old Style frac mandrel and re-configuring its design to make sure that the tubing head lock screws are not run into contact with the frac mandrel, demonstrates that Cameron never intended that its customers' use of Cameron's frac mandrel could infringe any claims of the '925 Patent.

Duhn responds that Paragraph 6 of the proposed Second Amended Complaint alleges Cameron's knowledge of the '925 Patent:

> 6. Defendant, by itself or in concert with others, manufactured, used, offered for sale,

> sold, is manufacturing, using, offering for
> sale and/or is selling ... products which
> infringe the '925 Patent, literally and/or
> pursuant to the Doctrine of Equivalents,
> and/or by otherwise contributing to
> infringement of inducing others to infringe
> the '925 Patent.

Duhn asserts that mere awareness of the patent is sufficient to establish the knowledge requirement for induced infringement. As authority, Duhn cites *DSU Medical Corp.*, *supra*, 471 F.3d at 1304 as "explaining that the inducing infringement standard was satisfied 'because it is undisputed that [the alleged infringer] had notice of the patent.'" No such statement appears in the *DSU Medical Corp.* opinion, in the portion of the opinion discussing inducing infringement. Duhn also asserts that the proposed Second Amended Complaint alleges that Cameron's knowledge of the '925 Patent goes back at least as far as November 5, 2005, when this action was filed, referring to Paragraph 7.

Duhn asserts that Paragraph 7's allegation that Cameron "has provided manuals and training to third parties for knowingly inducing them to infringe the '925 Patent," sufficiently alleges Cameron's requisite intent to state a claim for inducing infringement. Duhn cites *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed.Cir.1990):

> It must be established that the defendant
> possessed specific intent to encourage
> another's infringement and not merely that
> the defendant had knowledge of the acts
> alleged to constitute infringement.

Cameron contends that Duhn's proposed amendment to assert a claim for contributory infringement, based on the allegation that

Cameron's accused frac mandrels "have no substantial non-infringing use," is futile:

> Considering the Court's summary judgment finding of no infringement for Cameron's accused frac mandrels configured with the lock screws not in contact with the frac mandrel, this proposed new infringement claim would not make it past summary proceedings.

Duhn responds that evidence supports this claim because Cameron's modifications to its frac mandrels and procedures have failed to stop on-going infringement, referring to inspections, testimony, and checklists that the lockscrews continue to be torqued-in to infringe the '925 Patent.

Cameron has not demonstrated that leave to amend to file the proposed Second Amended Complaint will be futile under the standards set forth above. Cameron's contentions are primarily factual and provide no basis for denial of Duhn's motion on this ground.[2]

## CONCLUSION

For the reasons stated:

1. Plaintiff Duhn Oil Tool's motion for leave to file a Second Amended Complaint is GRANTED;

2. Plaintiff Duhn Oil Tool shall file the proposed Second Amended Complaint within ten (10) days following electronic

---

[2]At the January 25, 2010 hearing on Duhn's motion for leave to amend, Cameron asserted the bar of the statute of limitations to the proposed Second Amended Complaint. Because this ground for denial of the motion was asserted for the first time at the hearing, the Court does not consider it. In any event, it can be asserted as a defense, if Cameron can establish that the claim does not relate back to the original filing date under Fed. R. Civ. P. 15.

service of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: ___February 16, 2010___          ___/s/ Oliver W. Wanger___
                                            UNITED STATES DISTRICT JUDGE