# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| DUHN OIL TOOL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COOPER CAMERON CORPORATION, <br><br> Defendant. | CASE NO. 1:05-CV-01411-MLH-GSA <br><br> **ORDER** <br><br> **(1) DENYING MOTION FOR SUMMARY JUDGMENT FOLLOWING TRIAL; AND** <br><br> **(2) DENYING MOTION FOR RECONSIDERATION** |

On November 9, 2005, Plaintiff Duhn Oil Tool, Inc. filed a complaint for patent infringement against Defendant Cooper Cameron International Corporation. (Doc. No. 1.) The Court held a 14-day jury trial before the Honorable Oliver W. Wanger beginning on January 12, 2012. After the close of evidence and while the jury was deliberating, both sides presented Rule 50 motions for judgment as a matter of law on the issue of obviousness, and Defendant Cameron presented a Rule 50 motion on the issue of anticipation. The Court denied the parties' Rule 50 motions. On February 2, 2011, the jury returned verdicts finding Defendant liable for infringing dependent claims 2, 3, 5, 19, and 29 of the '925 Patent and for contributory infringement regarding claims 2, 3, 5, and 29, but not claim 19. (Doc. 668). The jury found that Plaintiff is entitled to $5,909,974 in lost profit damages and $2,750,000 in lost royalties. The jury also found that dependent claims 2, 3, 4, 5, 19, and 29 are invalid for

obviousness, and that claims 2, 3, 4, 5, and 29 are invalid for anticipation. However, the jury found that claim 1, the independent claim from which claims 2, 3, 4, 5, 19, and 29 depend, was not proven to be anticipated or obvious.

On November 14, 2011, Plaintiff filed a motion for summary judgment of no invalidity of the U.S. Patent No. 6,920,925. (Doc. No. 714.) On November 14, 2011, Defendant filed a motion for reconsideration of the Court's order entering judgment as a matter of law in favor of Duhn Oil on the issue of obviousness. (Doc. No. 715.) On November 15, 2011, the Ninth Circuit Chief Judge Kozinski reassigned this case to this Court pursuant to 28 U.S.C. § 292(b).[1] (Doc. No. 717). On December 1, 2011, Plaintiff filed its response in opposition to Defendant's motion for reconsideration. (Doc. No. 723.) On December 1, 2011, Defendant filed its response in opposition to Plaintiff's motion for summary judgment. (Doc. No. 724.) On December 9, 2011, Plaintiff filed its reply. (Doc. No. 726.) On December 9, 2011, Defendant filed its reply. (Doc. No. 727.) On December 14, 2011, at the request of the Court, parties filed supplemental claim charts. (Doc. Nos. 728 & 730.) The Court held a hearing on the parties' motion on December 21, 2011. W. Paul Schuck, James Whitelaw, Joseph Thomas, and William Kolegraf appeared on behalf of Plaintiff Duhn Oil. Charles Rogers, Joe Redden, Manish Vyas, and Peter Bielinski appeared on behalf of Defendant Cameron. For the following reasons, the Court denies the motion for summary judgment, and denies the motion for reconsideration.

## Background

### A.   The Parties

Duhn Oil Tool, Inc. ("Duhn Oil" or "Plaintiff") and Cooper Cameron Corporation ("Cameron" or Defendant") are manufacturers of wellhead systems and components for the oil and gas industry. (Doc. No. 706 at 2.) In 1996, Duhn Oil obtained a patent for "Quicklock Drilling Flange" ("QDF"), a drilling flange capable of being quickly attached to a wellhead assembly. (Id.) The QDF is designed to be secured to the casing head of a wellhead assembly

---

[1] The case was reassigned after the retirement of the Senior U.S. District Judge Oliver W. Wanger.

by lock screws that engage a groove cut in the body of the drilling flange. Use of lock screws to secure wellhead components in the manner disclosed in Duhn Oil's QDF patent is a standard method for securing wellhead components in the oil and gas industry. (Doc. No. 706 at 2.)

