# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

DUHN OIL TOOL, INC.,

Plaintiff,

vs.

COOPER CAMERON CORP.,

Defendant.

CASE NO. 05-CV-1411-MLH (GSA)

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION ON THE ISSUE OF OBVIOUSNESS OF CLAIM 3;**

**(2) DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO NONOBVIOUSNESS OF CLAIM 3;**

**(3) REINSTATING JURY'S VERDICT OF OBVIOUSNESS OF CLAIM 3; AND**

**(4) VACATING THE DAMAGE AWARD**

This is a patent lawsuit filed by Plaintiff Duhn Oil Tool, Inc. ("Duhn Oil") against Cooper Cameron Corp. ("Cameron"). The patent-in-suit is United States Patent No. 6,920,925 "Wellhead Isolation Tool" ("the '925 patent"). The '925 patent issued on July 26, 2005 from an application filed on February 19, 2003. Following a jury trial, the trial judge granted a new trial on anticipation and granted judgment as a matter of law on nonobviousness of the claims at issue. (Doc. No. 706.) On November 15, 2011, the case was reassigned to this Court

1   pursuant to 28 U.S.C. § 292(b), after the retirement of Senior U.S. District Judge Wanger.

2   (Doc. No. 717.) After a bench trial on the issue of invalidity by anticipation,[1] the Court issued

3   a Memorandum Decision on February 23, 2012, finding claims 1, 2, 4, 5, 19, and 29 of the

4   '925 patent invalid by anticipation in light of Cameron's 1994-1995 Oil Tool Catalog ("the '94

5   catalog") (Ex. DX-A) under 35 U.S.C. § 102.  (Doc. No. 762.)  Defendant did not ask the

6   Court to find claim 3 anticipated based on the '94 catalog.  (Id.)

7        Defendant now seeks to reinstate the jury's verdict that claim 3 is obvious. (Doc. Nos.

8   767, 768.) Specifically, Cameron moves for reconsideration of (1) the trial judge's judgment

9   as a matter of law that claim 3 was not proved to be obvious and (2) the trial judge's grant of

10  a new trial on obviousness under Federal Rule of Civil Procedure 50(c), and (3) asks the Court

11  to reinstate the jury's verdict finding claim 3 to be invalid as obviousness.  (Doc. Nos. 764,

12  768, 770.)   Cameron further requests the Court to enter judgment in favor of Cameron on all

13  claims and counterclaims.  (Doc. No. 764.)   Alternatively, Cameron requests the Court to

14  recalculate damages based on its expert's reasonable royalty calculation and to award Duhn

15  Oil no more than $380,477.  (Doc. Nos. 768, 770.)

16       Duhn Oil requests judgment against Cameron on infringement in the full amount of lost

17  profits and reasonable royalties awarded by the jury.  (Doc. Nos. 763, 767.)  Duhn Oil

18  alternatively asks the Court to recalculate the damages award based on a 9% reasonable royalty

19  and to award Duhn Oil $6,357,891, or to grant a new trial on the issue of damages.  (Doc. Nos.

20  763, 767.)

21       On March 13, 2012, the Court requested additional briefing on the issue of damages.

22  (Doc. No. 765.) On March 23, 2012, the parties submitted briefing on damages, and Duhn Oil

23  submitted its opposition to Cameron's motion for reconsideration of the trial judge's post-trial

24  order on obviousness.  (Doc. Nos. 767, 768.)   On April 10, 2012, Defendant submitted

25  supplemental briefing on damages.  (Doc. No. 770.)   On April 23, 2012, Plaintiff also

26  submitted supplemental briefing on damages. (Doc. No. 772.) On April 25, 2012, the Court

27

28       _____

        [1] The parties consented to a bench trial on anticipation.  (Doc. No. 738 at 2.)

1  held a hearing on the motions.  Joseph Thomas, William Kolegraff, and Keri Ann Rich
2  appeared on behalf of Plaintiff Duhn Oil.  Joe Redden, Charles Rogers, Manish Vyas, and
3  Peter Bielinksy appeared on behalf of Defendant Cameron.

4      For the following reasons, the Court (1) grants Defendant Cameron's request for
5  reconsideration of judgment as a matter of law on the issue of nonobviousness, (2) denies
6  Duhn Oil's motion for judgment as a matter of law on the issue of nonobviousness, (3) grants
7  Defendant Cameron's request to reinstate the jury's verdict regarding the obviousness of claim
8  3, and (4) vacates the damage award.

9      **Background**

10  **I.    Procedural History**

11      On November 9, 2005, Plaintiff Duhn Oil filed a complaint for patent infringement
12  against Defendant Cameron.  (Doc. No. 1.)  On January 12, 2011, the case proceeded to a jury
13  trial.  At trial, Duhn Oil asserted that Cameron directly and indirectly infringed claims 2, 3, 5,
14  19, and 29 of Duhn Oil's '925 patent.  Cameron raised affirmative defenses of invalidity,
15  incorrect inventorship, and inequitable conduct, and sought declaratory relief that the '925
16  patent claims are invalid.

17      On February 2, 2011, the jury returned verdicts finding Defendant liable for infringing
18  dependent claims 2, 3, 5, 19, and 29 of the '925 patent, and for contributory infringement of
19  claims 2, 3, 5, and 29, but not claim 19.  (Doc. No. 668.)  The jury awarded Plaintiff
20  $5,909,974 in lost profits and $2,750,000 in royalties.  (Id.)  The jury also found that
21  dependent claims 2, 3, 4, 5, 19, and 29 were invalid for obviousness, and that claims 2, 3, 4,
22  5, and 29 were invalid for anticipation.  (Id.)  The jury found that claim 1, the independent
23  claim from which claims 2, 3, 4, 5, 19, and 29 depend, was not proven to be anticipated or
24  obvious.  (Id.)

25      Following the jury's verdict, the trial judge asked the parties at side bar for their legal
26  position on the verdict.  (Doc. No. 698 at 41-42.)  Neither party sought clarification of the
27  jury's verdict and the jury was discharged.  (Id.)  Both sides made Rule 50 motions for
28  judgment as a matter of law on the issue of obviousness, and Defendant Cameron presented

1  a Rule 50 motion on the issues of anticipation and damages.  (Doc. Nos. 696 at 15-47; 698 at

2  26-34.)