In or about February 2001, Cameron contacted Duhn and requested development of a wellhead isolation tool an end user of Duhn Oil's products. (Id.) The end user desired a "frac mandrel" that would permit it to continue using Duhn Oil's existing wellhead components, including the W2 tubing heads, W92 casing heads, and lock screws. A frac mandrel is a wellhead isolation tool designed to protect a well's hydrocarbon production components from pressures entailed by fracturing operations, which exceed the pressure rating of conventional production components. (Id. at 2-3.) Fracturing operations stimulate an existing well's production by introducing abrasive material into the well's producing regions at high pressure in order to create pathways for hydrocarbon extraction. (Id. at 3.) The single set of lock screws employed in Duhn Oil's original QDF device proved to be insufficient for retaining the frac mandrel in a tubing head under high pressure. Ultimately, a secondary flange with a second set of lock screws was conceived that rendered the frac mandrel functional under the extreme pressures generated by the fracturing process. The frac mandrel Duhn created culminated in United States Patent No. 6,920,925 ("'925 Patent"). (Id.)

### B. The '925 Patent

Duhn Oil filed a provisional patent application for its QDF frac mandrel on February 19, 2002. (Doc. No. 706 at 4.) On February 19, 2003, Duhn Oil filed application number 10/363,070 ("070 Application"), which claimed priority to the provisional patent application filed in 2002. On May 16, 2003, Duhn Oil submitted a Petition to Make Special requesting expedited review of the '070 Application. (Id.) The Petition to Make Special stated that Cameron was infringing at least some of the claims disclosed in Duhn Oil's patent application. The Examiner initially rejected Duhn Oil's patent application as anticipated by prior art. (Id.) In response, Duhn Oil added a clause to claim 1 referred to by the parties as "the wherein clause." (Id.) Duhn Oil's application matured into United States Patent No. 6,920,925 ("the '925 Patent"), entitled "Wellhead Isolation Tool," on July 26, 2005. The '925 Patent is

comprised of 88 claims.

The '925 Patent teaches a casing head coupled to a wellbore and a tubing head mounted over the casing head. (Doc. No. 706 at 4.) The tubing head has a first radial flange extending from it at an upper end. A generally elongate annular member is suspended concentrically within the tubing head and aligned with a production casing suspended below in the wellbore. (Id.) The generally elongate annular member has a second radial flange extending from it. In some embodiments, the first flange extending from the tubing head and the second flange extending from the generally elongate annular member are fastened together. All claims at issue in this action depend from claim 1 of the '925 Patent. (Id.) Claim 1 specifies a wellhead assembly having various components as follows:

> 1. A wellhead assembly comprising:
> . a casing;
> . a first tubular member mounted over the casing;
> . a first tubular member flange extending from the first tubular member;
> . a generally elongate annular member suspended in the first tubular member, said annular member having a first end portion extending above the first tubular member and a second end portion below the first end portion;
> . a secondary flange extending from the elongate annular member;
> . a plurality of fasteners fastening the secondary flange to the first tubular member flange; and
> . a production tubular member aligned with the elongate annular member, wherein an axial force acts on the generally elongate annular member and is reacted in both the first tubular member flange and the secondary flange.

('925 Patent.) Claim 1 identifies the components either by their location and/or their functionality. (Doc. No. 706 at 5.) For example, the production tubular member is aligned with the annular member in such a way that an axial force acts on the annular member and such force is reacted in the first tubular member flange and the secondary flange to which it is attached. (Id.)

Claim 2 of the '925 Patent specifies "[a] wellhead assembly as recited in claim 1 wherein the first tubular member comprises an inner surface having an annular lip, wherein said annular lip extends between the elongate annular member second end portion and a portion of the production tubular member." ('925 Patent.) Claim 3 teaches "[a] wellhead assembly as recited in claim 2 wherein said annular lip extends radially inward defining an

opening having a first diameter, wherein the elongate annular member first end portion comprises an inner surface having a second diameter and wherein the portion of the production tubular member comprises an inner surface having a third diameter, wherein said first, second and third diameters are equal." Claim 4 specifies "[a] wellhead assembly as recited in claim 1 further comprising a seal between the elongate annular member second end portion and the first tubular member." Claim 5 specifies "[a] wellhead assembly as recited in claim 4 wherein the seal is between the elongate annular member second end portion and a first inner surface section of the first tubular member, wherein the first tubular member comprises a second inner surface section immediately above and concentric with the first inner surface section, said second inner surface section having a diameter greater than the first inner surface section." Claim 19 specifies "[a] wellhead assembly as recited in claim 4 further comprising: a plurality lock screws each radially threaded through the first tubular member flange and engaging at least a depression formed on the elongate annular member outer surface, wherein the elongate annular member flange is fastened to the first tubular member flange." Claim 29 specifies "[a] wellhead assembly as recited in claim 1 wherein an end of the elongate annular member is aligned with and faces an end of the production tubular member, wherein an inner surface diameter of said end of said elongate annular member is about equal to an inner surface diameter of said end of said production tubular member."