3       Post-trial, the trial judge granted in part and denied in part the Rule 50 motions and

4  granted a motion for a new trial on anticipation.  (Doc. No. 706.)  The trial judge affirmed the

5  jury's verdict that Cameron directly infringed claims 2, 3, 5, 19, and 29 of Duhn Oil's '925

6  patent; affirmed the jury's verdict that Cameron contributorily infringed claims 2, 3, 5, and 29

7  of Duhn Oil's '925 patent; affirmed the jury's verdict that Cameron did not induce

8  infringement or willfully infringe Duhn Oil's '925 patent; granted Duhn Oil's Rule 50 motion

9  for judgment as a matter of law that Duhn Oil's 1, 2, 3, 4, 5, 19, and 29 patent claims were not

10 invalid as obvious based on U.S. Patent No. 6,289,993 ("the '993 patent") and the '94 catalog;

11 affirmed the jury's verdict on inventorship; ruled that Duhn Oil did not engage in inequitable

12 conduct in naming the inventors or providing prior art to the patent office; ordered a new trial

13 on the issue of anticipation, finding that the jury's verdict that claims 1 and 19 were not

14 anticipated was inconsistent with the verdict that dependent claims 2, 3, 4, 5, and 29 were

15 anticipated; and postponed entry of judgment pending the new trial on the issue of anticipation.

16 (Id.)

17      Following a bench trial on the issue of invalidity by anticipation, the Court issued a

18 Memorandum Decision finding asserted claims 1, 2, 4, 5, 19, and 29 of the '925 patent invalid

19 for anticipation by the '94 catalog under 35 U.S.C. § 102.  (Doc. No. 762.)  As a result of the

20 retrial, claim 3 remains the only valid asserted claim of the '925 patent.  (Id.)  Cameron moves

21 to reinstate the jury's verdict that claim 3 is obvious.  Duhn Oil opposes the motion.

22 **II.    '925 Patent Claims**

23      Claim 3 of the '925 patent recites:

24      3. A wellhead assembly as recited in claim 2 wherein said annular lip
   extends radially inward defining an opening having a first diameter, wherein the
25   elongate annular member first end portion comprises an inner surface having
   a second diameter and wherein the portion of the production tubular member
26   comprises an inner surface having a third diameter, wherein said first, second
   and third diameters are equal.
27

28 (Ex. JX.1.16.)

Claim 3 depends upon claims 1 and 2.  Therefore, claim 3 contains all of the limitations of claims 1 and 2.  See Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1383 (Fed. Cir. 2000) ("[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers.") (citing 35 U.S.C. § 112, ¶ 4).  Claims 1 and 2 provide as follows:

> 1. A wellhead assembly comprising:
> a casing;
> a first tubular member mounted over the casing;
> a first tubular member flange extending from the first tubular member;
> a generally elongate annular member suspended in the first tubular member, said annular member having a first end portion extending above the first tubular member and a second end portion below the first end portion;
> a secondary flange extending from the elongate annular member;
> a plurality of fasteners fastening the secondary flange to the first tubular member flange;
> and a production tubular member aligned with the elongate annular member, wherein an axial force acts on the generally elongate annular member and is reacted in both the first tubular member flange and the secondary flange.
>
> 2. A wellhead assembly as recited in claim 1 wherein the first tubular member comprises an inner surface having an annular lip, wherein said annular lip extends between the elongate annular member second end portion and a portion of the production tubular member.

(Ex. JX1.16.)

Figure 1 of the '925 patent depicts an exemplary embodiment of the claimed invention.



**Figure 1 '925 Patent**

1

**<u>Discussion</u>**

2

**I.  Legal Standard for a Motion for Reconsideration**

3

A motion for reconsideration may be appropriate if: (1) the movant presents the court

4

with new evidence; (2) the court committed clear error or the initial decision was manifestly

5

unjust; or (3) there is an intervening change in controlling law.  <u>Sch. Dist. No. 1J, Multnomah</u>

6

<u>Cnty. v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).  Whether to grant or deny a motion

7

for reconsideration is within the sound discretion of the district court.  <u>Navajo Nation v.</u>

8

<u>Norris</u>, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229

9

F.3d 877, 883 (9th Cir. 2000)).

10

Cameron contends that the jury's verdict finding claim 3 invalid for obviousness is

11

supported by substantial evidence and seeks reconsideration of the trial court's order granting

12

judgment as a matter of law as to the nonobviousness of claim 3.  Cameron asserts that

13

reconsideration is appropriate in light of new evidence introduced during the retrial on

14

anticipation.  During the retrial, this Court heard extensive testimony and detailed arguments

15

from the parties on anticipation.  (Doc Nos. 754, 760, 761.)  The testimony focused on two

16

prior art references, the '94 catalog (Ex. DX-A) and the '993 patent (Ex. JX6).  Additionally,

17

the Court heard testimony from expert witnesses, Mr. Frishmuth and Mr. Brugman,

18

concerning whether computer modeling software and finite element analysis simulations

19

demonstrated that the '94 catalog disclosed a dual load path device.  (Doc. Nos. 754 at 61-

20

182; 761 at 41-166; Ex. P76.)

21

As a result of the retrial, this Court concluded that the '94 catalog discloses a dual load

22

path device, invalidating independent claim 1 and dependent claims 2, 4, 5, 19, and 29 of the

23

'925 patent.  (Doc. No. 762 at 18.)  In light of the additional evidence presented during the

24

retrial, Cameron seeks reconsideration of the trial court's judgment as a matter of law order

25

vacating the jury's verdict invalidating claim 3 for obviousness.  <u>See</u> <u>Sch. Dist. No. 1J</u>, 5 F.3d

26

at 1263 (stating that a motion for reconsideration may be appropriate if the movant presents

27

the court with new evidence).

28

1    Cameron also asserts that the trial judge committed legal error by improperly weighing

2   evidence in granting judgment as a matter of law of nonobviousness.   In making a

3   determination for judgment as a matter of law, "the court must not weigh the evidence, but

4   should simply ask whether the plaintiff has presented sufficient evidence to support the jury's

5   conclusion."   Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007).   Cameron

6   further contends that Duhn Oil waived its challenge to the verdict on claim 3 under Zhang v.

7   Am. Gem Seafoods, Inc., 339 F.3d 1020, 1028-1029 (9th Cir. 2003).   Additionally, Cameron

8   asserts that the jury's verdict of validity on nonasserted claim 1 was advisory.   The Court

9   agrees that reconsideration is appropriate to determine whether claim 3 is obvious.

10   **II.  Legal Standard for Judgment as a Matter of Law on Obviousness**

11    Judgment as a matter of law is available where "a reasonable jury would not have a

12   legally sufficient evidentiary basis to find for the party on that issue."   Fed. R. Civ. P.