The court interpreted the "wherein" clause of claim 1 as follows:

> [The "wherein" clause] requires that the wellhead assembly be in an environment where there is an axial force present and acting on the frac mandrel. Given that an axial force is present and acting on the frac mandrel, the wherein clause imports the functional limitation that said axial force be reacted in both the first tubular member flange and the secondary flange. The clause does not require that an axial force be applied by a user nor does it specify a method as to how the force is provided.
>
> This "wherein" clause also requires a "dual load path" - which means that there must be an independent force path (engagement) between the claimed "elongate annular member" (e.g., a "frac mandrel") and each of the two claimed flanges, which are the "first tubular member flange" (e.g., the upper flange of a "tubing head") and the "secondary flange." These two separate independent force paths (engagements) must each have contact with the frac mandrel, which provides for a transmission of the axial force from the elongate annular member to the first tubular member flange, and a separate transmission of the axial force from the elongate annular member to the secondary flange.

1  (Doc. 660 at 75).

**C.    The Parties' Claims**

On November 9, 2005, Plaintiff filed a complaint against Defendant, alleging infringement of the U.S. Patent No. 6,920,925. (Doc. No. 1.) Duhn Oil asserted that Cameron's Time Saver Wellhead ("TSW") frac mandrel infringes claims 2, 3, 5, 19, and 29 of the '925 Patent. Defendant sought a declaration that the '925 Patent is invalid for obviousness and anticipation. Cameron's obviousness and anticipation claims are based on two prior art references: (1) U.S. Patent No. 6,289,993 ("'993 Patent"); and (2) a 1994 Catalog ("'94 Catalog") describing an "MTBS Tubing Hanger" offered for sale by Cameron.

## Discussion

**I.    Summary Judgment Following Trial**

**A.    Legal Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts...." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

"Ordinarily, a party in a civil jury trial that believes the evidence is legally insufficient to support an adverse jury verdict will seek a judgment as a matter of law by filing a motion pursuant to Federal Rule of Civil Procedure 50(a) before submission of the case to the jury, and then (if the Rule 50(a) motion is not granted and the jury subsequently decides against that party) a motion pursuant to Rule 50(b)." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 396 (2006). Federal Rule of Civil Procedure 50(a) provides that once a party has been fully heard on an issue during a jury trial, the court may grant a motion for judgment as a matter of law against the non-moving party only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); Ritchie v. United States, 451 F.3d 1019, 1022-23 (9th Cir. 2006). Rule 50(b), by contrast, sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment. Unitherm Food Sys., Inc., 546 U.S. at 400. This postverdict motion under Rule 50(b) "is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" Unitherm Food Sys., Inc., 546 U.S. at 401 (quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216 (1947)). As

the Supreme Court explained,

> [T]here are circumstances which might lead the trial court to believe that a new trial rather than a final termination of the trial stage of the controversy would better serve the ends of justice. In short, the rule does not compel a trial judge to enter a judgment notwithstanding the verdict instead of ordering a new trial; it permits him to exercise a discretion to choose between the two alternatives.

Cone, 330 U.S. at 215.

### B.  Anticipation

Plaintiff moves for summary judgment, arguing that the claims in the '925 patent are not invalid as anticipated by either U.S. patent 6,289,993 ("'993 patent") or by Cameron's 1994 product catalog ("'94 catalog").  The '993 Patent teaches a mandrel device designed to protect a tool referred to as a Blow Out Preventer used in fracing operations. (Doc. No. 706 at 51.)  The '94 Catalog discloses a device described as an "MTBS Tubing Hanger" used for hanging tubing in a well whereby a set of lock screws are run in to the tubing body in order to react axial loads.  (Id. at 51.)