13   50(a)(1).   A court must uphold the jury's verdict if it is supported by substantial evidence.

14   Wallace, 479 F.3d at 624.   Substantial evidence requires only "such relevant evidence as a

15   reasonable mind might accept as adequate to support a conclusion."   Blanton v. Anzalone, 813

16   F.2d 1574, 1576 (9th Cir. 1987).   When an issue of law is submitted to the jury, the court

17   presumes that the jury resolved the underlying factual disputes in favor of the verdict and

18   leaves those presumed findings undisturbed if they are supported by substantial evidence.

19   Wallace, 479 F.3d at 624; Jurgens v. McKasy, 927 F.2d 1552, 1557 (Fed. Cir. 1991).   A

20   district court examines the jury's legal conclusions de novo to see whether they are correct

21   as a matter of law in light of the presumed jury fact findings.   Spectralytics, Inc. v. Cordis

22   Corp., 649 F.3d 1336, 1341 (Fed. Cir. 2011).

23    "Obviousness is a question of law based on underlying findings of fact."   W. Union

24   Co. v. MoneyGram Payment Sys., Inc., 626 F.3d 1361, 1369 (Fed. Cir. 2010).   A jury's

25   verdict of obviousness must be supported by factual findings including the scope and content

26   of the prior art, the level of ordinary skill in the field of the invention, the differences between

27   the claimed invention and the prior art, and any objective evidence of nonobviousness such

28   as long-felt need, and commercial success.   Retractable Techs., Inc. v. Becton, Dickinson &

1  Co., 653 F.3d 1296, 1310 (Fed. Cir. 2011) (citing Graham v. John Deere Co. of Kansas City,

2  383 U.S. 1, 17-18 (1966)).  The court reviews the jury's underlying factual findings, whether

3  explicit or implicit within the verdict, for substantial evidence.  Bard Peripheral Vascular, Inc.

4  v. W.L. Gore & Assocs., 670 F.3d 1171, 1186 (Fed. Cir. 2012).  The court reviews the

5  ultimate question of obviousness de novo, viewing the evidence in the manner most favorable

6  to the verdict.  Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309-10 (Fed. Cir. 2009).

7         A patent claim is invalid as obvious if "the differences between the subject matter

8  sought to be patented and the prior art are such that the subject matter as a whole would have

9  been obvious at the time the invention was made to a person having ordinary skill in the art."

10  35 U.S.C. § 103(a).  A patent is likely to be obvious if it merely yields predictable results by

11  combining familiar elements according to known methods.  KSR Int'l Co. v. Teleflex Inc.,

12  550 U.S. 398, 416 (2007).  If prior art references anticipate a claim, then that claim is usually

13  obvious, even though the tests for anticipation and obviousness are different.  Cohesive

14  Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1364 (Fed. Cir. 2008).  A finding of obviousness

15  requires a showing, by clear and convincing evidence, that a person of ordinary skill at the

16  time of the invention would have selected and combined prior art references in the normal

17  course of research and development to yield the claimed invention.  Unigene Labs., Inc. v.

18  Apotex, Inc., 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing KSR, 550 U.S. at 421).

## III.  Jury Instructions and Verdict on Obviousness

20         The trial judge properly instructed the jury regarding the underlying factual findings

21  that support a conclusion of obviousness.  See Retractable Techs., 653 F.3d at 1310 (a jury's

22  verdict of obviousness must be supported by factual findings including the scope and content

23  of the prior art, the level of ordinary skill in the field of the invention, the differences between

24  the claimed invention and the prior art, and any objective evidence of nonobviousness).  The

25  Court properly instructed the jury on obviousness as follows:

26             In determining whether a claimed invention is obvious, you must
           consider the level of ordinary skill in this field at the time of the claimed
27         invention; the scope and content of the prior art and any difference between
           the prior art and the claimed invention. . . .
28         . . . .

> In making these assessments, you should take into account any objective evidence that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:  Whether the invention was commercially successful as a result of the patented features; whether others copied the invention or whether others in the field praised the invention.

(Doc. No. 697 at 44-45.)

The Court further instructed the jury on the legal standard for obviousness:

> The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention, there was a reason that would have prompted a person, having ordinary skill in this field, to combine the known elements in a way the claimed invention does, taking into account such factors as:
> Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions.
> Second, whether the claimed invention provides an obvious solution to a known problem.
> Third, whether the prior art suggests that the elements in the invention should be combined or not.
> And fourth, whether it would have been obvious to try the combinations of elements such as when there is a need to solve a problem.

(Id.)  See KSR, 550 U.S. at 421-22.  Furthermore, the Court properly advised the jury that obviousness requires "clear and convincing evidence."  (Id. at 43.)  See Microsoft Corp. v. i4i Ltd. P'ship, 131 S.Ct. 2238, 2242 (2011) (providing that a patent must be proved invalid by clear and convincing evidence).  In addition, the Court properly instructed the jury to independently consider the validity of each claim.  (Doc. No. 697 at 45.) See 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1368 (Fed. Cir. 2008) (citing 35 U.S.C. § 282).

During deliberations, the jury sought clarification on the differences between an independent and a dependent claim.  (Doc. No. 698 at 12.)  In response, the trial judge properly instructed the jury on the distinctions between the two types of claims and instructed that the validity of each claim should be considered separately:

> There are two types of patent claims. Independent claims and dependent claims.  An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.
> Thus it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 1 of the '925 patent is an independent claim.  And so it stands alone. You don't have to look to any other part of the patent to determine what its requirements are.

> Claims 2, 3, 4, 5, 19 and 29 in the '925 patent are dependent claims, which depend directly or indirectly on claim 1.  A dependent claim does not itself recite all the requirements of the claims, but refers to another claim for some of its requirements.  In this way, the claim depends on another claim.
>     A dependent claim incorporates all of the requirements of the claims to which it refers.

(Id. at 17-18.)  See Jeneric/Pentron, 205 F.3d at 1383 ("[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers").

The jury found that claim 3 of the '925 patent is obvious.  (Doc. No. 668 at 7.) Obviousness is a question of law based on underlying findings of fact.  W. Union, 626 F.3d at 1369.  The jury's verdict of obviousness on claim 3 must be supported by factual findings including the scope and content of the prior art, the level of ordinary skill in the field of the invention, the differences between the claimed invention and the prior art, and any objective evidence of nonobviousness.  Retractable Techs., 653 F.3d at 1310.  In deciding a motion for judgment as a matter of law, the Court reviews the jury's underlying factual findings on the obviousness of claim 3 for substantial evidence.  Bard, 670 F.3d at 1186.  The Court then determines whether the jury's underlying factual findings support the legal conclusion that claim 3 is obvious.  Lucent Techs., 580 F.3d at 1309-10.