"To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention."  Silicon Graphics, Inc. v. ATI Tech., Inc., 607 F.3d 784, 796 (Fed. Cir. 2010).  A prior art reference does not invalidate a patent if it merely "suggests" the claimed subject matter.  Astrazeneca LP v. Apotex, Inc.,633 Fed. Cir. 1042, 1055 (Fed. Cir. 2010).  To prove anticipation, the alleged infringer must show that one skilled in the art would reasonably understand or infer that every claim element is disclosed in the prior art reference.  Id. (quoting In re Baxter Travenol Labs, 952 F.2d 388, 390 (Fed. Cir. 1991)).  As a matter of law, if an independent claim is not anticipated, claims that depend upon it cannot be anticipated.  Minnesota Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1299 (Fed. Cir. 2002).  Anticipation is a factual issue for the jury to decide based on resolution of subsidiary questions of fact such as whether knowledge of an invention was publicly accessible, whether use of the invention was publicly accessible, or whether the invention was subject to a commercial offer for sale in the United States more than one year prior to the application date of the patent.  See, e.g., 3M v. Chemque, Inc., 303 F.3d 1294, 1306-07 (Fed. Cir. 2002).

Plaintiff argues that it is entitled to summary judgment in its favor on the issue of anticipation in light of the Court's Rule 50 order of nonobviousness. (Doc. No. 714-1 at 15-18.) The Federal Circuit stated that "[d]espite the often quoted maxim that anticipation is the 'epitome of obviousness,' novelty under 35 U.S.C. § 102 and nonobviousness under 35 U.S.C. § 103 are separate conditions of patentability and therefore separate defenses available in an infringement action." Cohesive Tech., Inc. v. Waters Corp., 543 F.3d 1351, 1363 (Fed. Cir. 2008). The Federal Circuit instructed that "while it is commonly understood that prior art references that anticipate a claim will usually render that claim obvious, it is not necessarily true that a verdict of nonobviousness forecloses anticipation. The tests for anticipation and obviousness are different." Id. at 1364.

The Court concludes that summary judgment is not appropriate. Plaintiff did not advance a Rule 50 motion on the issue of anticipation at the close of the evidence at trial. (See Doc. No. 706 at 47 n.17; Doc. No. 714-1 at 7 n.1.) The standard for summary judgment under Rule 56 differs from the judgment as a matter of law under Rule 50. Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of a triable fact. Celotex, 477 U.S. at 322. Here, the Court concluded that a new trial on the issue of anticipation is warranted after the jury found each of the asserted patent claims to be invalid. (See Doc. No. 706 at 46.) The Court concludes that Plaintiff has not met its burden to establish the absence of a triable fact as to whether the claims in the '925 patent are not invalid as anticipated. Accordingly, the Court denies Plaintiff's motion for summary judgment.

**II.    Motion for Reconsideration**

Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); Fed. R. Civ. P. 60(b).

Defendant seeks to reconsider the Court's order granting judgment in favor of Plaintiff on the issue of obviousness. (Doc. No. 715.) Defendant does not present the Court with any newly discovered evidence or a change in controlling law. Instead, Defendant argues that the

Court did not apply the correct legal standard in ruling on the motion for judgemnt as a matter of law.

Federal Rule of Civil Procedure 50(a) provides that once a party has been fully heard on an issue during a jury trial, the court may grant a motion for judgment as a matter of law against the non-moving party only if there is no legally sufficient evidentiary basis to find for that party on that issue. Fed. R. Civ. P. 50(a). Here, the Court conducted a fourteen-day jury trial and heard the experts from both sides. (Doc. No. 706 at 48.) The only two references asserted by Defendant at trial were the '94 Catalog and the '993 Patent. (Doc. No. 706 at 56.) George Boyadjieff testified as the expert witness for Plaintiff Duhn Oil. (See Doc. No. 693 at 41.) Gary Delvin testified as the expert witness for Defendant Cameron. (Doc. No. 692 at 5.)