**A. Evidence Regarding the Obviousness of the Full Bore Limitation of Claim 3**

Claim 3 is a dependent claim that adds a "full bore" limitation to the wellhead assembly of claims 1 and 2.  (Ex. JX1.16.)  At the jury trial, Mr. Robert Meeks, Duhn Oil's validity expert, explained that a "full bore" wellhead assembly has a production tubular member, an annular lip, and a production casing that all "have equal bores or equal size holes through them."  (Doc. No. 690 at 127.)  The other testifying witnesses agreed with Mr. Meeks' explanation of full bore.  (See id. at 97; 691 at 265-66; 692 at 84; 694 at 187; 695 at 38.)

At the jury trial, the witnesses provided testimony about the general state of the art and specifically analyzed whether two prior art references, the '993 patent (Ex. JX6) and the '94 catalog (Ex. DX-A), invalidate the '925 patent claims. For example, Mr. Thomas Taylor, an

///

engineer at Cameron, testified that the full bore feature of claim 3 was generally known in the art before the '925 patent was filed:

> The -- at that time [prior to 2001], people were starting to look at the need for a full bore frac mandrel, so to speak.  The tree saver wasn't full bore . . . .  So the early frac mandrel, so to speak, were not full bore . . . .  So in -- around 2000 or '99, something like that, there became interest in a full bore frac mandrel.

(Doc. No. 691 at 186.)  Similarly, Mr. John Rogers, a former employee of both Cameron and Duhn Oil, testified that designing wellhead assemblies with full bore capability became an industry standard before the '925 patent was filed:

> Q. And you're aware that the idea of having a full bore use is an industry standard with regard to wellhead assemblies; isn't that right. . .
>
> A. Yes . . .
>
> Q. Okay.  And Mr. -- Mr. Duhn did not -- or Mr. Duhn, given his experience and his training, certainly was aware of the use of full bore as an industry standard as you were; would you agree?
>
> A. As far as wellheads, yes, I believe so.

(Doc. No. 694 at 217-218, 220.)

The Patent Office also found that the full bore feature of claim 3 was known in the art. Specifically, the Patent Office found that Figure 4 of U.S. Patent No. 5,605,194 anticipates the full bore feature of claim 3.  (Ex. JX44.120-121.)  In addition, Mr. Gary Devlin, Cameron's invalidity expert, testified that the '993 Dallas patent discloses a full bore device:

> Q. All right. And can you tell the jury, does this illustrate a full bore device?
>
> A. Yes, it does. If you can zoom in, you'll see the three elements of it. See what you can see of it.  But the green bore diameter here is essentially the same as the bit guide diameter, which is essentially the same as the -- in this case, the mandrel.

(Doc. No. 692 at 84.)

The trial testimony also indicated that a person skilled in the art would be interested in combining full bore capability with a frac mandrel, a wellhead assembly, in the normal course of research and development.  For example, Mr. Taylor testified that full bore was known to be a beneficial feature in wellhead assemblies for fracing:

05cv1411

> So the early frac mandrel[s], so to speak, were not full bore.  And so they had a restriction when you're trying to pump high volumes of fluids into the well, this restriction at the Christmas tree is not good.  So in -- around 2000 or '99, something like that, there became interest in a full bore frac mandrel.

(Doc. No. 691 at 185-86.)  Likewise, Mr. George Boyadjieff, an expert witness for Duhn Oil, highlighted the desirability of full bore wellhead assemblies because the full bore feature reduces fluid turbulence in the wellhead:

> In practical terms, [claim 3] says we've got three diameters and want them to be all the same.  And the reason for that is when this frac fluid blasts through where, if the diameter suddenly changes, it will cause a lot of turbulence. And that will make this erosion more rapid than it otherwise would have been. So it is a good practice to us to try to keep a clean through bore through where our frac fluid is going to pass and that's what this claim is attempting to describe.

(Doc. No. 693 at 89-90.)

After considering the trial evidence and the Court's instructions on the law, the jury found claim 3 obvious.  (Doc. No. 668 at 7.)  The record indicates that the jury received substantial testimony that full bore wellhead assemblies were well known in the art prior to the filing of the '925 patent.  The jury heard testimony that an engineer would design wellhead assemblies with full bore capability in the normal course of research and development.  (Doc. Nos. 691 at 185-86; 693 at 7.)  As a result, the Court concludes that the record contains substantial evidence to support a finding that adding a full bore feature to a wellhead assembly is an obvious combination.[2]  See Bard, 670 F.3d at 1186 (stating that a court reviews the jury's underlying factual findings, whether explicit or implicit within the verdict, for support by substantial evidence); see also KSR, 550 U.S. at 416 (stating that a patent is likely to be obvious if it merely yields predictable results by combining familiar elements according to known methods).

///

///

///

---

[2] The Court recognizes the substantial efforts of the trial judge who ably presided over the jury trial and granted the new trial on anticipation.

**B.  Evidence Supporting the Jury's Implied Finding that the Combination of the Full Bore Limitation of Claim 3 and the Limitations of Claims 1 and 2 is Obvious**

Claim 3 of the '925 patent is dependent upon claims 1 and 2.  Thus, claim 3 contains all of the limitations of claims 1 and 2.  See Jeneric/Pentron, 205 F.3d at 1383 ("[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers."). The jury's verdict that claim 3 is obvious presumes that the jury found all facts necessary to support its verdict.  See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1359 (Fed. Cir. 2001) (stating that the court must presume that "the jury found all facts necessary to support its verdict").  As a result, the Court presumes that the jury resolved the underlying facts necessary to find claim 3 obvious, including that the combination of all limitations from claims 1 to 3 is obvious.  See SIBIA Neurosciences, Inc. v. Cadus Pharma. Corp., 225 F.3d 1349, 1354 (Fed. Cir. 2000) (providing that the court presumes the jury resolved all factual disputes in favor of the verdict and the court leaves those findings undisturbed as long as they are supported by substantial evidence).  Therefore, the Court reviews the record for substantial evidence to support the jury's finding that the wellhead assembly of claim 3, including its full bore feature and all of the limitations recited in claims 1 and 2, is obvious.

At trial, the parties presented evidence regarding the validity of claims 1 and 2 in light of two prior art documents, the '94 catalog (Ex. DX-A) and the '993 patent (Ex. JX6).

**1.  The '94 Catalog (Ex. DX-A)**

After the retrial, this Court concluded that all limitations of claims 1 and 2 are anticipated by Cameron's '94 catalog.  (See Doc. No. 762.)  This Court issued a detailed order providing a step-by-step analysis of how the '94 catalog discloses all features of claims 1 and 2.  (Id. at 12-19.)  In sum, Cameron's '94 catalog discloses a metal-to-body-seal ("MTBS") tubing spool and hanger that is a wellhead assembly.  The MTBS device has a casing and a tubing spool mounted over the casing, satisfying the recited "first tubular member mounted over the casing" of claim 1 of the '925 patent.  A top flange extends from the tubing spool of the MTBS device, meeting the "first tubular member flange extending from the first tubular

///

- 13 -

member" limitation of claim 1.  The elongated tubing hanger of the MTBS device satisfies the

claimed "generally elongate annular member," as illustrated:



**'94 Catalog Device**
(with annotations as to limitations of claim 1)

At the jury trial, Mr. Devlin referred to the '94 catalog exhibit (Ex. DX-A) and

testified that it discloses an MTBS device that is a wellhead assembly:

> Q. All right. First of all, is a wellhead assembly comprising a casing.
>
> A. Yes, sir, the entire assembly would be the wellhead assembly.  The casing
> in this case is production casing, which is shown right in here.  That's this
> piece.

(Doc. No. 692 at 94).  Mr. Devlin testified that the MTBS device satisfies the recited first

tubular member mounted over the casing of claim 1 by stating:  "That's the tubing spool."

(Id.)  With reference to the '94 catalog exhibit, Mr. Devlin testified that the tubing spool has

a top flange extending from the tubing spool:  "Here's the first tubular member flange right

here."  (Id.)  Mr. Devlin testified that the MTBS device has a generally elongate annular

member:  "This is the tubing -- the tubing hanger.  And it's elongated."  (Id. at 95.)

05cv1411

The MTBS tubing hanger also meets the claimed "generally elongate annular member suspended in the first tubular member, said annular member having a first end portion extending above the first tubular member and a second end portion below the first end portion" of claim 1.  (Ex. JX1.)  For example, the tubing hanger is suspended in the tubing spool by the adapter flange.  Furthermore, the top portion of the tubing hanger extends above the tubing spool, and the tubing hanger has a bottom portion below its top portion.   In addition, the production tubing is in vertical alignment with the tubing hanger, satisfying the "production tubular member aligned with the elongate annular member" limitation of claim 1.  (See above illustration; see also Doc. No. 762 at 14.)

With reference to the '94 catalog exhibit (Ex. DX-A), Mr. Devlin testified at the jury trial that the MTBS device discloses the claimed "generally elongate annular member suspended in the first tubular member, said annular member having a first end portion extending above the first tubular member and a second end portion below the first end portion" of claim 1:

> This is the tubing -- the tubing hanger.  And it's elongated.  And you can see that it extends -- there's a portion that extends above the flange and there's a portion that extends below the flange.  All in this area here.

(Doc. No. 692 at 95.)  Still referring to the '94 catalog exhibit, Mr. Devlin testified that the production tubing is in vertical alignment with the tubing hanger: "Again, this is the production tubing and it's aligned with the elongate tubular member."  (Id. at 96.)

The MTBS device has an adapter flange suspended from the tubing hanger, satisfying the recited "secondary flange extending from the elongate annular member" of claim 1.  (Doc. No. 762 at 14.)  The MTBS device shows a number of bolts fastening the adapter flange and the top flange of the tubing spool.  The adapter flange is a secondary flange having a plurality of fasteners with the necessary claim elements.  Therefore, the MTBS device also meets the "plurality of fasteners fastening the secondary flange to the first tubular member flange."

At the jury trial, Mr. Devlin referred to the '94 catalog exhibit (Ex. DX-A) and testified that it discloses a secondary flange extending from the elongate annular member: "That would be the tubing head adapter right here."  (Doc. No. 692 at 95.)  Again referring

1    to the '94 catalog exhibit, Mr. Devlin testified that the MTBS device discloses a plurality of

2    fasteners fastening the secondary flange to the first tubular member flange: "Those fasteners

3    would be right here. You can see the nuts here."  (Id.)

4          Turning to the "wherein" clause of claim 1, both parties identified this clause as the

5    critical feature for distinguishing claim 1 from the prior art.  For example, Mr. Meeks

6    highlighted the importance of the wherein clause when, in response to the question of whether

7    the dual load pathway is "the whole issue in this case," he affirmatively answered, "That's

8    correct." (Doc. No. 691 at 70.)  The trial court construed the wherein clause as requiring a

9    "dual load path," meaning that there must be an independent force path between the claimed

10   elongate annular member and each of the two flanges.  (Doc. No. 660 at 75.)

11         The '94 catalog discloses a dual load path device.  (Doc. No. 762 at 16-19.)

12   Specifically, the '94 catalog MTBS device has a tubing hanger in contact with lock screws

13   that causes a force to be reacted in the tubing spool flange, constituting a first load path.  (Id.

14   at 16.)  The '94 catalog MTBS device also has a metal U-cup seal assembly that transfers a

15   force into the adapter flange, providing a second load path.  (Id. at 16-19.)  Because the

16   MTBS device has two independent load paths, the '94 catalog anticipates the dual load

17   pathway required by the wherein clause of claim 1.  (Id.)

18         Mr. Devlin provided testimony to the jury that the '94 catalog meets the wherein

19   clause of claim 1.  (Doc. No. 692 at 97.)  Specifically, Mr. Devlin testified the '94 catalog

20   discloses a dual load pathway device because the device has a set of engaged lock screws and

21   a seal assembly, each of which transfers a force into a flange.  (Id.)  Mr. Meeks disagreed.

22   Mr. Meeks testified that the lock screws on the '94 catalog device react the entire axial force

23   into the tubing hanger such that seal assembly does not react an axial force into a flange.

24   (Doc. No. 695 at 91-92.)  But the testimony of Mr. Devlin provides substantial evidence that

25   the '94 catalog discloses a dual load pathway device that meets the wherein clause.  See

26   Wallace, 479 F.3d at 624 (providing that a court "must disregard all evidence favorable to the

27   moving party . . . [and the] evidence must be viewed in the light most favorable to the

28   nonmoving party" while reviewing a jury's verdict).

1   The prosecution history of the '925 patent presented at the trial and retrial further
2   demonstrates the importance of the wherein clause to the validity of claim 1.  In the originally
3   filed patent application, claim 1 did not contain the wherein clause.  (Ex. JX44.325.)  The
4   Patent Office rejected the original version of claim 1 for anticipation by U.S. Patent Nos.
5   5,605,194 and 6,688,386.  (Ex. JX44.119-124.)  In response to the rejection, the applicant
6   amended claim 1 to include the wherein clause.  (Ex. JX44.71-72.)  After the wherein clause
7   was added, the Patent Office found claim 1 and its dependent claims to be patentable.  (Ex.
8   JX44.55.)  The jury heard testimony from Mr. Devlin summarizing the prosecution history
9   of claim 1 and the addition of the wherein clause.  (See, e.g., Doc. No. 692 at 44-46.)  After
10  summarizing the prosecution history of claim 1 and comparing each limitation of claim 1 with
11  the '94 catalog and the '993 patent, Mr. Devlin provided his opinion that claim 1 is invalid.
12  (Id. at 79, 97, 125.)  This is consistent with his credible testimony at the retrial that claim 1
13  was invalid because the '94 catalog discloses a dual load path device.  (Doc. No. 754 at 218-
14  19.)  The Court concludes that the jury had substantial evidence to decide that claim 3,
15  including all the limitations of claim 1, is obvious.

16  Turning to claim 2, this claim adds a limitation that "the first tubular member
17  comprises an inner surface having an annular lip, wherein said annular lip extends between
18  the elongate annular member second end portion and a portion of the production tubular
19  member." (Ex. JX1.16.)  This limitation is anticipated by the '94 catalog.  (See Doc. No. 762
20  at 19.)  For example, the '94 catalog device has a tubing spool with an inner surface and an
21  annular lip.  (Id.)  The annular lip extends from the bottom portion of the tubing hanger
22  between a portion of the production tubing, satisfying the limitations of claim 2.  (Id.)

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1
2
3
4
5
6
7
8
9
10



**'94 Catalog Device**
(with annotations as to limitations of claim 2)

11     In sum, this Court concluded at the retrial that claims 1 and 2 are invalid for

12  anticipation by Cameron's '94 catalog because the MTBS device discloses all of the

13  limitations of these claims.  (Doc. No. 762.)  Furthermore, the Court agrees with the jury that

14  claim 3 is obvious in light of Cameron's '94 catalog.  See KSR, 550 U.S. at 416 (providing

15  that a patent is likely to be obvious if it merely yields predictable results by combining

16  familiar elements according to known methods).

17             **2. The '993 Patent**

18     At the jury trial, Cameron also asserted the '993 patent as a prior art reference to

19  invalidate the claims of the '925 patent.  The '993 patent discloses a wellhead device for

20  protecting a blowout preventer for use in oil and gas wells.  (Ex. JX6.)  Several witnesses

21  testified at the jury trial about the differences between the '925 patent and the '993 patent.

22  In particular, Mr. Devlin testified that Figure 3 of the '993 patent discloses a full bore device

23  that invalidates claim 3 of the '925 patent:

24         Q. All right. And can you tell the jury, does [Figure 3 of the '993 patent]
           illustrate a full bore device?
25
           A. Yes, it does.  If you can zoom in, you'll see the three elements of it.  See
26         what you can see of it.  But the green bore diameter here is essentially the
           same as the bit guide diameter, which is essentially the same as the -- in this
27         case, the mandrel.

28         Q. All right.  So does that meet the limitations in claim 3 of '925 patent?

A. Yes, sir, it does.

Q. . . . So do you have an opinion, then, as to whether the -- whether claim 3 of the '925 patent is valid in light of the '993 Dallas patent?

A. I believe the Duhn claim 3 is invalid in light of the Dallas patent.

(Doc. No. 692 at 84.)  Therefore, the jury heard testimony that the combination of the full bore feature of claim 3 with wellhead assemblies was known in the prior art based on the teachings of the '993 patent.

Mr. Devlin also provided detailed testimony that the '993 patent meets each limitation of claim 1, including the wherein clause.  (Id. at 71-74.)  With respect to the wherein clause, Mr. Devlin explained that the '993 patent discloses a device with a dual load pathway because "[i]n the first tubular member flange, you have lock screws" and "[i]n the second -- the secondary flange, you have this . . . adjustment . . . that captures the load."  (Id. at 74.)

Mr. Devlin testified that if the lock screws on the '993 patent device are not run in, then the device lacks a dual load pathway.  (Doc. No. 695 at 95.)  In contrast, Mr. Meeks testified that the '993 patent is materially distinguishable from the '925 patent because the '993 patent does not disclose a direct connection between the secondary flange and the tubing head flange.  (Doc. No. 691 at 93-95.)  Mr. Meeks testified that a direct connection between the flanges is required to operate the claimed device of the '925 patent:

Q. Okay.  So the fact that there is a direct connection between the secondary flange and the tubing head flange, would you consider that to be important to the invention?

A. That's required of this invention.

(Id. at 95.)  Mr. Devlin agreed that the '993 patent does not have a direct connection between the flanges.  (Id. at 112-113.)  But Mr. Devlin testified that the '993 patent invalidates the '925 patent because the '925 patent claims do not require a direct connection.  (Doc. No. 692 at 77-78.)  At most, the jury heard conflicting testimony regarding whether the '993 patent invalidates the '925 patent and concluded that claim 3 was obvious.  See Wallace, 479 F.3d at 624 (providing that a court "must disregard all evidence favorable to the moving party

1   . . . [and the] evidence must be viewed in the light most favorable to the nonmoving party"

2   while reviewing a jury's verdict).   After reviewing the record, the Court concludes that the

3   jury's finding of invalidity for the asserted '925 patent claims is supported by substantial

4   evidence.   Id.

5          Turning to claim 2, Mr. Devlin also testified that the '993 patent meets each

6   limitation of claim 2.   (Doc. No. 692 at 82-83.)   Mr. Devlin testified that claim 2 is invalid in

7   light of the '993 patent:

8          Q. And what is the additional element that is added here in claim 2?

9          A. In this case, it's a lip on the inside of the tubing spool . . . .

10         Q. Do you have an opinion as to whether all of the limitation cited in claim 2
           are found in the Dallas '993 patent?
11
           A. Yes, I do.   They're cited.   They're cited there.
12
           Q. Do you have an opinion, then, as to whether or not claim 2 of the '925
13         patent is valid in light of the '993 Dallas patent?

14         A. It would be my opinion that it's invalid.

15  (Id.)

16         In summary, the record contains detailed testimony regarding the invalidity of claims

17  1 and 2 in light of the prior art.   For example, the jury heard testimony comparing the '94

18  catalog and the '993 patent with the claims of the '925 patent.   The jury was presented with

19  testimony about the prosecution history of claim 1 and the importance of the wherein clause

20  to the validity of the '925 patent claims.   The jury heard conflicting testimony of expert

21  witnesses as to the presence of a dual load path device in the prior art.   The Court presumes

22  that the jury resolved the underlying factual disputes of obviousness in favor of the verdict

23  and leaves those presumed findings undisturbed because they are supported by substantial

24  evidence.   See  Jurgens, 927 F.2d at 1557.   After reviewing the record, the Court concludes

25  that the jury had substantial evidence to support factual findings on the invalidity of claim 3.

26  See Bard, 670 F.3d at 1186 (stating that a court reviews the jury's underlying factual findings,

27  whether explicit or implicit within the verdict, for support by substantial evidence).

28  ///

1

### C.  Evidence Supporting the Level of Skill and Secondary Considerations

2        Factual findings on obviousness include the level of skill in the art and secondary

3  considerations of obviousness.  <u>Graham</u>, 383 U.S. at 17-18.  The record contains testimony

4  relevant to a factual finding on the level of ordinary skill in the art.  For example, Mr.

5  Boyadjieff testified about the general qualifications of a professional engineer.  (Doc. No. 693

6  at 42, 71).   The record also contains testimony relevant to secondary obviousness

7  considerations.   For example, Mr. Duhn testified that the '925 patent's technology was

8  commercially successful because the claimed wellhead assembly is lighter, easier to install,

9  creates a safer work place, and can be left on the well for longer periods of time than previous

10  wellheads.  (Doc. Nos. 689 at 72-74; 690 at 97.)  Mr. John O'Bryan, Jr. testified that the

11  technology at issue provided a "very profitable product."  (Doc. No. 693 at 186.)  Thus, the

12  record contains substantial evidence to support factual findings on the level of skill in the art

13  and secondary considerations of obviousness underlying a conclusion that the '925 patent

14  claims are obvious.  <u>Bard</u>, 670 F.3d at 1186.

15

### D.  Conclusion Regarding the Jury's Verdict that Claim 3 is Obviousness

16        The Court concludes that the jury's verdict finding claim 3 to be obvious is supported

17  by substantial evidence on the scope and content of the prior art, the level of ordinary skill in

18  the field of the invention, the differences between the claimed invention and the prior art, and

19  any objective evidence of nonobviousness.  <u>Retractable Techs.</u>, 653 F.3d 1310.  For example,

20  the jury received detailed testimony regarding how the '94 catalog and the '993 patent meet

21  each limitation of claims 1 and 2.  Because an anticipatory reference usually renders a claim

22  invalid as obvious, the jury had substantial evidence to support its implied finding that the

23  limitations of claims 1 and 2 are obvious.  <u>See Cohesive Techs.</u>, 543 F.3d at 1364 ("[P]rior

24  art references that anticipate a claim will usually render that claim obvious . . . .").

25  Furthermore, the jury heard testimony that the full bore limitation of claim 3 was an industry

26  standard at the time the '925 patent was filed and that an engineer would want to design a

27  wellhead assembly with full bore capabilities.  <u>See KSR</u>, 550 U.S. at 416 (providing that the

28  combination of familiar elements is likely obvious when it yields predictable results).

1    In granting judgment as a matter of law that the '925 patent claims were nonobvious,

2    the trial judge indicated that Cameron failed to establish a prima facie case of obviousness

3    because the record lacked evidence on whether a skilled artisan would have been motivated

4    to combine the prior art references to arrive at the claimed device of the '925 patent.  (Doc.

5    No. 706 at 56.)  The Supreme Court rejected a rigid application of a teaching suggestion or

6    motivation test to the question of obviousness.  KSR, 550 U.S. at 415.   Instead, the Supreme

7    Court stated that the question of obviousness requires an "expansive and flexible approach."

8    Id.  Therefore, the record need not contain explicit testimony on the narrow issue of whether

9    a skilled artisan would be motivated to combine the prior art references for the jury to find

10   claim 3 obvious.  The jury was permitted to take a flexible approach in reaching its conclusion

11   of obviousness based on entirety of the testimony received throughout the trial.  Accordingly,

12   this Court determines that the record supports a finding of obviousness under KSR.  The trial

13   judge also indicated that the record was insufficient to support an obviousness determination

14   because the prior art did not suggest using lock screws rated for 5,000 psi to secure a frac

15   mandrel.  (Doc. No. 706 at 57-58.)  Significantly, the '925 patent claims do not require a

16   certain psi rating for the lock screws.  (Ex. JX1.16.)

17   A reasonable jury could conclude, as this jury did, that it would be obvious to

18   combine the full bore limitation of claim 3 with the limitations of claims 1 and 2.  (Doc. No.

19   668 at 7.)  The Court presumes that the jury resolved any underlying factual disputes of

20   obviousness in favor of the verdict that claim 3 is obvious and leaves the presumed findings

21   undisturbed if they are supported by substantial evidence.  See  Jurgens, 927 F.2d at 1557.

22   Because the jury's verdict on claim 3 is supported by substantial evidence, the Court reinstates

23   the jury's verdict that claim 3 is obvious and denies Duhn Oil's motion for judgment as a

24   matter of law as to the nonobviousness of claim 3. See Wallace, 479 F.3d at 624 (stating that

25   a court must uphold the jury's verdict if it is supported by substantial evidence).

26   ///

27   ///

28   ///

## VI. Parties' Arguments Regarding Waiver and Nature of the Verdict

Cameron additionally argues that Duhn Oil waived the right to object to the inconsistencies in the jury's verdict because it did not object before the jury was discharged, and further argues that the jury's nonobvious verdict on claim 1 is merely advisory because Cameron only sought declaratory relief as to the validity of claim 1.  Because the Court reinstates the jury's verdict of obviousness on claim 3, all of the '925 patent claims at issue are invalid.  As a result, the Court need not resolve Cameron's additional arguments that Duhn Oil waived any challenge to the jury's verdict by failing to object and that the jury's verdict on claim 1 was merely advisory.

Duhn Oil only asserted dependent claims at trial, while Cameron sought declaratory relief of invalidity for nonasserted independent claim 1 and the asserted dependent claims. The jury found that dependent claims 2, 3, 4, 5, 19, and 29 were invalid as obvious, but that independent claim 1 was not proved to be obvious.  (Doc. No. 668 at 7.)  But the legal conclusion that independent claim 1 is obvious is a prerequisite to reaching a legal conclusion that dependent claims 2, 3, 4, 5, 19, and 29 are obvious.  See Comaper Corp. v. Antec, Inc., 596 F.3d 1343, 1350 (Fed. Cir. 2010) ("A broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness."). Therefore, the jury's findings on obviousness are inconsistent. Id. ("A broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness.").

The Federal Circuit applies the law of the regional circuit in addressing inconsistent jury verdicts.  Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1291 (Fed. Cir. 2007); Mycogen Plant Sci., Inc. v. Monsanto Co., 243 F.3d 1316, 1325 (Fed. Cir. 2001).  In the Ninth Circuit, "[i]f the jury announces only its ultimate legal conclusions, it returns an ordinary general verdict."    Zhang, 339 F.3d at 1031.  A jury returns a general verdict if it records its ultimate conclusion on the legal issue obviousness.  See e.g., Richardson-Vicks, Inc. v. Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1337 n.4 (Fed. Cir. 2009).  A party is required to object to an inconsistent

1    general, but not special, verdict before the jury is dismissed. <u>Zhang</u>, 339 F.3d at 1028-29; <u>see</u>

2    <u>also</u> <u>Home Indem. Co. v. Lane Powell, Moss & Miller</u>, 43 F.3d 1322, 1331 (9th Cir. 1995);

3    <u>Pierce v. Southern Pacific Trans. Co.</u>, 823 F.2d 1366, 1370 (9th Cir. 1987) ("Special verdicts

4    . . . are governed by Rule 49(a), which does not require objections before discharge of the

5    jury.").   If a party fails to object before the jury is dismissed, any complaint about an

6    inconsistency in a general verdict is waived. <u>Zhang</u>, 339 F.3d at 1028-29. The Ninth Circuit

7    strictly applies the waiver rule. <u>Id.</u> at 1029. A court should not upset a jury's general verdict

8    merely because it is legally inconsistent.  <u>Id.</u> at 1035; <u>cf.</u> <u>Callaway Golf</u>, 576 F.3d at 1345

9    (applying Third Circuit law).

10           Following the jury's verdict on obviousness, the trial judge called the parties to side

11   bar and asked for their legal position on the inconsistent verdict. (Doc. No. 698 at 41-42.)

12   Neither party objected to the jury's verdict and the jury was discharged.  (<u>Id.</u>)

13           Cameron argues that Duhn Oil waived the right to object to the inconsistencies in the

14   jury's verdict because it did not object before the jury was discharged. <u>Zhang</u>, 339 F.3d at

15   1029. Duhn responds against waiver by erroneously claiming that the verdict was a special

16   verdict governed by Federal Rule of Civil Procedure 49(a) and by pointing out that a

17   dependent claim cannot, as a matter of law, be invalid if the independent claim is not invalid.

18   <u>See</u> <u>Richardson-Vicks</u>, 122 F.3d at 1479; <u>Callaway Golf</u>, 576 F.3d at 1337 n.4; <u>Comaper</u>, 596

19   F.3d at 1350. The Court need not address the issue of waiver because all of the '925 patent

20   claims at issue are invalid.

21           In addition, Cameron argues that the jury's nonobvious verdict on claim 1 is merely

22   advisory because Cameron only sought declaratory relief concerning the validity of claim 1

23   and Duhn Oil did not assert infringement of claim 1.  <u>In re Tech. Licensing Corp.</u>, 423 F.3d

24   1286, 1290 (Fed. Cir. 2005).  Post-trial, Duhn Oil initially agreed that the verdicts on

25   obviousness were advisory based on the final pretrial order that limited the jury to decide

26   willfulness and "other issues to which the entitlement exists as a legal right." (Doc. Nos. 468

27   at 1-2; 681 at 15-16.)  Since the Court reinstates the jury's verdict that claim 3 is obvious as

28   ///

1  supported by substantial evidence, the Court need not decide Cameron's arguments

2  concerning the advisory nature of the jury's verdict on claim 1.

3  **V.  Damages**

4       The jury found Cameron liable for infringing dependent claims 2, 3, 5, 19, and 29 of

5  the '925 patent, and for contributory infringement of claims 2, 3, 5, and 29, but not claim 19.

6  (Doc. No. 668.)  The jury awarded $5,909,975 in lost profits and $2,750,000 in royalties.  (Id.)

7  All of the asserted claims of the '925 patent are invalid for anticipation or obviousness.  (Id.;

8  Doc. No. 762.)  Cameron challenges the jury's award of lost profit damages as unwarranted

9  under the Panduit factors.[3]  Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152,

10  1156 (6th Cir. 1978).  Additionally, Cameron challenges that the reasonable royalty award

11  violates the entire market value rule because the jury did not allocate damages to claim 3, the

12  only asserted claim that is not anticipated by the prior art.  Uniloc USA, Inc. v. Microsoft

13  Corp., 632 F.3d 1292, 1318 (Fed. Cir. 2011).[4]  In contrast, Duhn Oil asks the Court to enter

14  judgment in the amount of the jury's verdict.

15       A party is not entitled to damages on invalidated claims.  See Medtronic Inc. v.

16  Cardiac Pacemakers, Inc., 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("[A]n invalid claim cannot

17  give rise to liability for infringement.").  Therefore, Cameron cannot be liable for damages

18  on the invalidated claims of the '925 patent.  Accordingly, the Court vacates the jury's

19  damage award.

20  ///

21  ///

22  ///

23

24       [3] The Panduit test permits recovery of lost profits if the patent holder establishes: "(1) demand for the
    patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing
25  capability to exploit the demand; and (4) the amount of profit it would have made."  Rite-Hite Corp. v. Kelley
    Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995).

26

27       [4] For the entire market value rule to apply, the patentee must prove that the patent-related feature is the
    basis for customer demand.  Uniloc, 632 F.3d at 1318.  If a patentee fails to show application of the entire
    market value rule, then the patentee must apportion between "the patented feature and the unpatented features."
28  Garretson v. Clark, 111 U.S. 120, 121 (1884).

05cv1411

1

### Conclusion

2       The Court has thoroughly reviewed the record and given careful consideration to the

3  issues and arguments raised by the parties and to the dedicated work of the trial judge.  After

4  the retrial on anticipation, the Court grants Cameron's motion for reconsideration, reinstates

5  the jury's verdict that claim 3 is obvious, denies Duhn Oil's motion for judgment as a matter

6  of law of nonobviousness of claim 3, and vacates the damage award.

7       **IT IS SO ORDERED.**

8  DATED:  May 7, 2012

9

10                                     MARILYN L. HUFF, District Judge
                                       UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05cv1411