The jury found that Defendant failed to prove by clear and convincing evidence that Claim 1 of the '925 patent was invalid as obvious. (Doc. No. 668.) It is "a fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'" Jeneric/Pentron, Inc. v. Dillon Co., Inc., 205 F.3d 1377, 1383 (Fed. Cir. 2000) (quoting Wahpeton Canvas Co., v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989). The trial Judge, in ruling on the parties' Rule 50 motions, concluded that, as a matter of law, dependent claims of the '925 patent are not invalid as obvious: "the legal conclusion that independent claim 1 is obvious is an absolute prerequisite to the legal conclusion that dependent claims 2, 3, 4, 5, 19, and 29, each of which incorporates all the elements of claim 1, are obvious." (Doc. No. 706 at 43.) This is proper legal conclusion under Jeneric/Pentron, Inc. v. Dillon Co., Inc., 205 F.3d 1377, 1383 (Fed. Cir. 2000). Judge Wanger applied the correct legal standard and properly ruled that the obviousness verdicts on the dependent claims should not stand in light of the jury's determination on Claim 1.

Moreover, Cameron failed in its burden of proof. At trial, Defendant had the burden of showing obviousness by clear and convincing evidence. Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1376 (Fed. Cir. 2011); McGinley, 262 F.3d at 1349.

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 418 (2007). Under 35 U.S.C. § 103(a), a patent is invalid "if the differences between the [claimed] subject matter ... and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Obviousness is a determination of law based on underlying determinations of fact. Geo M. Martin Co. v. Alliance Mach. Sys. Int'l, 618 F.3d 1294, 1300 (Fed. Cir.2010). These factual determinations include the scope and content of the prior art, the level of ordinary skill in the art, the differences between the claimed invention and the prior art, and secondary considerations of nonobviousness. KSR, 550 U.S. at 406 (citing Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966)). The Supreme Court in KSR requires an "expansive and flexible approach" in determining whether a patented invention was obvious at the time it was made. 550 U.S. at 415. In particular, the Court emphasized the role of "common sense": "[r]igid preventative rules that deny factfinders recourse to common sense ... are neither necessary under our case law nor consistent with it." Id. at 421.

"Throughout the obviousness determination, a patent retains its statutory presumption of validity, see 35 U.S.C. § 282, and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1349 (Fed. Cir. 2001) (citation omitted). In the ordinary patent case in which obviousness is asserted, the trier of fact must answer the factual inquiries outlined in Graham v. John Deere Co., 383 U.S. 1 (1966) relating to: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) whatever objective evidence may be present as indicia of nonobviousness. Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1547 (Fed. Cir. 1983). Obviousness requires a showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention. Unigene Labs., Inc. v. Apotex, Inc., 655 F.3d

1352, 1360 (Fed. Cir. 2011) (citing <u>KSR</u>, 550 U.S. at 421).

Defendant argues that Plaintiff was not entitled to a jury on the issue of invalidity. (Doc. No. 715 at 21-22.) Defendant alternatively contends that even if the jury verdict was binding, Plaintiff waived the inconsistency when it failed to object to it before the jury was dismissed. (<u>Id.</u> at 24.) These arguments were previously considered and rejected by Judge Wanger in his Memorandum Decision. (Doc. No. 706.) Defendant offers no new facts or new law to justify reconsideration of Judge Wanger's decision.

The Court concludes that Defendant did not sufficiently establish by clear and convincing evidence that the '94 Catalog or the '993 Patent, either independently or in combination, would have suggested use of a dual load path to a skilled artisan at the time the '925 Patent issued, especially in light of the fact that the '993 Patent was considered by the Examiner. The Court concludes that the Court correctly found that as a matter of law, Cameron failed to present evidence sufficient for a reasonable jury to find that Cameron met its burden of showing that the '925 Patent was obvious by clear and convincing evidence. Accordingly, the Court denies the motion for reconsideration.

**Conclusion**

For the reasons above, the Court denies Plaintiff's motion for summary judgment of no invalidity of the U.S. Patent No. 6,920,925. The Court denies Defendant's motion for reconsideration of the Court's order entering judgment as a matter of law in favor of Duhn Oil on the issue of obviousness. The Court directs the parties to meet and confer to set a schedule for expert depositions. If the parties are unable to agree on a schedule, the Court will hold a telephonic conference on January 10, 2012, at 9:30 a.m.

IT IS SO ORDERED.

Dated: December 21, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT